JAMIR DAVIS, ESQ. SBN 98041 – PRO HAC VICE APPLICATION
PENDING **J. DAVIS LAW FIRM, PLLC**
106 WINDING WAY UNIT C
COVINGTON, KY 41011
TELE: (859) 750-5033
JDAVIS@JDAVISCOUNSEL.COM

VALERY NECHAY, SBN 314752
ATTORNEY AT LAW
LAW CHAMBERS BUILDING
345 FRANKLIN ST.
SAN FRANCISCO, CA 94102
TELE: 415-652-8569
VALERY@NECHAYLAW.COM
ATTORNEYS FOR PLAINTIFFS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PHILLIP BELL JR.; LORNA BARNES; and
ANTHONY BARNES.

        Plaintiffs,

        v.

SADDLEBACK VALLEY UNIFIED SCHOOL
DISTRICT; KLUTCH SPORTS;
NEXT LEVEL SPORTS & ACADEMICS; and
ISAHIA SANDOVAL; EDWARD WONG
TRICIA OSBORNE, CHAD JOHNSON;
STEVE BRISCOE,
AND DOES 1-20 in their
individual and official capacities.

        Defendants.

**Complaint**

1. **Violation of the Fourteenth Amendment - Interference with a Familial Relationship 42 U.S.C. § 1983;**
2. *Monell* **claim 42 U.S.C. § 1983;**
3. **Negligence;**
4. **Negligence - Respondeat Superior;**
5. **Intentional Infliction of Emotional Distress - Respondeat Superior;**
6. **Negligent Infliction of Emotional Distress; and**
7. **Intentional Infliction of Emotional Distress**

JURY TRIAL DEMANDED

1

**INTRODUCTION**

1. This is the compelling story of an entourage of adults harboring a talented teenage football star from a healthy relationship with his biological family, in a scheme to profit off of the teen's talent and in direct violation of California Law and the United States Constitution.

2. High school football has become more profitable than ever, and the financial opportunities now available to high school athletes in California allow them to earn money in ways that were previously impossible.

3. However, there are serious issues surrounding the implementation of the financial opportunities, including Name Image and Likeness (NIL) deals, and the monetary influence that comes with them.

4. This Complaint highlights how the financial opportunities can directly and negatively impact underage high school student-athletes' relationship with their biological parents in violation of well-established Constitutional principles.

5. This action requests that the Court enforce the long-standing constitutional principle that includes the right to family integrity, familial association, and the right of parents to direct the upbringing of their children.

6. This Complaint will demonstrate that Defendants developed a plan to prevent Plaintiffs from contacting their minor child, behavior that shocks the conscience and offends the community's sense of fair play and decency.

7. Plaintiffs pray for relief.

**JURISDICTION**

8. This action arises under 29 U.S.C. §701, et seq. Title 28 of the United States Code Sections 1331 and 1343 confers jurisdiction upon this Court. The violation of the custody orders

2

occurred in San Francisco California, which is within this judicial district. The Court has supplemental jurisdiction of Plaintiff's state-based claims pursuant to 28 U.S.C. §1367. Title 28 of the United States Code Section 1391 confers venue upon this Court.

<u>**ADMINISTRATIVE PREREQUISITES**</u>

9. Plaintiffs are required to comply with an administrative tort claim requirement under California law. Phillip Bell Jr., Lorna Barnes and Anthony Barnes have all filed tort claims with Saddleback Unified School District pursuant to California Government Code Section 910. Plaintiffs filed their claims by sending a claim form and letter to legal counsel for Saddleback Unified School District, per their request. Plaintiffs have not received correspondence from Saddleback Unified School District accepting or denying their claims. Plaintiffs filed this Complaint prior to response due to their minor teenage child being missing.

<u>**PARTIES**</u>

10. PHILLIP BELL JR. (hereinafter referred to as "FATHER" individually or "PLAINTIFFS" collectively) is at all times herein mentioned is a citizen of the United States of America and a current resident of the San Francisco Bay Area. FATHER is the biological father and only parent with custody rights to PHILLIP BELL III (hereinafter referred to as PHILLIP III) a minor. PHILLIP III is currently enrolled as a senior at Mission Viejo High School (hereinafter referred to as "MISSION") without the consent of FATHER and is residing at an address that has not been disclosed to FATHER by MISSION. FATHER has noticed all DEFENDANTS that he does not consent to any of them contacting or communicating with PHILLIP III without his approval.

11. LORNA BARNES (hereinafter "GRANDMA" individually or "PLAINTIFFS" collectively) is the mom of SAMANTHA BARNES (hereinafter referred to as SAMANTHA) biological

3

mother of PHILLIP III. GRANDMA is maternal grandparent of PHILLIP III, helped raise PHILLIP III, and has custodial interest in PHILLIP III. GRANDMA has noticed all DEFENDANTS that she does not consent to any of them contacting or communicating with PHILLIP III without her approval.

12. ANTHONY BARNES (hereinafter "GRANDPA" individually or "PLAINTIFFS" collectively) is the father of SAMANTHA, the biological mother of PHILLIP III. GRANDPA is the maternal grandparent of PHILLIP III. GRANDPA help raised PHILLIP III and has a custodial interest in PHILLIP III, GRANDPA has noticed all DEFENDANTS that he does not consent to any of them contacting or communicating with PHILLIP III without his approval.

