ILLOVSKY GATES & CALIA LLP
Kevin Calia (State Bar No. 227406)
kevin@illovskygates.com
Eva Schueller (State Bar No. 237886)
eschueller@illovskygates.com
1611 Telegraph Ave., Ste. 806
Oakland, CA 94612
Telephone: (415) 500-6640

*Attorneys for Defendants*
*Steve Briscoe and*
*Next Level Sports & Academics Foundation*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| PHILLIP BELL JR.; LORNA BARNES; and ANTHONY BARNES.<br><br>Plaintiffs.<br><br>v.<br><br>SADDLEBACK VALLEY UNIFIED SCHOOL DISTRICT; KLUTCH SPORTS; CALIFORNIA INTERSCHOLASTIC FEDERATION; NEXT LEVEL SPORTS & ACADEMICS; and ISAHIA SANDOVAL; EDWARD WONG; TRICIA OSBORNE; CHAD JOHNSON; STEVE BRISCOE AND DOES 1-20 in their individual and official capacities.<br><br>Defendants. | Case No. 4:24-cv-05545-JST<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) BY DEFENDANTS STEVE BRISCOE AND NEXT LEVEL SPORTS & ACADEMICS FOUNDATION**<br><br>Date:    March 27, 2025<br>Time:   2:00 p.m.<br>Ctrm:   6<br>Judge:  Hon. Jon S. Tigar |

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................1

II. ARGUMENT .......................................................................................................................3

    A. STANDARDS ON A MOTION TO DISMISS .............................................................3

    B. PLAINTIFFS' NEGLIGENCE-BASED CLAIMS AGAINST BRISCOE AND NEXT LEVEL SHOULD BE DISMISSED ................................................................3

    C. PLAINTIFFS' INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM AGAINST BRISCOE AND NEXT LEVEL SHOULD BE DISMISSED ......................8

    D. PLAINTIFFS' UNJUST ENRICHMENT CLAIM AGAINST BRISCOE AND NEXT LEVEL SHOULD BE DISMISSED ................................................................9

III. CONCLUSION..................................................................................................................10

# TABLE OF AUTHORITIES

**Cases**

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)...................................................................................................................3

*Brown v. USA Taekwondo*,
    11 Cal. 5th 204 (2021) ...............................................................................................................6

*Burgess v. Superior Court*,
    2 Cal. 4th 1064 (1992) ...............................................................................................................5

*Christensen v. Superior Court*,
    54 Cal. 3d. 868 (1991) ............................................................................................................5, 6

*De Rocha Express, Inc. v. Combined Resources, Inc.*,
    Case No. 24-cv-02037-JST, 2024 WL 4504536 (Oct. 15, 2024) ..............................................3

*Hudacko v. Regents of University of California*,
    Case No. 23-cv-05316-SI, 2024 WL 3908113 (N.D. Cal. Aug. 20, 2024) ..........................6, 7, 9

*In re Guardianship of K.B.*,
    238 Cal. App 4th 989 (2015) .....................................................................................................4

*Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc.*,
    48 Cal. 3d 583 (1989) ................................................................................................................5

*Mejia v. Reed*,
    31 Cal. 4th 657 (2003) ...............................................................................................................4

*Plotnik v. Meihaus*,
    208 Cal. App. 4th 1590 (2012) ..................................................................................................8

*Randi W. v. Muroc Joint Unified School District*,
    14 Cal. 4th 1066 (1997) .............................................................................................................5

*Regents of the University of California v. Superior Court*,
    4 Cal. 5th 607 (2018) .................................................................................................................6

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) .....................................................................................................3

*Tekle v. United States*,
    511 F.3d 839 (9th Cir. 2007) .....................................................................................................8

## I. INTRODUCTION

Plaintiffs' opposition admits key deficiencies in the First Amended Complaint, which requires dismissal of their state law claims against Defendants Steve Briscoe and Next Level Sports & Academics Foundation. Indeed, Plaintiffs' opposition outright copied the "Relevant Factual Background" section from our motion to dismiss. (*Compare* ECF No. 46 at 2-6 *with* ECF No. 61 at 3-7.) And this section is the only part of Plaintiffs' opposition that provides any citations to the First Amended Complaint at all.

