UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PHILLIP BELL JR.; LORNA BARNES; and
ANTHONY BARNES,

   Plaintiff,

v.

SADDLEBACK VALLEY UNIFIED SCHOOL
DISTRICT; KLUTCH SPORTS;
NEXT LEVEL SPORTS & ACADEMICS; and
ISAHIA SANDOVAL; EDWARD WONG
TRICIA OSBORNE, CHAD JOHNSON;
STEVE BRISCOE, AND DOES 1-20 in their
individual and official capacities,

   Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.: 4:24-CV-05545-JST

**PLAINTIFFS' RESPONSE TO DEFENDANT
CIF'S MOTION TO DISMISS PLAINTIFFS'
FIRST AMENDED COMPLAINT
PURSUANT TO FEDERAL RULES OF
CIVIL PROCEDURE, RULE 12(B)(6)**

Hon. Judge Jon S. Tigar

## I. INTRODUCTION

   Plaintiffs PHILLIP BELL, JR., LORNA BARNES, and ANTHONY BARNES ("Plaintiffs") submit this Opposition to Defendant CALIFORNIA INTERSCHOLASTIC FEDERATION's ("CIF") Motion to Dismiss. Contrary to CIF's arguments, this case is not merely about CIF's enactment of rules regarding student-athlete eligibility, but rather CIF's knowing failure to enforce its own rules as required under the law. Plaintiffs have sufficiently alleged facts demonstrating CIF's awareness of and deliberate inaction regarding violations of its regulations, which contributed to the harm suffered by Plaintiffs. At this stage, the Court should deny CIF's Motion to Dismiss in its entirety. However, should the Court find any deficiency in Plaintiffs' First Amended Complaint ("FAC"), Plaintiffs respectfully request leave to amend.

## II. STATEMENT OF RELEVANT FACTS

### A. Procedural Background

Plaintiffs initiated this action on August 20, 2024, alleging seven causes of action: (1) Violation of the Fourteenth Amendment – Interference with a Familial Relationship (42 U.S.C. § 1983); (2) Monell claim (42 U.S.C. § 1983); (3) Negligence; (4) Negligence – Respondeat Superior; (5) Intentional Infliction of Emotional Distress – Respondeat Superior; (6) Negligent Infliction of Emotional Distress; and (7) Intentional Infliction of Emotional Distress. Plaintiffs initially filed their Complaint without naming CIF as a Defendant. However, as the case progressed, Plaintiffs identified CIF's failure to enforce its own regulations as a critical factor contributing to the harm alleged, leading to CIF's inclusion as a Defendant in the First Amended Complaint. On January 6, 2025, this Court issued a Notice setting an Initial Case Management Conference for March 25, 2025, at 2:00 p.m. before the Honorable Jon S. Tigar.

### B. Factual Background

This case concerns CIF's failure to act despite being put on notice of multiple parties taking advantage of a minor and illegally interfering with the familial relationship, resulting in lasting and significant harm. CIF was informed that a high school teenager, PHILLIP BELL III ("PHILLIP III"), was blocked from any contact with his family and controlled by adults who sought to exploit his athletic abilities for their own benefit. CIF had knowledge that PHILLIP III's family was being wrongfully deprived of crucial moments in his life, including his senior year of high school, college decision-making period, and the time following his mother's passing when he most needed familial support.

Despite CIF being notified that a custody agreement was being violated, a court decision mandating a different course for the child's well-being was being ignored, court-ordered counseling was not being provided, and a convicted felon without custody rights was knowingly and wrongfully treated

as the sole parental decision-maker, CIF failed to take any action. CIF did not investigate or inquire into these clear violations of its own regulations. CIF was specifically made aware of misconduct involving Brisco, Next Level, and Saddleback Valley School District and its agents, yet it failed to initiate any investigation or enforcement of its own policies. CIF's deliberate inaction in the face of these clear violations demonstrates its knowing failure to enforce its own regulations, furthering the harm inflicted on PHILLIP III and his family.