13. SADDLEBACK VALLEY UNIFIED SCHOOL DISTRICT (hereinafter referred to as "DISTRICT" individually or "DEFENDANTS" collectively) is a public school district and is formed under the laws of California. DISTRICT is a public entity located at 25631 Peter A. Hartman Way, Mission Viejo, CA 92691-3142. DISTRICT receives Federal financial assistance from the United States Department of Education and has signed a contractual Title VI assurance of compliance agreement. DISTRICT operates. MISSION is the school of PHILLIP III. PLAINTIFFS allege that DISTRICT is legally responsible and liable for the incidents giving rise to this Complaint and injuries and damages herein set forth. DISTRICT is liable for its conduct, vicarious or imputed negligence, fault, breach of duty, whether severally or jointly, or whether based upon agency, employment, ownership, entrustment, custody, care or control upon any other act or omission. DISTRICT is also liable for the actions of its employees, agents, or independent contractors at MISSION through vicarious or imputed liability, *respondeat superior.*

14. KLUTCH SPORTS GROUP (hereinafter referred to as "KLUTCH" individually or "DEFENDANTS" collectively) is a Limited Liability Company formed under the laws of California. At all relevant times KLUTCH was duly authorized to do business under the laws of California. KLUTCH is located at 822 North Laurel Avenue, Los Angeles, California 90046. KLUTCH was the sports agency of PHILLIP III at all times when and where the allegations in this Complaint arose. PLAINTIFFS allege that KLUTCH is legally responsible and liable for the incidents giving rise to this Complaint and injuries and damages herein set forth. KLUTCH is liable for its conduct, vicarious or imputed negligence, fault, breach of duty, whether severally or jointly, or whether based upon agency, employment, ownership, entrustment, custody, care or control upon any other act or omission. KLUTCH is also liable for the actions of its employees, agents, or independent contractors, through vicarious or imputed liability, *respondeat superior.*

15. NEXT LEVEL SPORTS & ACADEMICS (hereinafter referred to as "NEXT LEVEL" individually or "DEFENDANTS" collectively) is a Nonprofit Corporation operated by Steve Briscoe and formed under the laws of California. NEXT LEVEL is a private entity that describes itself as a Football Mentoring program and is located at 3927 Hummingbird Dr., Antioch, California 94509. PLAINTIFFS allege that NEXT LEVEL is legally responsible and liable for the incidents giving rise to this Complaint and injuries and damages herein set forth. NEXT LEVEL is liable for its conduct, vicarious or imputed negligence, fault, breach of duty, whether severally or jointly, or whether based upon agency, employment, ownership, entrustment, custody, care or control upon any other act or omission. NEXT LEVEL is also liable for the actions of its employees, agents, or independent contractors, through vicarious or imputed liability, *respondeat superior.*

*PHILLIP BELL JR. v. SADDLEBACK VALLEY UNIFIED SCHOOL DISTRICT, et al. – Complaint*

16. ISAIAH SANDOVAL (hereinafter referred to as "SANDOVAL" individually or "DEFENDANTS" collectively) is a male adult and former husband of SAMANTHA BARNES. SANDOVAL has no legal custody right to parent PHILLIP III and was only connected with PHILLIP III through association with SAMANTHA. PLAINTIFFS believe that SANDOVAL is legally responsible and liable for the conduct alleged in this Complaint, and the resultant injuries and damages herein set forth. SANDOVAL is liable for his personal conduct, vicarious or imputed negligence, fault, breach of duty, whether severally or jointly, or whether based upon agency, employment, ownership, entrustment, custody, care or control upon any other act or omission.

17. EDWARD WONG (hereinafter referred to as "WONG " individually or "DEFENDANTS" collectively) was the Board President of DISTRICT at all relevant times. PLAINTIFFS believe that WONG is legally responsible and liable for the conduct alleged in this Complaint, and the resultant injuries and damages herein set forth. WONG is liable for his personal conduct, vicarious or imputed negligence, fault, breach of duty, whether severally or jointly, or whether based upon agency, employment, ownership, entrustment, custody, care or control upon any other act or omission.

18. TRICIA OSBORNE (hereinafter referred to as "OSBORNE" individually or "DEFENDANTS" collectively) was an agent of DISTRICT and worked at MISSION as the school's principal. PLAINTIFFS believe that OSBORNE is legally responsible and liable for the conduct alleged in this Complaint, and the resultant injuries and damages herein set forth. OSBORNE is liable for her personal conduct, vicarious or imputed negligence, fault, breach of duty, whether severally or jointly, or whether based upon agency, employment, ownership, entrustment, custody, care or control upon any other act or omission.

*PHILLIP BELL JR. v. SADDLEBACK VALLEY UNIFIED SCHOOL DISTRICT, et al. – Complaint*

19. CHAD JOHNSON (hereinafter referred to as "JOHNSON " individually or "DEFENDANTS" collectively) was an agent of DISTRICT and worked at MISSION as the Head Football Coach. PLAINTIFFS believe that JOHNSON is legally responsible and liable for the conduct alleged in this Complaint, and the resultant injuries and damages herein set forth. JOHNSON is liable for his personal conduct, vicarious or imputed negligence, fault, breach of duty, whether severally or jointly, or whether based upon agency, employment, ownership, entrustment, custody, care or control upon any other act or omission.