Accordingly, Plaintiffs admit that:

- Their allegations that Isaiah Sandoval (Phillip Bell III's step-father) "brokered a deal" with Briscoe and that Briscoe received unspecified "compensation for this transaction" relate only to Phillip III's practicing with Bishop Alemany's football team for only approximately one month before the school year started, before Samantha died, and before the family court order directed that Phillip III return to Sacramento. (ECF 61 No. at 3-4.)
- They do not allege that Briscoe had any role in the decision to switch from Bishop Alemany to Mission Viejo or that another "deal" or "transaction" was "brokered" at this time or that Briscoe or Next Level received any compensation in connection with the decision to move again or attend Mission Viejo. (ECF No. 61 at 4.)
- They do not allege anything about the content of Briscoe's testimony in family court proceedings or that his testimony was not given truthfully and under oath in response to questions from the court and the parties or their counsel. (ECF No. 61 at 5.)
- They do not allege any connection between Briscoe or Next Level and Phillip III's refusal to speak with Plaintiffs after his mother's death or his living arrangements during that time. (ECF No. 61 at 5.)
- They do not allege any information about who provided any alleged forms listing Briscoe as a "guardian" or "emergency contact" or when those forms were provided to the school district. (ECF No. 61 at 6.)

- They do not allege when, where, or to whom Briscoe supposedly said he was Phillip III's "uncle" or that any school district official relied on any such representation in deciding to allow Phillip III to attend Mission Viejo during his senior year. (ECF No. 61 at 7.)
- They do not provide any information about how the decisions made by Phillip III and his mother, whether or not "influenced" by Briscoe or Next Level, harmed Plaintiffs or how they resulted in any unjust benefit to Briscoe or Next Level. (ECF No. 61 at 7.)

These admissions about the deficiencies in the First Amended Complaint doom Plaintiffs' claims, but it gets worse. Plaintiffs also misstate the pleading standard, citing pre-*Twombly* cases that haven't been the law in nearly twenty years. They then invent "holdings" for multiple cases that bear no relationship to the issues addressed or decided in the actual decisions. The made-up "holdings" might support Plaintiffs' theories, but the need to fabricate them demonstrates that real legal authorities do not support Plaintiffs' theory of liability as to Briscoe and Next Level.

What little is left of the opposition fails to show that Briscoe or Next Level owed Plaintiffs a duty of care, engaged in conduct that breached any such duty, or proximately caused any decision by Phillip III or his mother that was a violation of the relevant child custody order. Accordingly, Plaintiffs' negligence-based claims should be dismissed without leave to amend.

As for the intentional infliction of emotional distress claim, Plaintiffs fail to cite any case that would show that the conduct alleged here meets the legal definition of "outrageous" conduct. They also completely fail to address our arguments that the First Amended Complaint fails to show that Plaintiffs suffered extreme emotional distress or that any conduct by Briscoe or Next Level was the proximate cause of any such distress.

Plaintiffs' incoherent and inconsistent allegations that Briscoe somehow profited from "brokering" a "deal" for Phillip III to attend Bishop Alemany High School do not plausibly show that Briscoe or Next Level was unjustly enriched at the expense of Plaintiffs. The Court should therefore dismiss the unjust enrichment claim.

For these reasons, and those stated in our opening brief, the Court should either decline to exercise supplemental jurisdiction over the state law claims asserted against Briscoe and Next Level or dismiss them for failure to state a claim.

## II. ARGUMENT

### A. STANDARDS ON A MOTION TO DISMISS

The legal errors in Plaintiffs' opposition start right at the beginning. Plaintiffs' opposition misstates the standard for evaluating a motion to dismiss. It cites a wide variety of old, pre-*Twombly* cases and specifically quotes the standard derived from *Conley v. Gibson* that was retired in *Twombly*. (ECF No. 61 at 8-9.) Specifically, Plaintiffs' opposition says: "A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims that would entitle the plaintiff to relief." (ECF No. 61 at 8 (citing *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

Nearly twenty years ago, the United States Supreme Court stated that the "'no set of facts' language has been questioned, criticized, and explained away long enough," and that the phrase has "earned its retirement" and is "best forgotten as an incomplete, negative gloss on an accepted pleading standard." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 562-63 (2007); *see also De Rocha Express, Inc. v. Combined Resources, Inc.*, Case No. 24-cv-02037-JST, 2024 WL 4504536, at *2 & n.2 (Oct. 15, 2024). Under the governing plausibility standard, Plaintiffs' state law claims against Briscoe and Next Level should be dismissed.