PHILLIP III was  enrolled as a senior at Mission Viejo High School (hereinafter referred to as "MISSION") without the consent of FATHER and is residing at an address that has not been disclosed to FATHER by MISSION. (FAC, at    11). SAMANTHA BARNES (hereinafter referred to as "SAMANTHA") is the biological mother of PHILLIP III. (FAC, at    12). The maternal grandparents of PHILLIP III, Maria Lorna Barnes and Anthony Barnes (hereinafter referred to as "GRANDPARENTS" OR "PLAINTIFFS" collectively), helped raise PHILLIP III and have a custodial interest. (FAC, at    12,13). FATHER lived in Folsom, California, and shared 50/50 custody with SAMANTHA, who lived in nearby Sacramento, California. (FAC, at    26,27).

PHILLIP III lived in Sacramento with SAMANTHA and ISAIAH SANDOVAL (hereinafter referred to as "SANDOVAL" individually or "DEFENDANTS" collectively). SANDOVAL is the former husband of SAMANTHA BARNES. SANDOVAL has no legal custody right to PHILLIP III. (Exhibit A- Custody Agreement). (FAC, at    18,25).

While in Sacramento, PHILLIP III's athletic talent began attracting attention from coaches and scouts. (FAC, at    30). SANDOVAL, a convicted felon, degenerate gambler, drug user, and money-hungry stepfather, brokered a deal through devised a scheme to capitalize on the talents of PHILLIP III. (Exhibit B- Criminal Record). (FAC, at    31). SANDOVAL brokered a compensated deal with STEVE BRISCO (hereinafter referred to as "BRISCO" individually or "DEFENDANTS" collectively), the owner and operator of the nonprofit company, NEXT LEVEL. The deal was done under undue influence, and sent PHILLIP III play football for Bishop Alemany in Southern California, which has a record of prior incidents involving

unlawful sports recruitment practices, in direct violation of California Interscholastic Federation Rules. (Exhibit C- Bishop Alemany Prior Records). (FAC, at    22,32,34,37).

PLAINTIFFS began to be concerned when PHILLIP III was moved to Los Angeles California, in direct violation of the custody agreement. (FAC, at    35). After an unsuitable month at Bishop Alemany, SANDOVAL and SAMANTHA moved again and enrolled PHILLIP III at MISSION without FATHER'S knowledge or consent. (FAC, at    38). PHILLIP III reached out to FATHER in distress stating he did not want to be in Los Angeles, and was upset by the domestic violence and drug use between SAMANTHA and SANDOVAL. GRANDPARENTS also would visit SAMANTHA to find that there was no food in the home, alcohol was easily accessible, and there was little to no furniture. (Exhibit D - Police Reports). (FAC, at 41,42,43,45).

PLAINTIFFS immediately filed a legal action in Superior Court of California, requesting that PHILLIP III be returned to Sacramento to attend his old school, Catholic High School Christian Brothers, in which the Judge ordered SAMANTHA and SANDOVAL to return PHILLIP III to FATHER in Sacramento immediately after his first semester at MISSION. (Exhibit E, County of Sacramento Court Order). (FAC, at 48,50).

In his first semester at MISSION, PHILLIP III helped the football team capture a Division I-A State Football Championship and in the state title game, PHILLIP III was recognized as the most valuable player. (FAC, at    51). SADDLEBACK VALLEY UNIFIED SCHOOL DISTRICT (hereinafter referred to as "DISTRICT" individually or "DEFENDANTS" collectively) is a public school district under the laws of California. DISTRICT, SAMANTHA, and SANDOVAL were aware of the Court Order to have PHILLIP III return to Christian Brothers, but ignored it. (FAC, at    14,52). SAMANTHA would then enter PHILLIP III into a contractual relationship with KLUTCH, a Los Angeles-based sports agency. FATHER was not aware of PHILLIP III's contractual relationship with KLUTCH nor did FATHER consent to it. (Exhibit F - KLUTCH Contract). (FAC, at    55,57). Approximately nine months after the move to Los Angeles, SAMANTHA died under suspicious circumstances. (FAC, at    59).