20. STEVE BRISCOE (hereinafter referred to as "BRISCOE" individually or "DEFENDANTS" collectively) is the owner and operator of NEXT LEVEL. PLAINTIFFS believe that BRISCOE is legally responsible and liable for the conduct alleged in this Complaint, and the resultant injuries and damages herein set forth. BRISCOE is liable for his personal conduct, vicarious or imputed negligence, fault, breach of duty, whether severally or jointly, or whether based upon agency, employment, ownership, entrustment, custody, care or control upon any other act or omission.

21. PLAINTIFFS are ignorant of the true names and capacities of the Defendants sued herein as DOES 1 through 20 inclusive, and therefore PLAINTIFFS sue those Defendants by such fictitious names. PLAINTIFFS will amend this complaint to allege their names and capacities when ascertained. PLAINTIFFS are informed and believe and thereupon allege that each of the fictitious Defendants are responsible in some manner for the occurrences alleged herein.

## STATEMENT OF FACTS

22. PHILLIP III is an exceptional football player, but the main concern of his only surviving parent, FATHER, and his maternal grandparents, GRANDMA and GRANDPA, is not how great of a football player PHILLIP III becomes but rather the kind of person he grows up to be.

7

23. PHILLIP III lived in Sacramento with his mother, SAMANTHA, and his new stepfather, SANDOVAL.

24. His FATHER resided nearby in Folsom, California, and shared parenting duties with SAMANTHA.

25. SAMANTHA and FATHER had a court-ordered agreement in place to share 50/50 custody of PHILLIP III.

26. Under the custody and the care of SAMANTHA and FATHER, PHILLIP III developed into a young star student-athlete, known not only for his talent on the field but also for his academic achievements and well-mannered demeanor.

27. While in Sacramento, PHILLIP III's talent became undeniable, attracting attention from coaches and scouts far beyond his local high school.

28. Family tensions began to escalate when SANDOVAL, a degenerate gambler, drug user, and money-hungry stepfather, brokered a deal through NEXT LEVEL and one of PHILLIP III's trainers, BRISCOE, for PHILLIP III to attend a high school in Southern California.

29. BRISCOE, ISAIAH, and NEXT LEVEL brokered the deal knowing it would violate the shared custody agreement between SAMANTHA and FATHER.

30. SAMANTHA, SANDOVAL, and PHILLIP III then abruptly moved to Los Angeles, California without notifying FATHER, directly violating the parents' custody agreement.

31. The move promised SAMANTHA, SANDOVAL and PHILLIP III housing, direct compensation to SAMANTHA and SANDOVAL, and potential NIL deals for PHILLIP III, but it also brought consequences.

32. SANDOVAL and SAMANTHA eventually enrolled PHILLIP III at MISSION without FATHER'S knowledge or consent.

*PHILLIP BELL JR. v. SADDLEBACK VALLEY UNIFIED SCHOOL DISTRICT, et al. – Complaint*

33. FATHER always intended that PHILLIP III attend a Catholic high school and did not want PHILLIP to attend a public high school.

34. While attending MISSION, the bond between PHILLIP III, FATHER, GRANDMA, and GRANDPA became strained, deepening the rift between them caused by the distance.

35. While in Los Angeles, SANDOVAL'S drug abuse and physical abuse of SAMANTHA and verbal abuse of PHILLIP III escalated significantly, and their tumultuous relationship began to take a toll on PHILLIP III.

36. GRANDMA and GRANDPA would visit SAMANTHA to find that there was no food in the home, alcohol that was easily accessible, and little to no furniture throughout the house.

37. In the first month of being in the Los Angeles area SAMANTHA filed two police reports in Trabuco Canyon, California against SANDOVAL for domestic violence.

38. Friends and family would hear SANDOVAL make comments such as, "You think you are going to leave me once PHILLIP III becomes successful?" "I'll kill you all."

39. Disturbed and in tears, PHILLIP III would call his FATHER and GRANDMA and GRANDPA, begging to leave Los Angeles.

40. PHILLIP III would report the abuse and drug use to GRANDMA and GRANDPA stating, "They are doing it again."

41. Hearing PHILLIP III's cry for help FATHER, GRANDMA and GRANDPA traveled to Los Angeles to meet with PHILLIP III, only to find him uncommunicative and a shadow of his former self.

42. Recognizing the warning signs, FATHER and GRANDMA and GRANDPA immediately filed a legal action in Superior Court of California, requesting that PHILLIP III be returned to Sacramento to attend his old Catholic High School Christian Brothers.

*PHILLIP BELL JR. v. SADDLEBACK VALLEY UNIFIED SCHOOL DISTRICT, et al. – Complaint*

43. **After reviewing all the evidence, which included testimony from PHILLIP III, the Judge ordered SAMANTHA and SANDOVAL to return PHILLIP III to Sacramento immediately after his first semester at MISSION. (Exhibit A)**

44. In his first semester at MISSION, PHILLIP III helped the football team capture a Division I-A State Football Championship and in the state title game, PHILLIP III was recognized as the most valuable player.

45. DISTRICT, seeing the talent that PHILLIP III brought to the school, was aware of the Court Order to have PHILLIP III return to Christian Brothers, but ignored it.