### B. PLAINTIFFS' NEGLIGENCE-BASED CLAIMS AGAINST BRISCOE AND NEXT LEVEL SHOULD BE DISMISSED

Plaintiffs fail to cite any case that is remotely similar to the facts or legal theory alleged in the First Amended Complaint, which seeks to hold various third parties responsible for not ensuring Samantha and Phillip III complied with a child custody order directing Phillip III to return to Sacramento and enroll at his former high school. Worse still, Plaintiffs badly misstate the holdings of several cases cited in their opposition. The few cases that are remotely relevant demonstrate what is missing here and why Briscoe and Next Level did not owe Plaintiffs a duty of care, breach any such duty, or engage in conduct that was a substantial factor in causing any harm to Plaintiffs. Plaintiffs also admit that their negligent infliction of emotional distress claim rises or falls with their negligence claims. (ECF No. 61 at 16.)

We start with the cases that are most egregiously misdescribed.  Plaintiffs cite *In re Guardianship of K.B.*, 238 Cal. App 4th 989, 999 (2015), describing it as "holding that interfering with parental rights without lawful justification may constitute a breach of duty." (ECF No. 61 at 14.)  From that description the Court might assume the case involved a negligence claim or at least some kind of tort claim.  It doesn't.  Rather, *In re Guardianship of K.B.* involved an appeal from juvenile proceedings that charged a minor with two counts of possessing firearms.  238 Cal. App 4th at 991.  The issue was whether photographs of the minors holding the firearms that had been observed by law enforcement officials on Instagram and seized from a cell phone during an arrest of the minors had been properly authenticated such that they were admissible in the juvenile proceedings.  *Id.*  The court held that the photographs were properly authenticated.  *Id.* at 997.  There was no issue involving alleged interference with parental rights, no tort claims at all, and no holding that is remotely related to whether a tort law duty exists to require a third party to somehow compel a mother and child to comply with a family law court order regarding child custody.

Plaintiffs also cite *Mejia v. Reed*, 31 Cal. 4th 657, 668 (2003), describing it as "holding that individuals who facilitate unlawful separations between parents and children may be held liable for their role in the interference." (ECF No. 61 at 15.)  Once again, that description bears no relationship to what the *Mejia* case is about.  *Mejia* involved a marital settlement agreement that allocated property between a divorcing husband and wife.  31 Cal. 4th at 662.  The plaintiff was the husband's mistress who sought child support for a child born as a result the husband's affair that led to his divorce.  *Id.*  She alleged that the marital settlement agreement constituted a fraudulent transfer because it allocated real property assets to the wife and the financial interest in a medical practice to the husband.  *Id.*  The husband had then abandoned his medical practice and was living with his mother with "no assets and little income" such that he was not paying the child support that he owed.  *Id.*  The court held that the Uniform Fraudulent Transfer Act applies to property transfers under marital settlement agreements, *id.* at 669, but that the husband was not insolvent at the time that the marital settlement agreement was entered into.  *Id.* at 670-71.  There was no issue remotely related to any alleged liability for any "unlawful separations between parents and children."

The made-up descriptions of these irrelevant cases demonstrate the lack of legal support for Plaintiffs' theory here. The few cases Plaintiffs cite that actually involved negligence claims are readily distinguishable and do not support Plaintiffs' theory.

*Randi W. v. Muroc Joint Unified School District*, 14 Cal. 4th 1066 (1997), involved tort claims against a school district that had previously employed the vice principal and had sent a recommendation letter with "unreserved and unconditional praise" for the former employee that failed to disclose prior charges or complaints of sexual misconduct. 14 Cal. 4th at 1070. The court found that the former employer had a duty "not to misrepresent the character of" the former employee, *id.* at 1081, and that plaintiff (a student at the new school who was sexually assaulted) had adequately alleged that the school district had reasonably relied on those misrepresentations in deciding to hire the vice principal. *Id.* at 1085.