On or about June 25th, 2024 SAMANTHA and SANDOVAL were allegedly vacationing in Las Vegas, Nevada. SAMANTHA, a type 1 diabetic, was without her medicine and was supplied cocaine by SANDOVAL. SAMANTHA began vomiting to the point of becoming lethargic. (FAC, at 60,61,63). Instead of seeking medical assistance, SANDOVAL left SAMANTHA in their hotel room alone for hours and allegedly went out gambling with SAMANTHA's money. (FAC, at 64). After receiving a phone call that SAMANTHA was found dead, SANDOVAL left Las Vegas almost immediately, taking only SAMANTHA's bank cards, phone, purse, and thousands of dollars in casino chips, leaving all of her other belongings behind. (FAC, at 66). The next day SANDOVAL went shopping with SAMANTHA'S bank card spending nearly a thousand dollars on items at a Footlocker in Los Angeles. (Exhibit G- Bank Statements). (FAC, at 67).

PHILLIP III called FATHER in tears over the news of his mother's death, and FATHER immediately flew to Los Angeles for his son. (FAC, at 68). PHILLIP III provided his FATHER his address but when FATHER arrived at the address SANDOVAL coerced PHILLIP III not to open the door. (FAC, at 69,70). After SAMANTHA's death, PHILLIP III was harbored without parental consent at another high school student's home that was organized with MISSION and DISTRICT. (FAC, at 72).

DISTRICT and MISSION immediately decided to re-enroll PHILLIP III in school for his senior year with SANDOVAL and BRISCO listed as his guardians, although they knew that it violated DISTRICT's policy because FATHER, the only parent with custody rights, lived over 400 miles away from the DISTRICT. (Exhibit H - SVUSD Residency Verification Form). (FAC, at 75). DISTRICT and MISSION publicly promoted a GoFundMe page started by SANDOVAL which stated that it would be used for SAMANTHA'S funeral expenses and children although they knew that he did not have custodial rights. (FAC, at 76).

KLUTCH also monetarily supported this GoFundMe, and SANDOVAL did not use any of the funds from the go fund me for SAMANTHA'S funeral, but demanded that GRANDPARENTS pay for all expenses. (Exhibit I- GoFundMe Screenshots); (Exhibit J- Funeral Text Messages). (FAC, at 77,78,79).

DISTRICT and MISSION also allowed PHILLIP III to participate in summer football practice without consent from FATHER. (FAC, at 82). After learning of this, on July 5, 2024, PLAINTIFF'S sent a

cease-and-desist letter to all DEFENDANTS asking them not to have contact with PHILLIP III and to notify them of PHILLIP III's whereabouts. (See Exhibit K- Cease and Desist Letter). (FAC, at    83,84). The cease-and-desist was ignored and violated by all DEFENDANTS in direct violation of California law, the court order, and CIF regulations. (Exhibit L- Football Screenshot). (FAC, at    85). BRISCO and NEXT LEVEL also intentionally interfered with the PLAINTIFFS custodial rights by fraudulently adding himself as an emergency contact on official school documentation, claiming to be PHILLIP III's uncle. (FAC, at    86).

EDWARD WONG (hereinafter referred to as "WONG " individually or "DEFENDANTS" collectively) was the Board President of DISTRICT at all relevant times. TRICIA OSBORNE (hereinafter referred to as "OSBORNE" individually or "DEFENDANTS" collectively) was an agent of DISTRICT and worked at MISSION as the school's principal. CHAD JOHNSON (hereinafter referred to as "JOHNSON " individually or "DEFENDANTS" collectively) was an agent of DISTRICT and worked at MISSION as the Head Football Coach. (FAC, at    19,20,21). MISSION, DISTRICT, OSBORNE, and JOHNSON were all aware of SAMANTHA's death, SANDOVAL's lack of custodial rights, BRISCO's fraudulent claim of relation to PHILLIP III, but still allowed PHILLIP III to enroll at MISSION for the 2024-2025 school year without parental consent. (Exhibit M- 2024-2025 MISSION Enrollment). (FAC, at    93). When PLAINTIFFS reached out with concern for their son and grandson, OSBORNE and JOHNSON disclosed that they were aware of PHILLIP III's location but refused to share it. (FAC, at    96). JOHNSON intentionally interfered with PLAINTIFFS' rights by making promises to PHILLIP III that he would be able to participate in football even if he did not have any consent from PLAINTIFFS. (FAC, at    98). DISTRICT, WONG, JOHNSON, and OSBORNE also took PHILLIP III and SANDOVAL 2,400 miles across state lines on a trip to Hawaii for a football game without PLAINTIFFS' consent. (Exhibit N- Hawaii Screenshot). (FAC, at    100). DEFENDANTS used the influence of trips, living in opportunities with millionaires, clothing, housing, fame, fortune, and other resources to manipulate a minor to not have contact with his whole family, so they could continue to profit from PHILLIP III's success in direct violation of CIF regulation, California law, and the United States Constitution and Common Law. (FAC, at    101,107).  CIF was made aware of the relevant facts and chose