46. SAMANTHA and SANDOVAL also ignored the Court's order and kept PHILLIP III hidden in the Los Angeles area, instructing him not to contact any of his biological family.

47. SAMANTHA and SANDOVAL would move PHILLIP III from house to house, out of reach of FATHER, GRANDMA, GRANDPA, and all other biological family members.

48. SAMANTHA would then enter PHILLIP III into a contractual relationship with KLUTCH, a Los Angeles-based sports agency.

49. KLUTCH would begin to manage the NIL deals and profits for PHILLIP III.

50. FATHER was not aware of PHILLIP III contractual relationship with KLUTCH nor did FATHER consent to it.

51. Shortly thereafter, tragedy struck.

52. Approximately nine months after the move to Los Angeles, SAMANTHA died under suspicious circumstances.

53. On or about SAMANTHA and SANDOVAL were allegedly vacationing in Las Vegas, Nevada.

54. SAMANTHA, a type 1 diabetic, was without her medicine and was supplied cocaine by SANDOVAL.

*PHILLIP BELL JR. v. SADDLEBACK VALLEY UNIFIED SCHOOL DISTRICT, et al. – Complaint*

55. Almost immediately thereafter Samantha became very ill.

56. SAMANTHA began vomiting to the point of becoming lethargic.

57. Instead of seeking medical assistance, SANDOVAL left SAMANTHA in their hotel room alone for hours.

58. SANDOVAL allegedly returned later and found SAMANTHA dead.

59. SANDOVAL left Las Vegas almost immediately, taking all of SAMANTHA'S bank cards and thousands of dollars in casino chips.

60. The next day SANDOVAL would go shopping with SAMANTHA'S bank card spending nearly a thousand dollars on items at a footlocker in Los Angeles.

61. PHILLIP III distraught over his mother's death called FATHER in tears.

62. When FATHER learned of the news, he immediately flew to Los Angeles in an attempt to locate his son PHILLIP III.

63. PHILLIP III provided his FATHER his address but when FATHER arrived at the address SANDOVAL was present and coerced PHILLIP III not to open the door.

64. FATHER was completely denied access to PHILLIP III.

65. The address where SANDOVAL was harboring PHILLIP III, was that of a parent associated with DISTRICT and MISSION.

66. Unfortunately, this would just be the beginning of the complex web of secrecy and control of PHILLIP III after his mother's death.

67. DEFENDANTS determined to keep their rising star, shielded him from his FATHER GRANDMA and GRANDPA, kept PHILLIP III whereabouts a closely guarded secret.

68. DISTRICT and MISSION immediately decided to re-enroll PHILLIP III in school for his senior year with SANDOVAL and BRISCOE listed as his guardians, although they knew that it

*PHILLIP BELL JR. v. SADDLEBACK VALLEY UNIFIED SCHOOL DISTRICT, et al. – Complaint*

violated DISTRICTs policy because FATHER the only parent with custody rights lived over 400 miles away from the DISTRICT.

69. DISTRICT and MISSION publicly promoted a go fund me page started by SANDOVAL which stated that it would be used for SAMANTHA'S funeral expenses and children although they knew SANDOVAL was not PHILLIP'S father.

70. In support of SANDOVAL, KLUTCH donated a substantial amount to the go fund me page.

71. The funds from the go fund me account were directly used to move SANDOVAL and PHILLIP III from hotel room to hotel room until MISSION and DISTRICT could find them permanent housing.

72. SANDOVAL did not use any of the funds from the go fund me for SAMANTHA'S funeral and demanded that GRANDMA and GRANDPA pay for all expenses.

73. DISTRICT then failed to reach out to FATHER at all and had no communication with GRANDMA and GRANDPA.

74. DISTRICT and MISSION planned for their well to do parents to offer PHILLIP III permanent housing without consent.

75. DISTRICT and MISSION also allowed PHILLIP III to participate in summer football practice without consent from FATHER.

76. After learning of this, FATHER, GRANDPA and GRANDMA sent DISTRICT a cease-and-desist letter to all DEFENDANTS asking them not to have contact with PHILLIP III and to notify them of PHILLIP III's whereabouts.

77. General counsel for the DISTRICT and WONG confirmed receipt of the letter and affirmed that DISTRICT and MISSION would comply with PLAINTIFFS request.

*PHILLIP BELL JR. v. SADDLEBACK VALLEY UNIFIED SCHOOL DISTRICT, et al. – Complaint*

78. However, the very next day DISTRICT posted footage of PHILLIP III on social media participating in a 7-on-7 football tournament with the MISSION team.

79. **PLAINTIFFS were devastated by the blatant disregard of the cease-and-desist letter by DISTRICT and WONG especially considering that they could not locate PHILLIP III, they knew PHILLIP III was in close proximity to SANDOVAL and they believed SANDOVAL to be responsible for the death of SAMANTHA.**

80. Even after being made aware of all the facts, DISTRICT, WONG, MISSION, SANDOVAL, BRISCOE, OSBORNE and JOHNSON and others, in direct violation of California law, the court order, and CIF regulations, allowed PHILLIP III to enroll so that he could continue playing football without PLAINTIFFS permission, further complicating an already strained relationship.