The court's reasoning in *Randi W.* demonstrates why Plaintiffs' theory of negligence fails here. First, the Court suggested that if there hadn't been "resulting physical injury" (the sexual assault) or "a special relationship between the parties," there would not have been a duty to a third party who did not receive the recommendation letter. Here, there is no physical injury to Phillip III, who is thriving as an award-winning football player with a bright athletic future. (Compl., ¶ 50.) Nor is there a "special relationship" between Briscoe or Next Level and Plaintiffs. Indeed, there is no relationship alleged between them at all. Second, there are no allegations that would plausibly show that any alleged misrepresentation by Briscoe was made to Plaintiffs or caused Plaintiffs any harm.

*Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc.*, 48 Cal. 3d 583 (1989) also involved sexual molestation. The plaintiffs were the mothers of sons who had been sexually molested by a psychotherapist. The court emphasized that the mothers "were the patients of the therapist along with their sons." *Id.* at 591; *see also id.* at 585, 590. The court's finding of a duty owed to the mothers turned on that fact. *Burgess v. Superior Court*, 2 Cal. 4th 1064 (1992) is distinguishable for the same reason. That case involved a birth injury. *Id.* at 1070. The court held that the plaintiff mother was not a "bystander" with respect to injuries to her child during labor and delivery. *Id.* at 1078. Rather, the mother herself was owed a duty because she was in a physician-patient relationship with the obstetrician. *Id.* And, the holding in *Christensen v. Superior Court*, 54 Cal. 3d. 868 (1991), is

similar. There, the claim involved the mishandling of the remains of dead relatives and the court found a duty because "mortuary services are performed for the benefit of family members." *Id.* at 887. Here, Plaintiffs do not allege that they were clients of Briscoe or Next Level or that they had any relationship whatsoever with Briscoe and Next Level.

*Regents of the University of California v. Superior Court*, 4 Cal. 5th 607 (2018), is likewise distinguishable. That case involved a UCLA student who experienced auditory hallucinations and stabbed another student during a chemistry lab. *Id.* at 612. The court held that "universities have a special relationship with their students to protect them from foreseeable violence during curricular activities." *Id.* As explained above, here there is no relationship at all between Plaintiffs and Briscoe or Next Level, let alone a "special relationship" that is comparable to special relationship between a university and its students, which had unique features such as "an aspect of dependency" by the student on the university for protection and a special ability by the university to exercise control over its classrooms for the protection of students. *Id.* at 620-28. Plaintiffs cannot plausibly allege that they were somehow dependent on Briscoe or Next Level or that Briscoe had some special ability to control or protect them. Accordingly, they do not have a "special relationship" with Briscoe or Next Level that would give rise to a tort law duty for Briscoe and Next Level to require Samantha or Phillip III to comply with the family court order. In the absence of a "special relationship" or some other set of circumstances giving rise to an affirmative duty for Briscoe or Next Level to protect Plaintiffs, the *Rowland* factors cannot themselves give rise to a duty. *Brown v. USA Taekwondo*, 11 Cal. 5th 204, 209 (2021); *see also id.* at 217 ("The multifactor test set forth in *Rowland* was not designed as a freestanding means of establishing duty, but instead as a means for deciding whether to limit a duty derived from other sources.").

Briscoe and Next Level cited the most factually similar case in their opening brief: *Hudacko v. Regents of University of California*, Case No. 23-cv-05316-SI, 2024 WL 3908113 (N.D. Cal. Aug. 20, 2024). (ECF No. 46 at 9.) Plaintiffs do little to distinguish that case. They try to say that Briscoe "affirmatively took steps" in violation of a custody order, but the allegation was the same in *Hudacko*. There, the father alleged that multiple defendants "intentionally violated the child custody order." *Hudacko*, 2024 WL 3908113, at * 9. The custody order said that the minor would "not be

permitted to undergo any gender identity related surgery until they are 18 years of age" unless both parents agreed. *Id.* at *2. The order also said that the minor would be "permitted to commence hormone therapy, if recommended by UCSF." *Id.* The minor began hormone therapy "via an implant" and the dispute was about whether inserting the implant constituted a prohibited "surgery." *Id.* Both attorneys and doctors named as defendants had unquestionably taken affirmative steps that led to the insertion of the implant. The court dismissed the claims against all of these defendants because the complaint did not sufficiently allege that any of the defendants owed the father a duty of care; the father was not the patient of the doctors or the client of the lawyers. *Id.* at *16.