not to take any action, failing to conduct even a minimal investigation into Brisco, Next Level, or the Saddleback Valley School District and its agents.

## ARGUMENT

### A. STANDARDS ON A MOTION TO DISMISS

A Motion to Dismiss should be denied if the subject complaint contains factual allegations adequate to give defendants fair notice of the pending claims and enables them to defend themselves if the complaint's allegations, taken as true, plausibly suggest entitlement to relief. *Starr v. Baca, 652 F.3d 1202, 1216-1217 (9th Cir. 2011), rehearing en banc denied, 659 F.3d 850 (9th Cir. 2011).* When ruling on a dismissal motion, the Court must accept as true all factual allegations in the complaint. *Erickson v. Pardus, 551 U.S. 89, 94 (2007).* The Court must also draw inferences in favor of the plaintiff; the complaint should be construed favorably to the pleader. *Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Walleri v. Federal Home Loan Bank of Seattle, 83 F.3d 1575, 1580 (9th Cir. 1996).* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted).* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id., 556 U.S. at 677-78.*

"A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." *Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).* Dismissal for failure to state a claim is proper "only if it is clear that no relief could be granted under any set of facts that could be provided consistent with the allegations." *Hishon v. King &amp; Spalding, 467 U.S. 69, 73 (1984).* The issue is whether the plaintiff is entitled to offer evidence to support the claims, not whether based on a complaint's allegation they will prevail as a matter of law. *Scheuer, supra 416 U.S. at*

*236 (no quotations added).* Furthermore, the Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).*

As applied to Monell, this jurisdiction has specifically held that at this stage of litigation ("Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is *im*plausible") (emphasis in original). Certainly, Plaintiff will need evidence to support its *Monell* claim at trial (and even to withstand a motion for summary judgment, if the Defendants files one). But the Defendants cannot avoid continuing the litigation at this stage merely by raising doubts about the persuasiveness of Plaintiff's eventual proof, so long as Plaintiff's allegations are plausible, which they are. *Martin v. City of Portland, No. 3:19-cv-1647-SI, at *11-12 (D. Or. Jan. 21, 2020)* At this stage of the litigation plaintiff does not need to set out "detailed factual allegations." *BellAtl. Corp.*, 550 U.S. at 555.

## IV. LEGAL ARGUMENT

**A. Plaintiffs' Complaint Sufficiently Alleges That CIF Followed a Policy as Defined in Monell**

CIF argues that Plaintiffs' Complaint fails to sufficiently allege that CIF followed a policy, custom, or practice that satisfies the Monell standard. However, a properly pled Monell claim does not require exhaustive factual detail but must provide sufficient allegations to give the defendant fair notice of the claim and allow for meaningful discovery.

Under Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978), a municipality or similar entity may be liable under 42 U.S.C. § 1983 when an official policy, custom, or practice is the moving

force behind a constitutional violation. A Monell claim can be established in three ways: (1) by identifying an express policy that causes the constitutional deprivation, (2) by demonstrating a widespread practice that amounts to a custom, or (3) by establishing that a person with final policymaking authority caused the constitutional injury. See City of Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985); Pembaur v. City of Cincinnati, 475 U.S. 469, 480-81 (1986).