81. DISTRICT, OSBORNE, and JOHNSON continued to meet with PHILLIP III to influence him away from PLAINTIFFS.

82. Fed up with DEFENDANTS interference with their relationship with PHILLIP III, PLAINTIFFS traveled to Los Angeles to meet with DISTRICT, OSBORNE, and JOHNSON to discuss PHILLIPS whereabouts.

83. DURING meetings with OSBORNE and JOHNSON it was disclosed that they were aware of PHILLIP III's location but refused to share it with PLAINTIFFS.

84. JOHNSON admitted to having PHILLIP III over to his home for dinner and that he had discussions with families that they should take PHILLIP III in.

85. JOHNSON also promised PHILLIP III that he would be able to participate in football if he stayed away from PLAINTIFFS.

*PHILLIP BELL JR. v. SADDLEBACK VALLEY UNIFIED SCHOOL DISTRICT, et al. – Complaint*

86. **DISTRICT, WONG, JOHNSON, and OSBORNE then took PHILLIP III 2,400 miles across state lines on a trip to Hawaii for a football game without PLAINTIFFS' consent.**

87. **DEFENDANTS used the influence of trips to Hawaii, living in opportunities with millionaires, clothing, housing, fame, fortune, and other resources to persuade PHILLIP III not to have contact with PLAINTIFFS.**

88. **PLAINTIFFS reached out to KLUTCH in an attempt to discuss PHILLIP III's NIL deal and KLUTCH flat out refused to have any discussion with PLAINTIFFS.**

89. **DISTRICT, WONG, NEXT LEVEL, KLUTCH, BRISCOE, OSBORNE, and JOHNSON all influenced PHILLIP III to not communicate with PLAINTIFFS and to keep an unhealthy relationship with SANDOVAL even though he may have been responsible for SAMANTHA'S death.**

90. **DISTRICT, WONG, NEXT LEVEL, KLUTCH, BRISCOE, OSBORNE, WONG, and JOHNSON all knew that PHILLIP III was supposed to undergo court ordered counseling and needed counseling to mend the relationship with PLAINTIFFS but offered no such assistance.**

91. **DISTRICT, WONG, NEXT LEVEL, KLUTCH, BRISCOE, OSBORNE, and JOHNSON knew that PHILLIP III need counseling to cope with the death of SAMANTHA and SANDOVAL'S involvement in that but offered no such assistance.**

92. **DEFENDANTS harbored PHILLIP III from PLAINTIFFS in an attempt to benefit from PHILLIP III's talent, fame, and fortune in direct violation of the United States Constitution and Common Law.**

93. **KLUTCH outright refused to communicate with PLAINTIFS and continued contact with PHILLIP, SANDOVAL, and BRISCO in a plot to keep PHILLIP III in Los Angeles.**

14

94. If PHILLIP III was an average student who never played football DEFENDANTS would have never offer him to live in opportunities with millionaires, clothing, housing, fame, fortune, and other resources to persuade PHILLIP III not to have contact with PLAINTIFFS and to stay at MISSION.

95. Further, if PHILLIP III was an ordinary student, DEFENDANTS would not have violated district policies by offering the student such profound benefits.

96. **DISTRICT and WONG were aware of the "Put the student first" policy implemented by MISSION, OSBORNE, and JOHNSON and their failure to act in accordance with official DISTRICT policies thereby ratifying the behavior or OSBORNE and JOHNSON.**

### FIRST CAUSE OF ACTION

**(Violation of the Fourteenth Amendment – Interference with a Familial Relationship)**

**(42 U.S.C. § 1983)**

**(ALL PLAINTIFFS v. WONG, OSBORNE, JOHNSON, and DOES 1-20)**

97. PLAINTIFFS incorporate paragraphs 1 through 96, as though fully reproduced herein.

98. At all relevant times mentioned herein, WONG, OSBORNE, JOHNSON, and DOES 1-20 acted under the color of law when performing their official duties.

99. WONG, OSBORNE, JOHNSON, and DOES 1-20 deprived PLAINTIFFS of their rights under the United States Constitution to family integrity, familial association, and the right of PLANITIFFS to direct the upbringing of PHILLIP III.

100.   WONG, OSBORNE, JOHNSON, and DOES 1-20 developed and implemented a plan to prevent PLAINTIFFS from contacting their minor child by enrolling PHILLIP III without consent in violation of DISTRICT policy, allowing PHILLIP to participate in the dangerous sport of football will out consent from PLAINTIFFS,  offering  PHILLIP III the opportunity to live with millionaire families and offering PHILLIP III clothing, housing, travel, fame, fortune,

15

and other resources to persuade PHILLIP III not to have contact with PLAINTIFFS. WONG, OSBORNE, JOHNSON, and DOES 1-20 behavior shock the conscience and offends the community's sense of fair play and decency.

101.   WONG, OSBORNE, JOHNSON, and DOES 1-20 behavior was a direct and proximate cause of PLAINTIFF'S rights under the United States Constitution because it resulted in PLAINTIFFS being separated from PHILLIP III.

102.   In actions as alleged above, WONG, OSBORNE, JOHNSON, and DOES 1-20 have acted with malice or reckless indifference to the rights of PLAINTIFFS, thereby entitling PLAINTIFFS to an award of punitive damages against DISTRICT.