Just as in *Hudacko*, Plaintiffs are not clients of Briscoe or Next Level and neither Briscoe nor Next Level owed them a duty of care to enforce a family court order dictating how Phillip III's parents should share custody or where Phillip III would attend school.

Plaintiffs repeatedly rely on the allegation that Briscoe told some unspecified person at some unspecified time that he was Phillip III's "uncle," making clear that it is the centerpiece of their claims against Briscoe and Next Level. (ECF No. 61 at 1, 11, 12, 13, 14, 19.) This allegation is not sufficient to plausibly show the existence of a duty owed to Plaintiffs, a breach of any such duty, or that any such breach was a substantial factor in causing any damage to Plaintiffs. Plaintiffs admit that the First Amended Complaint fails to specify when this supposed statement was made or to whom it was made. (ECF No. 61 at 7.) In any event, Plaintiffs do not plausibly allege that the school district relied on any such statement in allowing Phillip III to attend Mission Viejo during his senior year. Any claimed relation to Phillip III would be irrelevant to the enrollment decision since Briscoe lives 400 miles away from Mission Viejo in Antioch, California (Compl., ¶ 16), and Phillip III is alleged to have been staying with "well to do" parents in the district, not with Briscoe. (Compl., ¶¶ 81-84.) Moreover, within days after Samantha's death and before the school year started, Plaintiffs informed the school district that Phillip Bell Jr. had custody of Phillip III and provided the district a copy of the same family court order that is attached to the First Amended Complaint. (Compl., ¶ 85 and Compl. Exs. C and E.) Those allegations render implausible any claim that the district relied on any misrepresentation that Briscoe was Phillip III's "uncle" or that any claim that Briscoe was Phillip III's "uncle" was a substantial factor in causing any injury to Plaintiffs.

### C. PLAINTIFFS' INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM AGAINST BRISCOE AND NEXT LEVEL SHOULD BE DISMISSED

Plaintiffs agree, as they must, that extreme and outrageous conduct is required to support an intentional infliction of emotional distress claim against Briscoe or Next Level. (ECF No. 61 at 17.) Plaintiffs fail to cite any case that supports the idea that the conduct alleged against Briscoe or Next Level could meet the legal definition of "outrageous" conduct.

Indeed, their cases show the opposite. *Plotnik v. Meihaus*, 208 Cal. App. 4th 1590, 1609-11 (2012), involved a dispute between neighbors about a dog. The defendants had been accused of hitting the dog with a bat, engaging in rude and vulgar behavior, performing offensive gestures, damaging a fence, and throwing trash into their neighbor's yard. *Id.* The court said, "in large part, the evidence fails to support a finding" of outrageous conduct. *Id.* at 1609-10. The court then stated that "even if" some of this conduct could meet the outrageous conduct standard, the jury verdict had to be reversed for a different reason (double recovery). *Id.* at 1611-12. This case did not a child custody order or anything like it, and provides no support for the idea that Briscoe making introductions to coaches at Bishop Alemany, providing advice about the pros and cons of playing football at different schools, or allegedly referring to himself in unspecified circumstances as Phillip III's "uncle" would constitute outrageous conduct.

*Tekle v. United States*, 511 F.3d 839 (9th Cir. 2007) demonstrates the type of conduct that could qualify as outrageous. There, 15 to 20 federal officers pointed their guns at a barefoot 11-year old, put a gun to his head, handcuffed the child, pulled the child up by the chain attached to the handcuffs, threw his shoes at him, spit on the shoes, and used vulgarities to insult his parents' home country of Ethiopia, all in the course of a raid to arrest the child's father at their home. *Id.* at 842-43. The district court granted summary judgment for the federal agents, concluding that they did not engage in extreme and outrageous conduct. *Id.* at 856. The Ninth Circuit reversed the summary judgment after concluding that "reasonable minds could differ" about whether the alleged conduct was outrageous. *Id.*

Nothing Briscoe or Next Level allegedly did in providing football mentoring services to Samantha and Phillip III rises anywhere close to the level of conduct at issue in *Tekle*. The Court should find that the alleged conduct cannot be "outrageous" as a matter of law and dismiss Plaintiffs'

intentional infliction of emotional distress claim without leave to amend. *See Hudacko*, 2024 WL 3908113, at *15.