Here, Plaintiffs explicitly allege that CIF followed an "expressly adopted official policy to ignore the CIF rules and 'put the child first.'" (ECF No. 27, § 172). This claim meets the pleading standard outlined in Ashcroft v. Iqbal, 556 U.S. 662 (2009), and Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). Unlike in Brown v. County of Mariposa, where the allegations were purely conclusory, Plaintiffs provide factual support for their claims by referencing CIF's inaction despite knowledge of a violation of its own rules. See Brown v. County of Mariposa, No. 1:18-cv-01541-LJO-SAB (E.D. Cal.).

Furthermore, courts have recognized that policies need not be formally written to constitute a Monell claim. The Ninth Circuit has held that an unwritten policy or de facto practice can suffice if it is "so permanent and well settled as to constitute a 'custom or usage' with the force of law." Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996). Plaintiffs' allegations suggest a longstanding practice by CIF of disregarding its own regulations when convenient, which is sufficient to survive a motion to dismiss.

Plaintiffs have also alleged that Brisco, Next Level, and Saddleback, along with their agents, violated CIF Bylaw 510, which states: "A. The use of undue influence by any person(s) to secure or retain a student or their parent(s)/guardian(s)/caregiver as residents may cause the student to be ineligible for high school athletics for a period of one (1) year and shall jeopardize the standing of that high school in the CIF…." CIF's failure to investigate and enforce this bylaw

further supports Plaintiffs' claim that its policy, custom, or practice resulted in a constitutional deprivation. Specifically, CIF failed to implement and enforce its own policies by neglecting to investigate the undue influence exerted by Brisco, Next Level, and Saddleback Valley School District. Moreover, CIF allowed Saddleback Valley to implement its own policy of "putting the child first," effectively bypassing CIF's own established regulations and procedures. This tacit approval of Saddleback Valley's independent policy underscores CIF's failure to uphold its own governance and enforce uniform standards, further substantiating Plaintiffs' Monell claim.

**B. Plaintiffs Have Sufficiently Alleged Causation Under Monell**

CIF further contends that Plaintiffs fail to establish a causal link between CIF's policy and the alleged constitutional deprivation. Under Monell, a plaintiff must demonstrate that the defendant's policy or custom was the "moving force" behind the constitutional violation. Monell, 436 U.S. at 694; see also Galen v. County of Los Angeles, 477 F.3d 652, 667 (9th Cir. 2007).

Here, Plaintiffs sufficiently allege that CIF's express or de facto policy of ignoring its own rules resulted in a deprivation of their constitutional rights. The failure to enforce CIF Bylaw 510 directly impacted Plaintiffs by allowing a transfer that allegedly interfered with their familial relationship. Courts have held that policies leading to state actors facilitating or permitting conduct that infringes on constitutional rights can meet the Monell causation requirement. See Oviatt v. Pearce, 954 F.2d 1470, 1477 (9th Cir. 1992) (holding that inaction or failure to act in the face of a known risk of constitutional deprivation can be sufficient for Monell liability).

Furthermore, Defendants' argument that CIF had no prior notice of a custody order defining Student's parental rights is factually inaccurate because Plaintiffs Counsel provide CIF with all of the relevant facts. However, even if it was accurate, its irrelevant at this stage because

the factual allegations must be accepted as true, and Plaintiffs' claim that CIF's failure to act on information it received constituted a constitutional deprivation must be evaluated through discovery.

Lastly, Defendants' assertion that CIF's inaction could not have caused any harm is contradicted by precedent recognizing that deliberate indifference to an individual's rights can constitute the moving force behind a constitutional violation. See Connick v. Thompson, 563 U.S. 51, 61 (2011); City of Canton v. Harris, 489 U.S. 378, 388 (1989). Plaintiffs' Complaint, therefore, sufficiently alleges a Monell claim, and Defendants' motion to dismiss should be denied.