103.   By reason of the conduct of WONG, OSBORNE, JOHNSON, and DOES 1-20 as alleged herein, PLAINTIFFS have necessarily retained attorneys to prosecute the present action. PLAINTIFFS are therefore entitled to reasonable attorney's fees and litigation expenses incurred in bringing this action

WHEREFORE, PLAINTIFFS pray for relief as hereinafter set forth.

## SECOND CAUSE OF ACTION

### MONELL

### (42 U.S.C. § 1983)

### (ALL PLAINTIFFS v. DISTRICT)

104.   JOHN incorporates the paragraphs 1 through 96, as though fully reproduced herein.

105.   At all relevant times mentioned herein, OSBORNE, JOHNSON and DOES 1-20, acted under the color of law when performing official duties.

106.   The acts of OSBORNE JOHNSON and DOES 1-20 deprived the PLAINTIFFS of particular rights under the United States Constitution because they interfered with PLAINTIFFS' right to associate with their minor child.

107.    OSBORNE, JOHNSON and DOES 1-20 acted pursuant to an expressly adopted official policy to ignore the DISTRICT bylaws and "put the child first" which was a widespread or longstanding practice or custom of the defendant DISTRICT.

108.    The defendant DISTRICT official policy or widespread or longstanding practice or custom caused the deprivation of the PLAINTIFF'S rights by DISTRICT; that is, the DISTRICTS' official policy or widespread or longstanding practice or custom is so closely related to the deprivation of the PLAINTIFFS' rights as to be the moving force that caused the ultimate injury.

109.    DISTRICT'S behavior was a direct and proximate cause of PLAINTIFF'S rights under the United States Constitution because it resulted in PLAINTIFFS being separated from PHILLIP III.

110.    In actions as alleged above, OSBORNE, JOHNSON and DOES 1-20 have acted with malice or reckless indifference to the rights of PLAINTIFFS, thereby entitling PLAINTIFFS to an award of punitive damages against DISTRICT.

111.    By reason of the conduct of DISTRICT as alleged herein, PLAINTIFFS have necessarily retained attorneys to prosecute the present action. PLAINTIFFS are therefore entitled to reasonable attorney's fees and litigation expenses incurred in bringing this action

WHEREFORE, PLAINTIFFS pray for relief as hereinafter set forth.

### THIRD CAUSE OF ACTION

**NEGLIGENCE**

**(Common Law)**

**(ALL PLAINTIFFS v. OSBORNE, JOHNSON, and DOES 1-20)**

**\*\*\*PENDING RESPONSE TO TORT CLAIM\*\*\***

**(ALL PLAINTIFFS v. OSBORNE, JOHNSON, BRISCOE, SANDOVAL, NEXT LEVEL, KLUTCH and DOES 1-20)**

17

112.   PLAINTIFFS incorporate paragraphs 1 through 96, as though fully reproduced herein except for any and all allegations of intentional, malicious, extreme, outrageous, wanton, or oppressive conduct by defendants, and any and all allegations requesting punitive damages.

113.   OSBORNE, JOHNSON, BRISCOE, SANDOVAL, NEXT LEVEL, KLUTCH, and DOES1-20 owed PLAINTIFFS a duty to use reasonable care while engaging with PLAINTIFFS' minor child.

114.   OSBORNE, JOHNSON, BRISCOE, SANDOVAL, NEXT LEVEL, KLUTCH, and DOES1-20 breached this duty of care by developing and implementing a plan to harbor PHILLIP III away from PLAINTIFFS, by failing to comply with the court order, concealing PHILLIP III's whereabouts from PLAINTIFFS, allowing PHILLIP III to participate in football without PLAINTIFFS' consent, and failing to keep PLAINTIFFS informed in PHILLIP's education and contractual obligations.

115.   OSBORNE, JOHNSON, BRISCOE, SANDOVAL, NEXT LEVEL, KLUTCH, and DOES1-20 were negligent and breached their duty by advising PHILLIP III to violate a court orders, offered PHILLIP III the opportunity to live with millionaire families and offered PHILLIP III clothing, housing, travel, fame, fortune, and other resources to persuade PHILLIP III not to have contact with PLAINTIFFS.

116.   These negligent acts directly and proximately caused PLAINTIFFS' harm.

117.   As a direct and proximate result of said OSBORNE, JOHNSON, BRISCOE, SANDOVAL, NEXT LEVEL, KLUTCH and DOES 1-20 negligence, PLAINTIFFS sustained mental and emotional injuries and PLAINTIFFS have sustained pecuniary loss resulting from the loss of comfort, society, attention, and services, in an amount to be determined at trial.

*PHILLIP BELL JR. v. SADDLEBACK VALLEY UNIFIED SCHOOL DISTRICT, et al. – Complaint*

118.    By reason of the conduct of OSBORNE, JOHNSON, BRISCOE, SANDOVAL, NEXT

LEVEL, KLUTCH, and DOES1-20 as alleged herein, PLAINTIFFS have necessarily retained

attorneys to prosecute the present action.

WHEREFORE, JOHN prays for relief as hereinafter set forth.

### FOURTH CAUSE OF ACTION

### NEGLIGENCE - RESPONDEAT SUPERIOR

### (ALL PLAINTIFFS. v. DISTRICT, WONG, and OSBORNE)

### ***PENDING RESPONSE TO TORT CLAIM***

119.    PLAINTIFFS incorporate paragraphs 1 through 96, as though fully reproduced herein

except for any and all allegations of intentional, malicious, extreme, outrageous, wanton, or

oppressive conduct by defendants, and any and all allegations requesting punitive damages.