### D. PLAINTIFFS' UNJUST ENRICHMENT CLAIM AGAINST BRISCOE AND NEXT LEVEL SHOULD BE DISMISSED

Plaintiffs' theory of unjust enrichment is incomprehensible. They say that Briscoe "personally profited from his actions" and that those actions were supposedly "taken at Plaintiffs' expense and without parental consent." (ECF No. 61 at 19.)

These arguments are not backed up by non-conclusory allegations in the First Amended Complaint. In their own factual background section in their own opposition, Plaintiffs agree that they alleged that Isaiah Sandoval (Phillip Bell III's stepfather) "brokered a deal" with Briscoe for Phillip III to attend Bishop Alemany and that Briscoe and Next Level received unspecified "compensation for this transaction." (ECF 61 No. at 3-4; Compl., ¶¶ 31, 33.) After "an unsuitable month at Bishop Alemany," Plaintiffs allege that Phillip III and his mother and stepfather "moved again" and enrolled Phillip III at Mission Viejo High School. (Compl., ¶ 37.) Plaintiffs concede that the First Amended Complaint does not allege that Briscoe had any role in the decision to switch from Bishop Alemany to Mission Viejo or that another "deal" or "transaction" was "brokered" at this time or that Briscoe or Next Level received any compensation in connection with the decision to move again or to attend Mission Viejo. (ECF No. 61 at 4.)

These admissions are fatal to Plaintiffs' claim that Briscoe or Next Level were unjustly enriched. They mean that the only allegation of compensation (which is also false, though we don't press its falsity as the basis for granting this motion to dismiss) involves conduct from before Phillip III's mother died, while Phillip III was living with his mother, and before any family court order directed Phillip to return to Sacramento. (Compl., ¶¶ 58-59 (Samantha died approximately 9 months after moving to Southern California in June 2024); ECF No. 27-3 (November 14, 2023 family court order; Compl., ¶ 49 (describing family court order).) The Court should disregard Plaintiffs' claims that they "will present multiple witnesses who personally heard Briscoe brokering deals with colleges in the $500,000 range." (ECF No. 61 at 19.) We have no idea what this means. For now, we will point out that no such allegation is contained in the First Amended Complaint, which alleges

supposed "compensation" in connection with a deal to attend Bishop Alemany High School only, not any college. (Compl., ¶¶ 31, 33.)

Plaintiffs next say Briscoe's alleged "enrichment" was "obtained through fraudulent means" because Briscoe supposedly told someone that he was Phillip III's "uncle." (ECF No. 61 at 19; Compl., ¶ 75.) The complaint draws no connection between this alleged misrepresentation, supposedly made at some unspecified time after Samantha's death and around the time Phillip III was starting his senior year at Mission Viejo, and the supposed "compensation" in connection with a "transaction" many months earlier to attend a completely different school—a plan that did not work out and was abandoned after only one month. (Compl., ¶ 37.)

These incoherent and inconsistent allegations do not plausibly show that Briscoe or Next Level was unjustly enriched at the expense of Plaintiffs. The Court should therefore dismiss the unjust enrichment claim brought against Briscoe and Next Level without leave to amend.

## III. CONCLUSION

For these reasons, and the reasons stated in our opening brief, the Court should either decline to exercise supplemental jurisdiction over the state law claims asserted against Briscoe and Next Level or should dismiss those claims, without leave to amend, because the facts alleged fail to state any claim against Briscoe or Next Level and it would be futile to allow an amendment here.

Dated: February 28, 2025

Respectfully submitted,

By: /s/Kevin Calia
     Kevin Calia

ILLOVSKY GATES & CALIA LLP
Kevin Calia (State Bar No. 227406)
kevin@illovskygates.com
Eva Schueller (State Bar No. 237886)
eschueller@illovskygates.com
1611 Telegraph Ave., Ste. 806
Oakland, CA 94612
Telephone: (415) 500-6640

*Attorneys for Defendants Steve Briscoe and Next Level Sports & Academics Foundation*