### C. Plaintiffs' Complaint Fails to Plead Sufficient Facts to Support the Claim for Failure to Train

CIF contends that Plaintiffs have failed to allege facts sufficient to support a failure-to-train claim. However, Plaintiffs have met the standard established in Connick v. Thompson, 563 U.S. 51 (2011), and its progeny. To prevail on a failure-to-train claim, Plaintiffs must show that CIF was deliberately indifferent to the need to train its employees and that the lack of training actually caused the deprivation of constitutional rights. Flores v. County of L.A., 758 F.3d 1154, 1159 (9th Cir. 2014).

Plaintiffs have alleged that CIF's existing training program was inadequate in relation to the tasks its employees were required to perform, that CIF's failure to train amounted to deliberate indifference to the rights of individuals like PHILLIP III and his family, and that this inadequacy led to a constitutional deprivation. See Merritt v. County of Los Angeles, 875 F.2d 765, 770 (9th Cir. 1989).

Further, under Connick, a pattern of similar constitutional violations by untrained employees is generally necessary to establish deliberate indifference. 563 U.S. at 62. Plaintiffs have alleged that CIF not only failed to train its employees to handle the usual and recurring situations they encountered but also failed to act despite clear notice of ongoing constitutional violations.

The FAC asserts that CIF officials, including James Perry and Mike West, were involved in decisions that directly contributed to the deprivation of Plaintiffs' rights. CIF's failure to train and oversee its employees enabled the violations to continue unchecked, making it complicit in the harm suffered by Plaintiffs.

**D. PLAINTIFFS SEEK LEAVE TO AMEND IF NECESSARY**

In the event that the Court finds any deficiencies in the FAC, Plaintiffs respectfully request leave to amend. Leave to amend should be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). Plaintiffs are prepared to clarify any allegations necessary to meet the Court's concerns.

**V. CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court deny CIF's Motion to Dismiss in its entirety. However, should the Court find any deficiency in the FAC, Plaintiffs seek leave to amend to address any such concerns.

Respectfully submitted,

/s/ Jamir Davis

Jamir Davis, Esq.
J. Davis Law Firm, PLLC
328 Scott Street
Covington, KY 41011
(859) 750-5033
jdavis@jdaviscounsel.com
www.jdaviscounsel.com

**PROOF OF SERVICE**
**Bell, et al. v. Saddleback Valley Unified School District, et al.**
**Case No. 4:24-CV-05545-JST**

I am over the age of 18, and not a party to this action.
On February 28, 2025, I served the following document(s) in this matter:

**PLAINTIFFS' RESPONSE TO DEFENDANT CIF'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE, RULE 12(B)(6)**

A true and correct copy of the document(s) was served on all parties in this action, addressed as indicated below, by the following means: Email


J. Scott Donald
Spinelli | Donald | Nott
300 University Avenue, Suite 100
Sacramento, CA  95825
Telephone: (916) 448-7888
Fax: (916) 448-6888

Kevin Calia
ILLOVSKY GATES & CALIA LLP
Kevin Calia (State Bar No. 227406)
Eva Schueller (State Bar No. 237886)
kevin@illovskygates.com
eschueller@illovskygates.com
1611 Telegraph Ave., Ste. 806
Oakland, CA 94612
Telephone: (415) 500-6640
*Attorneys for Defendants Steve Briscoe and*
*Next Level Sports & Academics Foundation*

Anthony N. DeMaria
DEMARIA LAW FRIM, A.P.C.
Anthony N. DeMaria (State Bar No. 177894)
ademaria@demarialawfirm.com
1684 W. Shaw Ave., Ste. 101
Fresno, CA 93711
Telephone: (559) 206-2410
*Attorneys for Defendants Saddleback Valley*
*Unified School District, Edward Wong, Tricia*
*Osborne, and Chad Johnson*

Bryan M. Sullivan
EARLY SULLIVAN WRIGHT GIZER & MCRAE LLP
Bryan M. Sullivan (State Bar No. 209743)
bsullivan@earlysullivan.com
6420 Wilshire Blvd., 17 th Floor
Los Angeles, CA 90048

Telephone: (323) 301-4660
*Attorneys for Klutch Sports Group, LLC*

/s/ London Burge