120.    DISTRICT, WONG, and OSBORNE owed PLAINTIFFS a duty to use reasonable care

while engaging with PLAINTIFFS' minor child PHILLIP III.

121.    DISTRICT, WONG, and OSBORNE failed to use reasonable care that a reasonably careful

school district and school principal should use under similar circumstances. DISTRICT,

WONG, and OSBORNE allowed JOHNSON to continue contact with PHILLIP III, register

PHILLIP III for football in violation of DISTRICT policy, offer PHILLIP III housing, and take

PHILLIP III across state lines without consent from PLAINTIFFS.  DISTRICT and WONG

allowed OSBORNE to continue communication with PHILLIP III in direct violation of the

cease and desist, register PHILLIP III for classes against DISTRICT policy, and have non legal

guardians on PHILLIP III official school documentation without PLAINTIFFS permission in

violation of DISTRICT policy.

122.    At all times mentioned herein, OSBORNE, JOHNSON, and DOES 1-20 were acting within

the course and scope of their employment and/or agency with DISTRICT, WONG, and

OSBORNE. As such, DISTRICT, WONG, and OSBORNE are liable in respondeat superior for the injuries caused by the acts and omissions of OSBORNE and JOHNSON pursuant to California Common Law in the negligent hiring, retention, and supervision of its employees and/or contractors.

123.    As an actual and proximate result of DISTRICT, WONG, and OSBORNE and negligence and mental injuries and emotional injuries sustained by PLAINTIFFS, PLAINTIFFS have sustained pecuniary loss resulting from the loss of comfort, society, attention, and services, in an amount to be determined at trial.

124.    By reason of the conduct of DISTRICT, WONG, and OSBORNE as alleged herein, PLAINTIFFS have necessarily retained attorneys to prosecute the present action.

        WHEREFORE, PLAINTIFFS pray for relief as hereinafter set forth.

### FIFTH CAUSE OF ACTION

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS-

### (RESPONDEAT SUPERIOR)

### (ALL PLAINTIFFS v. DISTRICT, WONG, and OSBORNE)

### ***PENDING RESPONSE TO TORT CLAIM***

125.    PLAINTIFFS incorporate paragraphs 1 through 96, as though fully reproduced herein.

126.    The present action is brought pursuant to the Common Law of California, as a public entity and public employees, DISTRICT, WONG, and OSBORNE are liable for injuries caused by their acts or omissions to the same extent as a private person. At all times mentioned herein, OSBORNE, JOHNSON, and DOES 1-20 were acting within the course and scope of their employment and/or agency with DISTRICT, WONG, and OSBORNE. As such, Defendants DISTRICT, WONG, and OSBORNE are liable in respondeat superior for the injuries caused by the acts and omissions of OSBORNE, JOHNSON, and DOES 1-20.

127.    DISTRICT and WONG perpetuated extreme and outrageous conduct against PLAINTIFFS

by allowing OSBORNE to continue communication with PHILLIP III in direct violation of the cease and desist, allowing her to register PHILLIP III for classes against DISTRICT policy, and by allowing SANDOVAL and BRISCO to be added as primary contacts to school documentation without PLAINTIFFS permission in violation of DISTRICT policy.

128.    DISTRICT, WONG, and OSBORNE allowed JOHNSON to continue contact with PHILLIP III, register PHILLIP III for football in violation of DISTRICT policy, offer PHILLIP III housing, and take PHILLIP III across state lines without consent from PLAINTIFFS.

129.    At all times mentioned herein, OSBORNE, JOHNSON, and DOES 1-20 were acting within the course and scope of their employment and/or agency with DISTRICT, WONG, and OSBORNE. As such, DISTRICT, WONG, and OSBORNE are liable in respondeat superior for the injuries caused by the acts and omissions of OSBORNE and JOHNSON pursuant to California Common Law in the negligent hiring, retention, and supervision of its employees and/or contractors.

130.    As an actual and proximate result of DISTRICT, WONG, and OSBORNE and negligence and mental injuries and emotional injuries sustained by PLAINTIFFS, PLAINTIFFS have sustained pecuniary loss resulting from the loss of comfort, society, attention, and services, in an amount to be determined at trial.

131.    By reason of the conduct of DISTRICT, WONG, and OSBORNE as alleged herein, PLAINTIFFS have necessarily retained attorneys to prosecute the present action.

WHEREFORE, PLAINTIFFS pray for relief as hereinafter set forth.

## SIXTH CAUSE OF ACTION

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

### (ALL PLAINTIFFS v. DISTRICT, OSBORNE, JOHNSON, WONG and DOES 1-20)

### *** PENDING RESPONSE TO TORT CLAIM ***

21

**(ALL PLAINTIFFS v BRISCOE, SANDOVAL, NEXT LEVEL, and KLUTCH)**

132.   PLAINTIFFS incorporate paragraphs 1 through 96, as though fully reproduced herein except for any and all allegations of intentional, malicious, extreme, outrageous, wanton, or oppressive conduct by defendants, and any and all allegations requesting punitive damages.

133.   In the alternative, PLAINTIFFS alleges DEFENDANTS negligent actions and/or negligent failure to act within the scope and course of their responsibilities as a recipient of adults as set forth herein-above approximately cause severe physical injury and serious emotional distress to PLAINTIFFS.

134.   The present action is brought pursuant to the laws of California. DEFENDANTS and DOES 1-20 are liable for injuries caused by their acts or omissions to the same extent as a private person. At all times mentioned herein, DEFENDANTS and DOES 1-20 were acting as adults individually or in the course of their employment.

135.   DEFENDANTS' negligence was a substantial factor in causing PLAINTIFFS serious emotional distress including both mental and emotional suffering, fright, nervousness, anxiety, worry, shock, humiliation, and shame.

WHEREFORE, PLAINTIFFS prays for relief as hereinafter set forth.

<u>SEVENTH CAUSE OF ACTION</u>

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

**(ALL PLAINTIFFS v. OSBORNE, JOHNSON, and DOES 1-20)**

**\*\*\* PENDING RESPONSE TO TORT CLAIM \*\*\***

**(ALL PLAINTIFFS v. BRISCOE, SANDOVAL, NEXT LEVEL, and KLUTCH)**

136.   PLAINTIFFS incorporate paragraphs 1 through 96, as though fully reproduced herein.

137.   The present action is brought pursuant to Common Law of California, as a public entity and public employees, OSBORNE, JOHNSON, BRISCOE, SANDOVAL, NEXT LEVEL, KLUTCH and DOES 1-20 are liable for injuries caused by their acts or omissions to the same

22

extent as a private person. At all times mentioned herein, OSBORNE, JOHNSON, BRISCOE, SANDOVAL, NEXT LEVEL, KLUTCH and DOES 1-20 were acting within the course and scope of their employment and/or individually. As such, DISTRICT and WONG are liable in respondeat superior for the injuries caused by the acts and omissions of OSBORNE, JOHNSON and DOES 1-20.

138.   OSBORNE, JOHNSON, BRISCOE, SANDOVAL, NEXT LEVEL, KLUTCH and DOES 1-20 perpetuated extreme and outrageous conduct against PLAINTIFFS by committing multiple batteries on JOHN, and by. The HCSD and EXPLORER failed to intervene and did not provide JOHN any support or resources and never attempted to limit its exposure to the harm by developing and implementing a plan to harbor PHILLIP III away from PLAINTIFFS, by failing to comply with the court order, concealing PHILLIP III's whereabouts from PLAINTIFFS, allowing PHILLIP III to participate in football without PLAINTIFFS' consent, and failing to keep PLAINTIFFS informed in PHILLIP's education and contractual obligations.

139.   PLAINTIFFS have a right to be free from such callous actions aimed at inflicting mental and emotional damage and this right was violated by OSBORNE, JOHNSON, BRISCOE, SANDOVAL, NEXT LEVEL, KLUTCH and DOES 1-20, inclusive.

140.   These acts directly and approximately caused PLAINTIFFS harm.

141.   As a direct and proximate result of said OSBORNE, JOHNSON, BRISCOE, SANDOVAL, NEXT LEVEL, KLUTCH and DOES 1-20 negligence, PLAINTIFFS sustained mental and emotional injuries and PLAINTIFFS have sustained pecuniary loss resulting from the loss of comfort, society, attention, and services, in an amount to be determined at trial.

142.   By reason of the conduct of DISTRICT, WONG, and OSBORNE as alleged herein, PLAINTIFFS have necessarily retained attorneys to prosecute the present action.

WHEREFORE, PLAINTIFFS prays for relief as hereinafter set forth.

## JURY DEMAND

143. PLAINTIFFS HEREBY DEMAND A JURY TRIAL.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFFS pray that the Court grant relief, as follows:

For general damages in a sum according to proof.

For special damages, including but not limited to, past, present, and/or future wage loss, medical expenses, and other special damages to be determined according to proof;

For punitive and/or exemplary damages against DEFENDANTS in a sum according to proof;

For preliminary and permanent injunctive relief according to proof;

Any and all permissible statutory damages;

For costs of suit and reasonable attorney's fees pursuant to 42 U.S.C. §1988 and U.S.C. §794(a);

For all other relief to which the Court deems just and proper.

**Date: August 19, 2024**

Respectfully submitted,

Valery Nechay

24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*PHILLIP BELL JR. v. SADDLEBACK VALLEY UNIFIED SCHOOL DISTRICT, et al. – Complaint*

1
2
3
4
5
6

**Proof of Service**

7
8

I, Jamir Davis, am a citizen of the United States. I am over the age of 18 years old and am not a party to the within action.:

9
10

**Complaint for:**

11
12
13
14

**Violation of the Fourteenth Amendment - Interference with a Familial Relationship 42 U.S.C. § 1983;**
***Monell* claim 42 U.S.C. § 1983;**
**Negligence;**
**Negligence - Respondeat Superior;**
**Intentional Infliction of Emotional Distress - Respondeat Superior;**
**Negligent Infliction of Emotional Distress; and**
**Intentional Infliction of Emotional Distress**

15
16
17
18

**BY ELECTRONIC MAIL: I caused the document(s) to be filed electronically via ECF. I did not receive a notification that the electronic transmission was unsuccessful.**

19
20

Executed on August 19, 2024.

21
22
23
24
25
26
27
28

26