1

2

3

4 UNITED STATES DISTRICT COURT

5 NORTHERN DISTRICT OF CALIFORNIA

6

7 PHILLIP BELL JR., et al.,

Case No. 24-cv-05545-JST

8 Plaintiffs,

**ORDER RESOLVING MOTIONS TO
DISMISS AND MOTION TO STRIKE**

9 v.

Re: ECF No. 44, 46, 49, 50, 56

10 SADDLEBACK VALLEY UNIFIED
SCHOOL DISTRICT, et al.,

11 Defendants.

12

13        The Plaintiffs in this case are Phillip Bell Jr. ("Bell Jr."), the father of Phillip Bell III

14 ("Phillip III"); Maria Lorna Barnes, the maternal grandmother of Phillip III; and Anthony Barnes,

15 the maternal grandfather of Phillip III.  They contend that Defendants worked individually and in

16 concert to interfere with Plaintiffs' familial relationship with Phillip III, including interfering with

17 the enforcement of a court custody order and arranging for the transportation and housing of

18 Phillip III without Plaintiffs' consent, to further Defendants' own gain surrounding Phillip III's

19 successes as an emerging high school football talent.

20        The Defendants are Saddleback Valley Unified School District Board ("Saddleback

21 District"); California Interscholastic Federation ("CIF"); Klutch Sports Group ("Klutch"); Next

22 Level Sports & Academics ("Next Level"); Steve Briscoe, the owner and operator of Next Level;

23 Isaiah Sandoval; Edward Wong, the Board President of Saddleback District at all relevant times;

24 Tricia Osborne, the principal of Mission Viejo High School ("Mission High"); and Chad Johnson,

25 the head football coach of Mission High.

26        Before the Court are motions to dismiss filed by Saddleback District, Osborne, Wong, and

27 Johnson (collectively, "District Defendants"); CIF; Klutch; and Next Level and Briscoe, ECF Nos.

28 44, 46, 49, 56, as well as a motion to strike by Saddleback District, ECF No. 50.  The Court will

grant the motions by CIF, Klutch, and Next Level and Briscoe.  It will grant the District Defendants' motion to dismiss in part and deny it in part, and it will deny their motion to strike.

## I.    BACKGROUND[1]

Phillip III began attracting the attention of coaches and scouts throughout California while he played at his high school in Sacramento.  ECF No. 27 ¶ 29.  At this time, Phillip III lived with his mother, Samantha Barnes, and his stepfather, Defendant Isaiah Sandoval.  *Id.* ¶ 24.  Bell Jr. lived nearby in Folsom, California, sharing parenting duties and custody rights with Samantha Barnes.  *Id.* ¶ 25.  Samantha Barnes's parents also lived nearby in Herald, California, and "actively participated in raising Phillip III."  *Id.* ¶ 27.

As Phillip III attracted attention, Sandoval sought to financially capitalize on Phillip III's talents and "brokered a deal" with Briscoe—one of Phillip III's trainers—and Briscoe's non-profit company, Next Level, to send Phillip III to attend Bishop Alemany High School in Southern California without Bell Jr.'s knowledge or consent.  *Id.* ¶¶ 30–31.  Following this deal, Barnes, Sandoval, and Phillip III moved to Los Angeles without notifying Bell Jr.  *Id.* ¶ 34.

"After an unsuitable month at Bishop Alemany," Sandoval and Samantha Barnes moved again and enrolled Phillip III at Mission High in Mission Viejo, California without Bell Jr.'s knowledge or consent.  *Id.* ¶ 37.  "While attending Mission, the bond between Phillip III, Father, Grandma, and Grandpa became strained, deepening the rift between them caused by the distance."  *Id.* ¶ 39.  Also, Bell Jr. had always intended that Phillip III to attend a Catholic high school rather than a public high school.  *Id.* ¶ 38.

Phillip III experienced a turbulent home life due to Sandoval's drug abuse, verbal abuse of Phillip III, and physical abuse of Samantha Barnes—leading to two police reports being filed for domestic violence.  *Id.* ¶¶ 40–45.  Phillip III reported the various abuses to his grandparents, and when they traveled to Los Angeles to see him, they found him "uncommunicative and a shadow of his former self."  *Id.* ¶¶ 45–46.  Plaintiffs then obtained an order from San Francisco Superior

---

[1] For the purpose of resolving Defendants' motions to dismiss, the Court accepts as true the allegations in the first amended complaint, ECF No. 27 ("FAC").  *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

Court on November 20, 2023, ordering that Phillip III be enrolled in school in Sacramento.  *Id.* ¶¶ 47, 49; *see also* ECF No. 27-3.  Briscoe testified against Bell Jr. as a part of these custody proceedings in "an attempt to continue his scheme to broker deals on behalf of Phillip III."  ECF No. 27 ¶ 48.  Despite the custody order, Samantha Barnes and Sandoval kept Phillip III "hidden in the Los Angeles area" away from Plaintiffs.  *Id.* ¶¶ 52–53.  Samantha Barnes also entered Phillip III—without Bell Jr.'s knowledge or consent—into a contractual relationship with Klutch to manage the name, image, and likeness deals on behalf of Phillip III.  *Id.* ¶¶ 54–55.

On June 25, 2024, about nine months after the move to the Los Angeles area, Samantha Barnes died under suspicious circumstances while in Las Vegas with Sandoval.  *Id.* ¶¶ 58–66.  During this time, Phillip III became distraught over his mother's death and was staying at the address of a parent associated with Saddleback District and Mission High.  *Id.* ¶¶ 67, 71.  When Bell Jr. traveled to this address in Los Angeles, Sandoval "coerced Phillip III not to open the door," and Bell Jr. was denied access to Phillip III.  *Id.* ¶ 69–71.

Defendants began conspiring at this time to hide Phillip III from Plaintiffs and keep his whereabouts a closely guarded secret so that they could continue benefit from his stardom despite knowing their actions—which included re-enrolling Phillip III at Mission high, with Sandoval and Briscoe listed as his guardians—violated the custody order.  *Id.* ¶¶ 72–75.  Saddleback District and Mission High then promoted a page on the website Go Fund Me that claimed to be raising funds for Samantha Barnes's funeral expenses and children but was in fact designed to assist Sandoval "in raising money to harbor Phillip III" from Plaintiffs.  *Id.* ¶¶ 76–77.  Klutch donated $1,000 to the page.  *Id.* ¶ 78.

After learning that Phillip III was participating in summer football practice, Plaintiffs sent a cease-and-desist letter on July 5, 2024, to Osborne, the principal of Mission High, informing her that Sandoval had no legal parental rights to Phillip III and asked that the staff at Mission High cease communications with Phillip III and return him to Plaintiffs.  *Id.* ¶¶ 83–85; *see also* ECF No. 27-5.  On July 9, 2024, counsel for Saddleback District confirmed receipt of the cease-and-desist letter and stated that its employees were "not currently in communication with Phillip and have been directed to refrain from communicating with him at this time."  ECF No. 27 ¶ 89.  Despite

United States District Court
Northern District of California

1  this letter, Saddleback District employees remained in communication with Phillip III, including

2  through continued football games and practices.  *Id.* ¶ 90.  And Osborne, Johnson, and Wong all

3  allowed Phillip III to enroll in classes at Mission High for the 2024–2025 school year despite

4  knowing that they did not have Bell Jr.'s consent and that Sandoval lacked any legitimate

5  custodial rights.  *Id.* ¶ 91.  Plaintiffs thus traveled to Los Angeles to meet with Saddleback

6  District, Osborne, and Johnson to discuss Phillip III's whereabouts—which Osborne and Johnson

7  knew of but refused to disclose to Plaintiffs.  *Id.* ¶¶ 95-96.  Johnson also admitted to "having

8  Phillip III over to his home for dinner and that he was arranging for families to house and care for

9  Phillip III."  *Id.* ¶ 97.

10       In the following months, Defendants "used the influence of trips to Hawaii, opportunities

11  to live with millionaires, clothing, housing, fame, fortune, and other resources to persuade Phillip

12  III not to have contact with Plaintiffs."  *Id.* ¶¶ 98–101.  Defendants knew that Phillip III was

13  supposed to undergo court ordered counseling to mend his relationship with Plaintiffs and to cope

14  with the death of his mother but refused to assist.  *Id.* ¶¶ 107–08.  Plaintiffs also asked CIF for

15  assistance and for an investigation to be performed into the Defendants' violations of CIF

16  regulations, but CIF refused.  *Id.* ¶¶ 104–106.  Importantly, Phillip III became 18 years old on

17  August 30, 2024.  *See* ECF No. 27-1 at 2.

18       Plaintiffs assert the following causes of action: (1) violation of Section 1983 for

19  interference of a familial relationship under the Fourteenth Amendment against Wong, Osborne,

20  and Johnson; (2) violation of Section 1983 under *Monell* against Saddleback District; (3)

21  negligence against Osborne, Johnson, Briscoe, Next Level, Sandoval, and Klutch; (4) negligence

22  under a theory of respondeat superior against the Saddleback District, Wong, and Osborne; (5)

23  intentional infliction of emotional distress ("IIED") under a theory of respondeat superior against

24  the Saddleback District, Wong, and Osborne; (6) negligent infliction of emotional distress against

25  the District Defendants, Briscoe, Next Level, Sandoval, and Klutch; (7) IIED against Osborne,

26  Johnson, Briscoe, Next Level, Sandoval, and Klutch; (8) unjust enrichment against the Saddleback

27  District, Klutch, Johnson, Osborne, Briscoe, and Next Level; and (9) violation of Section 1983

28  under *Monell* against CIF.  *See* ECF No. 27 ¶¶ 115–80.

1    **II.    JURISDICTION**

2        This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1367.

3    **III.    LEGAL STANDARD**

4        **A.    Rule 12(b)(3)**

5        Under Federal Rule of Civil Procedure 12(b)(3), a party may file a motion to dismiss on

6    the basis of improper venue. *Royal Hawaiian Orchards, L.P. v. Olson*, 2015 WL 3948821, at *1

7    (C.D. Cal. June 26, 2015) (citing Fed. R. Civ. P. 12(b)(3)). "Once venue is challenged, the

8    plaintiff bears the burden of showing that venue is proper." *Underberg v. Emp'rs Mut. Cas. Co.*,

9    2016 WL 1466506, at *3 (D. Mont. Apr. 14, 2016) (citing *Piedmont Label Co. v. Sun Garden

10   Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979)). In considering a Rule 12(b)(3) motion to

11   dismiss, the court need not accept the pleadings as true and may consider facts outside the

12   pleadings. *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1081 (9th Cir. 2009). "If the court finds that the

13   case has been filed 'in the wrong division or district,' it must 'dismiss, or if it be in the interest of

14   justice, transfer such case to any district or division in which it could have been brought.'" *Allstar

15   Mktg. Grp., LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1126 (C.D. Cal. 2009)

16   (quoting 28 U.S.C. § 1406(a)). "Even if the court determines that venue is proper, it may still

17   transfer for the convenience of parties and witnesses, in the interest of justice." *Del Toro v. Atlas

18   Logistics*, 2013 WL 796593, at *2 (E.D. Cal. Mar. 4, 2013). "In either case, the decision to

19   transfer rests in the discretion of the court." *Id.* (citing 28 U.S.C. 1404(b); *King v. Russell*, 963

20   F.2d 1301, 1304 (9th Cir. 1992) (holding that the trial court did not abuse its discretion under 28

21   U.S.C. § 1406(a) when it chose to dismiss, and not transfer, the action because of

22   improper venue)).

23       **B.    Rule 12(b)(6)**

24       To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a

25   complaint must contain "a short and plain statement of the claim showing that the pleader is

26   entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal "is appropriate only where the complaint

27   lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."

28   *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

United States District Court
Northern District of California

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. While this standard is not "akin to a 'probability requirement' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In determining whether a plaintiff has met the plausibility requirement, a court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the plaintiff. *Knievel*, 393 F.3d at 1072.

## IV.  DISCUSSION

### A.  Venue

Venue is proper in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

The District Defendants and Plaintiffs dispute whether the majority of events giving rise to this action took place in Southern California, *see* ECF No. 49-3 at 10–11, and thus whether venue is proper in this Court under the second subsection of the statute. However, at least one defendant—Next Level—is alleged to reside in this judicial district, *see* ECF No. 27 ¶ 16 (alleging that Next Level is located in Antioch, California), and all Defendants appear to be residents of California. Venue is thus proper under 28 U.S.C. § 1391(b)(1).

6

1

2

**B.**    **Section 1983—Fourteenth Amendment**

**1.**    **Wong, Osborne, and Johnson**

Plaintiffs assert that the District Defendants violated Plaintiffs' fundamental right to "family integrity, familial association, and the right of Plaintiffs to direct the upbringing of Phillip III" by "develop[ing] and implement[ing] a plan to prevent Plaintiffs from contacting their minor child by enrolling" Phillip III at Mission High and housing and transporting him without consent. ECF No. 27 ¶¶ 117–18.

"[T]he Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 66 (2000) (plurality opinion). "This right is commonly referred to as the *Meyer–Pierce* right because it finds its origin in two Supreme Court cases, *Meyer v. Nebraska,* 262 U.S. 390 (1923), and *Pierce v. Society of Sisters,* 268 U.S. 510 (1925)." *Fields v. Palmdale Sch. Dist.*, 427 F.3d 1197, 1204 (9th Cir. 2005), *opinion amended on denial of reh'g sub nom. Fields v. Palmdale Sch. Dist. (PSD)*, 447 F.3d 1187 (9th Cir. 2006). And it includes "the right of parents to be free from state interference with their choice of the educational forum itself." *Id.* at 1204, 1207.

The District Defendants argue that Plaintiffs' Section 1983 claim against Wong, Osborne, and Johnson should be dismissed because Plaintiffs make only vague and conclusory allegations and fail to demonstrate "an actual connection or link between the actions of the defendants and the deprivation allegedly suffered by the Plaintiffs." ECF No. 49 at 20. The Court disagrees.

Plaintiffs have made specific allegations that Wong, Osborne, and Johnson interfered with Plaintiffs' direction of Phillip III's care, custody, and control by intentionally disregarding Plaintiffs' express objections as to Phillip III's enrollment at Mission High, facilitating his housing, and transporting him out of the state. First, Plaintiffs notified the District Defendants through the July 5, 2024, cease-and-desist letter that Sandoval had no legal parental rights to Phillip III; Plaintiffs did not consent to Phillip III's enrollment at Mission High for the 2024-25 school year; and Plaintiffs wanted the staff at Mission High to cease communications with Phillip III and return him to Plaintiffs. ECF No. 27 ¶¶ 83–85; *see also* ECF No. 27-5. The letter also

United States District Court
Northern District of California

attached the San Francisco Superior Court order requiring Phillip III to return to Sacramento.  *See* ECF No. 27-5 at 2.  Counsel for Saddleback District then confirmed receipt of the letter and stated that its employees were "not currently in communication with Phillip and have been directed to refrain from communicating with him at this time."  ECF No. 27 ¶ 89.  Yet Plaintiffs allege that *after* receipt of the letter and being "directed to refrain from communicating with [Phillip III]," Osborne, Johnson, and Wong allowed Phillip III to enroll in classes at Mission High for the 2024-25 school year and continued meeting with Phillip III—including arranging the transport of Phillip III to Hawaii for a football game without Plaintiff's consent—all to "influence him away from Plaintiffs."  *Id.* ¶¶ 91, 94, 100.  Plaintiffs also allege that when they traveled to Los Angeles to meet with Osborne and Johnson, Johnson admitted to "having Phillip III over to his home for dinner and that he was arranging for families to house and care for Phillip III."  *Id.* ¶¶ 95–97.  Finally, Plaintiffs allege that the conduct described above caused them to be separated from Phillip III and interfered with their familial relationship and custody rights.  *See id.* ¶ 119.

Plaintiffs have made non-conclusory allegations supporting their claim that Wong, Osborne, and Johnson interfered with their right to make decisions concerning the care and control of Phillip III—including in their choice of his educational forum.  Accordingly, the Court declines to dismiss Plaintiffs' Section 1983 claim against Wong, Osborne, and Johnson.  *Cf. Hudacko v. Regents of Univ. of California*, No. 3:23-CV-05316-SI, 2024 WL 3908113, at *9 (N.D. Cal. Aug. 20, 2024) (finding it premature to determine "whether a violation of the custody order, if proven, would rise to the level of a violation of plaintiff's constitutional right 'to make decisions concerning the care, custody, and control' of his child and declines to dismiss on this basis at the pleadings stage").

### 2.   *Monell* Liability

A local government may be held "liable for an injury under § 1983 under three possible theories."  *Rodriguez v. County of Los Angeles*, 891 F.3d 776, 802 (9th Cir. 2018).  Under the first, "a local government may be liable if 'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflict[ed] the injury.'"  *Id.* (alteration in original) (quoting *Monell v. Department of Social*

*Services*, 436 U.S. 658, 694 (1978)).  Second, a local government's failure to train its employees

may rise to the level of actionable "deliberate indifference" where "the need for more or different

training is so obvious, and the inadequacy so likely to result in the violation of constitutional

rights, that the policymakers of the city can reasonably be said to have been deliberately

indifferent to the need." *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)).

Finally, a Section 1983 plaintiff may prevail where "the individual who committed the

constitutional tort was an official with final policy-making authority or such an official ratified a

subordinate's unconstitutional decision or action and the basis for it." *Id.* at 802–03 (quoting

*Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1097 (9th Cir. 2013)).  Each theory of liability is a

separate legal theory that will involve different methods for proving liability.  *See Hartzell v.*

*Marana Unified Sch. Dist.*, 130 F.4th 722, 735 (9th Cir. 2025) (collecting cases treating the

different *Monell* theories as separate).

### a. Saddleback District

Here, while the FAC primarily alleges municipal liability against Saddleback District for

having an official policy of "put the child first" that ignores its own bylaws and interferes with

familial relations, it also asserts that Saddleback District is liable under *Monell* for a "final act of

policy maker" and for a failure to train its personnel to manage the custody situation that arose

here.  *See* ECF No. 27 at 26–27.

As to the "official policy" theory of liability, the District Defendants argue that Plaintiffs

make only conclusory allegations and fail to state sufficient facts to show that any alleged policy

was the moving force behind the alleged constitutional violation.  *See* ECF No. 49 at 21.  The

Court agrees.  Plaintiffs allege that Osborne and Johnson "acted pursuant to an expressly adopted

official policy to ignore the [Saddleback District] bylaws and 'put the child first' which was a

widespread or longstanding practice or custom of the [Saddleback District]."  ECF No. 27 ¶ 125.

Such conclusory allegations, without supporting factual allegations, are insufficient to state

a *Monell* claim.  *See AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir.

2012) (to state a *Monell* claim plaintiff must allege facts to support that a policy or custom

existed).  The FAC fails to explain what exactly the "put the child first" policy is or identify any

facts showing that such a policy even existed.  And Plaintiffs do not allege that any other person or family was subject to treatment that would support an inference of "a widespread practice . . . so permanent and well settled to constitute a custom."  *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (quotation marks and citation omitted).  Indeed, other parts of the FAC contradict these allegations by suggesting that the District Defendants acted "*in violation* of District policy" by enrolling Phillip III without consent of Bell Jr.  *See* ECF No. 27 ¶ 118 (emphasis added). Accordingly, the Court dismisses Plaintiffs' *Monell* claim against the District Defendants under the theory of an official policy or custom with leave to amend.

However, because the District Defendants do not argue that Plaintiffs have not adequately stated a *Monell* claim under their theory that a final policy maker—Wong, Osborne, or Johnson— committed an act leading to the alleged constitutional violation, *see generally* ECF No. 49 at 20– 21, the Court declines to dismiss the entirety of Plaintiffs' second cause of action under *Monell*. *Cf. Rush v. Nutrex Rsch., Inc.*, No. C 12-01060 LB, 2012 WL 2196144, at *4 (N.D. Cal. June 13, 2012) (finding that a claim survives at the motion-to-dismiss stage if the movant does not challenge all theories supporting that claim); *see also Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) ("We have held that dismissal for failure to state a claim is 'proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory.'") (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)).  Accordingly, Plaintiffs may proceed with their remaining theories of liability under *Monell*.[2]

### b.    CIF

Plaintiffs similarly assert that CIF is liable under *Monell* for having an official policy to ignore CIF rules and "put the child first" and for not having adequate training policies to prevent violations of the law by its employees.  *See* ECF No. 27 ¶¶ 169.  CIF argues that Plaintiffs' *Monell* claims against it should be dismissed because Plaintiffs have failed to sufficiently allege facts

---

[2] Although the Court is skeptical that Plaintiffs have stated sufficient facts to support their claim under a failure-to-train theory, the District Defendants have also not challenged that theory. Plaintiffs' cause of action for *Monell* liability under a failure-to-train theory therefore also survives.

United States District Court
Northern District of California

1    establishing any official CIF policy leading to the alleged constitutional violations or any failure

2    by CIF to train its employees.  *See* ECF No. 56 at 8–11.  For the same reasons set forth above, the

3    Court agrees with CIF.

4         With regard to Plaintiffs' claim that CIF allowed Saddleback District to implement its own

5    "put the child first" policy in violation of CIF rules, the Court finds that this claim is deficient

6    because Plaintiffs have failed to allege sufficient facts that such a policy existed.  As explained

7    above, Plaintiffs do not allege that there were any other instances in which such a policy was

8    enforced to interfere with family relations to support an inference of "a widespread practice . . . so

9    permanent and well settled [as] to constitute a custom."  *City of St. Louis*, 485 U.S. at

10   127 (quotation marks and citation omitted).  Plaintiffs' remaining allegations merely state in

11   conclusory fashion that CIF employees "acted pursuant to an expressly adopted official policy to

12   ignore the CIF rules and 'put the child first," which was a widespread and longstanding practice or

13   custom of" CIF, ECF No. 27 ¶ 172, and are insufficient to state a claim.  *See AE ex rel.*

14   *Hernandez*, 666 F.3d at 637.

15        Similarly, Plaintiffs raise only threadbare allegations to support their failure-to-train theory

16   of liability against CIF.  "A municipality's failure to train an employee who has caused a

17   constitutional violation can be the basis for § 1983 liability where the failure to train amounts to

18   deliberate indifference to the rights of persons with whom the employee comes into contact."

19   *Long v. Cnty. of L.A.*, 442 F.3d 1178, 1186 (9th Cir. 2006).  This standard is met when "the need

20   for more or different training is so obvious, and the inadequacy so likely to result in the violation

21   of constitutional rights, that the policymakers of the city can reasonably be said to have been

22   deliberately indifferent to the need."  *City of Canton v. Harris*, 489 U.S. 378, 390 (1989).  "Only

23   where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality—a 'policy'

24   as defined by our prior cases—can a city be liable for such a failure under § 1983."  *Id.* at 389.  "A

25   municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a

26   failure to train."  *Connick v. Thompson*, 563 U.S. 51, 61 (2011).  As such, "[a] pattern of similar

27   constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate

28   deliberate indifference for purposes of failure to train."  *Id.* at 62 (citation omitted).

United States District Court
Northern District of California

11

United States District Court
Northern District of California

Plaintiffs have not alleged any pattern of constitutional violations by untrained CIF employees and indeed barely raise any factual allegations as to CIF at all.  *See generally* ECF No. 27.  And Plaintiffs have not demonstrated that this is the rare case where a particular "showing of 'obviousness' can substitute for the pattern of violations ordinarily necessary to establish municipal culpability."  *Connick*, 563 U.S. at 63.  Plaintiffs thus fail to state a failure-to-train claim against CIF.  *See Juricich v. Cnty. of San Mateo*, No. 19-cv-06413-WHO, 2020 WL 619840, at *4 (N.D. Cal. Feb. 10, 2020) (dismissing failure to train claim where the complaint "only provides factual allegations about the single incident [the plaintiff] experienced" and "still fails to specify the nature of the alleged policy, custom or practice that g[a]ve rise to [the] constitutional injury"); *Sepehry-Fard v. Lee*, No. 20-cv-03585-EJD, 2021 WL 6113001, at *5 (N.D. Cal. Dec. 27, 2021) (dismissing failure to train claim because "[p]laintiff does not allege any facts from which the Court could infer *which* training practice caused his injuries").

Accordingly, the Court grants CIF's motion to dismiss Plaintiffs' *Monell* claim against it with leave to amend.

### C.    Negligence

"[T]here is no independent tort of negligent infliction of emotional distress" under California law.  *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 984-85 (1993) (citations omitted).  Instead, California Courts treat a claim for NIED as a claim of negligence.  *See Burgess v. Superior Court*, 2 Cal. 4th 1064, 1072 (1992).  "In order to establish negligence under California law, a plaintiff must establish four required elements: (1) duty; (2); breach; (3) causation; and (4) damages."  *Ileto v. Glock Inc.*, 349 F.3d 1191, 1203 (9th Cir. 2003).

Plaintiffs assert negligence claims against Osborne, Johnson, Briscoe, Next Level, and Klutch.  The Court analyzes Plaintiffs' claims against each set of Defendants in turn.

#### 1.    Saddleback District, Wong, Osborne, and Johnson

Plaintiffs assert a claim of negligence against the Saddleback District, Wong, and Osborne on a theory of respondeat superior and a claim of negligence against Osborne and Johnson for their individual liability.  Osborne and Johnson argue that they neither owed a duty of care to Plaintiffs nor breached any such duty.  They specifically contend that Mission High owed a duty

of care only to Phillip III—not to his father or grandparents.  *See* ECF No. 66 at 12.

"In general, each person has a duty to act with reasonable care under the circumstances." *Regents of Univ. of California v. Superior Ct.*, 4 Cal. 5th 607, 619, 413 P.3d 656, 663 (2018).  But to determine whether a duty exists between parties in any given case, courts applying California law consider:

> the foreseeability of harm to the plaintiff, the degree of certainty that plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.

*Rowland v. Christian*, 69 Cal. 2d 108, 113, 443 P.2d 561 (1968).  These factors can be separated into two categories: (1) the foreseeability of harm flowing from the conduct of the defendant to the plaintiff, and (2) "public policy concerns of moral blame, preventing future harm, burden, and insurance availability."  *Regents of Univ. of California v. Superior Ct.*, 4 Cal. 5th 607, 629 (2018).  Moreover, "[a] person who has not created a peril is not liable in tort merely for failure to take affirmative action to assist or protect another unless there is some relationship between them which gives rise to a duty to act."  *Id.* at 664 (quoting *Williams v. State of California*, 34 Cal. 3d 18, 23 (1983)).

The Court agrees with the District Defendants that school personnel generally owe a duty of ordinary care only to "students under their supervision" and not the parents of those students, where the students have not been harmed.  *See C.A. v. William S. Hart Union High Sch. Dist.*, 53 Cal. 4th 861, 865 (2012).  And the case law cited by the parties suggests only that "a school district and its employees have a special relationship with the district's pupils" given "the comprehensive control over students exercised by school personnel," *see id.* at 869—not that that special relationship extends to the pupils' parents or guardians.

The unique circumstances of this case, however, support finding that District Defendants owed a duty of ordinary care to Plaintiffs because of the foreseeability of harm and the affirmative acts allegedly taken by the District Defendants.  While the District Defendants had no duty to take

13

any affirmative action to *assist* Plaintiffs in mending their relationship with Phillip III or even in locating Phillip III, they had a duty not to *interfere* with Plaintiffs' relationship with Phillip III after receiving the cease-and-desist letter.  First, it was foreseeable that the District Defendants' actions would harm Plaintiffs because Plaintiffs' cease-and-desist letter had explained that Bell Jr. was the sole legal guardian of Phillip III and that Plaintiffs were "deeply concern[ed]" over Saddleback District employees seeking housing accommodations for Phillip III, transporting him, and attempting to enroll him in classes without Plaintiffs' consent.  *See* ECF No. 27-5 at 1; *see also Cabral v. Ralphs Grocery Co.*, 51 Cal. 4th 764, 772, 248 P.3d 1170, 1175 (2011) (explaining that when determining whether a duty to exercise care exists, the foreseeability analysis evaluates "whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed") (quoting *Ballard v. Uribe*, 41 Cal. 3d 564, 573 n.6 (1986)).  And counsel for the Saddleback District acknowledged these concerns by representing in response that Saddleback District employees were "not currently in communication with Phillip [III] and have been directed to refrain from communicating with him at this time."  ECF No. 27 at 20.

Second, public policy favors finding the existence of a duty here.  Plaintiffs have alleged the District Defendants engaged in morally culpable conduct by intentionally seeking housing accommodations for and transporting Phillip III against the expressed will of his sole legal guardian.  *See* ECF No. 27 ¶¶ 91, 94–97, 100.  And as discussed above regarding Plaintiffs' Section 1983 claim, courts recognize a fundamental interest that parents have in their relationship with their child and in being able to direct the custody and care of their child, including in the choice of educational forum.  *See Smith v. Org. of Foster Fams. For Equal. & Reform*, 431 U.S. 816, 845 (1977) (noting that the "liberty interest in family privacy has its source . . . not in state law, but in intrinsic human rights, as they have been understood in 'this Nation's history and tradition'") (internal citation omitted).  The public policy interest in preventing the harm that arises from the District Defendants' alleged conduct thus favors finding the existence of a duty here.  Furthermore, any burden imposed on the District Defendants by such a finding would be minimal and justified.  Indeed, the Court's reasoning does not suggest that school personnel

14

performing their responsibilities in the ordinary course of business owe any vague duty to not inadvertently upset their students' family members. Rather, the District Defendants had a duty to Plaintiffs because they were specifically informed that they were interacting with Phillip III without the consent of his legal guardian and took active steps to interfere with Plaintiffs' ability to direct care for Phillip III—all despite representing through counsel that they would not communicate with Phillip III.

As to the remaining elements of negligence, Plaintiffs have sufficiently alleged that the District Defendants breached their duty to exercise due care and that their breach caused Plaintiffs severe emotional distress. Plaintiffs allege that the District Defendants breached their duty to exercise due care by knowingly and intentionally interacting with Phillip III without the consent of his legal guardian, including transporting him out of the state and concealing his location from Plaintiffs in defiance of a court custody order. *See* ECF No. 27 ¶¶ 91, 94–97, 100. And the District Defendants' conduct in this regard inhibited Plaintiffs' ability to locate Phillip III and provide for his care. Accordingly, Plaintiffs have adequately stated a claim for negligence against the District Defendants at this stage.

### 2.    Briscoe and Next Level

The heart of Plaintiffs' claims against Briscoe and Next Level is that following Samantha Barnes's death, Saddleback District and Mission High conspired with Sandoval and Briscoe to re-enroll Phillip III at Mission High with Sandoval and Briscoe listed as his guardians—"despite knowing it violated [Saddleback District's] policy because [Bell Jr.] was the only parent with custody rights [and he] lived over 400 miles away from [Saddleback District]." ECF No. 27 ¶ 74. Plaintiffs further allege that Briscoe "intentionally interfered with the Plaintiffs' custodial rights by fraudulently claiming to be Phillip III's uncle and providing contact information to MISSION [High] so that Phillip [III] would have an emergency contact on official school documentation." ECF No. 27 ¶ 75. Plaintiffs contend that Briscoe's "affirmative misrepresentations and direct involvement in separating Phillip III from his biological family" establish a duty under California law. *See* ECF No. 61 at 16.

Briscoe and Next Level respond that allegations that Briscoe "told some unspecified

United States District Court
Northern District of California

1    person at some unspecified time that he was Phillip III's 'uncle,' . . . is not sufficient to plausibly

2    show the existence of a duty owed to Plaintiffs, a breach of any such duty, or that any such breach

3    was a substantial factor in causing any damage to Plaintiffs."  ECF No. 65 at 10.

4         The Court agrees with Briscoe and Next Level.  As Briscoe and Next Level argue,

5    Plaintiffs "do not plausibly allege that the school district relied on any [statement that Briscoe was

6    Phillip III's uncle] in allowing Phillip III to attend Mission Viejo during his senior year."  *See id.*

7    First, Plaintiffs had notified Mission High within days after Samantha Barnes's death that Bell Jr.

8    was the only legal guardian of Phillip III and provided Mission High with a copy of the family

9    court order governing the custody of Phillip III.  *See* ECF No. 27 ¶ 85.  Second, Briscoe and Next

10   Level resided in Antioch, California—400 miles away from Mission Viejo.  *See id.* ¶ 16.  It is thus

11   implausible that Briscoe's alleged representation that he was Phillip III's uncle or his listing

12   himself as an emergency contact was the proximate cause of the injury alleged here—Plaintiffs'

13   emotional distress due to being unable to locate Phillip III or direct his custody and care, including

14   the choice of his enrollment.

15        These logical deficiencies also weigh against the existence of any duty between Briscoe

16   and Plaintiffs.  As one of Phillip III's trainers, Briscoe's relationship was with Phillip III—not

17   Plaintiffs.  And Plaintiffs have not plausibly alleged that Briscoe engaged in any conduct that

18   would have made the alleged emotional distress suffered by Plaintiffs foreseeable or of the kind

19   that public policy dictates should give rise to legal liability.  Indeed, because Briscoe and Next

20   Level lacked any relationship with Plaintiffs—let alone a special relationship—Briscoe did not

21   engage in any actionable wrongs by refusing to communicate with Plaintiffs or by simply

22   testifying against Bell Jr. at Phillip III's custody hearing, ECF No. 27 ¶¶ 48, 86.  *See Regents of*

23   *Univ. of California*, 4 Cal. 5th at 629.

24        Accordingly, the Court grants Briscoe and Next Level's motion to dismiss as to the

25   negligence claim against them.

26                    **3.    Klutch**

27        Plaintiffs allege that Klutch breached its duty to exercise reasonable care to them because it

28   knew about the custody order requiring that Phillip III return to Sacramento but refused to

United States District Court
Northern District of California

communicate with Plaintiffs and "knowingly provided financial resources that facilitated the child's absence from" Northern California. *See* ECF No. 58 at 11–12. Plaintiffs further contend that Klutch "had an independent legal obligation under California contract law to obtain parental consent before entering into any contractual relationship with the minor child." *Id.* at 13. Klutch responds that it had no duty to Plaintiffs because their contract with Phillip III was lawful and did not involve Plaintiffs, and it engaged in no morally blameworthy conduct that would justify the existence of a duty to Plaintiffs. *See* ECF No. 64 at 5–7. The Court agrees with Klutch.

While Plaintiffs assert that Klutch "had an affirmative duty to communicate with the parents regarding the contractual relationship it was establishing with the minor," ECF No. 58 at 12, they cite no legal authority for this proposition. Indeed, California law provides that except for circumstances not present here, "a minor may make a contract in the same manner as an adult, subject to the power of disaffirmance," which lays in the hand of the minor. *See* Fam. Code §§ 6700, 6701, 6710. Plaintiffs also do not allege that Phillip III disaffirmed or attempted to disaffirm his contract with Klutch, so their argument that Klutch's contact with Phillip III was "legally suspect," ECF No. 58 at 12, is unavailing.

As for Plaintiffs' argument that Klutch breached a duty to exercise reasonable care because it "knowingly provided financial resources that facilitated the child's" defiance of the custody order, *see* ECF No. 58 at 11–12, "[a] person who has not created a peril is not liable in tort merely for failure to take affirmative action to assist or protect another unless there is some relationship between them which gives rise to a duty to act." *Regents of Univ. of California*, 4 Cal. 5th at 629 (quoting *Williams v. State of California*, 34 Cal. 3d at 23)). Here, Klutch committed no actionable wrong by refusing to communicate with Plaintiffs because it had no obligation to take any affirmative action to assist Plaintiffs in locating Phillip III or enforcing their custody order— Klutch had no special relationship with Plaintiffs such that it had any duty to act. Indeed, Klutch owed no duty to Plaintiffs at all. Klutch had no contractual relationship with Plaintiffs, and imposing a duty between Klutch and Plaintiffs would impose an unreasonable burden on parties of a private contract should a third party raise objections to that contract. Further, there is "no actionable wrong . . . where, as here, [Klutch's] conduct consists of something which [it] had an

United States District Court
Northern District of California

absolute right to do," including in performing "a contract lawfully entered into [even if] it might offend the legal rights of others." *See Dryden v. Tri-Valley Growers*, 65 Cal. App. 3d 990, 996, 135 Cal. Rptr. 720 (1977). Klutch's donation of $1,000 to the Go Fund Me page for Samantha's funeral expenses similarly does not constitute any actionable wrong, even if those funds were allegedly eventually used to help house Phillip III without Plaintiffs' consent.

Accordingly, the Court grants Klutch's motion to dismiss Plaintiffs' negligence claim against it.

### D.    Intentional Infliction of Emotional Distress

#### 1.    District Defendants

The elements of a claim for IIED are: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009) (quotation marks and citation omitted). "A defendant's conduct is 'outrageous' when it is so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id.* at 1050–51 (quotation marks and citation omitted)

For the same reasons as those discussed regarding Plaintiffs' Section 1983 claim against Wong, Johnson, and Osborne, the Court finds that Plaintiffs have adequately stated a claim for IIED against Osborne and Johnson for their direct liability and against the Saddleback District, Wong, and Osborne based on a theory of respondeat superior. Plaintiffs sufficiently allege that Johnson and Osborne engaged in extreme and outrageous conduct—withholding the whereabouts of a child to his legal guardian and facilitating the out-of-state travel of that child against his guardian's expressed desires and lack of consent—with reckless disregard of causing emotional distress given their knowledge of the cease-and-desist letter. And Plaintiffs have adequately alleged at this stage that Johnson and Osborne caused Plaintiffs severe emotional distress in being unable to reach Phillip III or direct the conditions of his schooling and housing. Accordingly, Plaintiffs have stated a claim for intentional infliction of emotional distress against the District Defendants.

### 2.    Briscoe and Next Level

Plaintiffs primarily base their IIED claim on allegations that Briscoe and Next Level interfered with Plaintiffs' familial relationship with Phillip III by misrepresenting Briscoe as Phillip III's uncle to keep Phillip III enrolled at Mission High and away from Plaintiffs.  *See* ECF No. 61 at 21–22.  Briscoe and Next Level argue that Plaintiffs fail to show that any of the alleged conduct meets the standard for extreme and outrageous conduct to state a claim for IIED.  The Court agrees.  As the Court explained in its analysis of Plaintiffs' negligence claims against Briscoe and Next Level, the FAC does not plausibly demonstrate that Briscoe's alleged conduct caused the injuries alleged or was wrongful, let alone "extreme and outrageous."  Accordingly, the Court grants Briscoe and Next Level's motion to dismiss Plaintiffs' IIED claim against them.

### 3.    Klutch

Because the Court found in analyzing Plaintiffs' negligence claims that Klutch has not engaged in any wrongful conduct, the Court also finds that Plaintiffs have not adequately stated a claim for intentional infliction of emotional distress against Klutch.  Plaintiff has not asserted any specific allegations as to how Klutch perpetrated any plan to harbor and conceal Phillip III away from Plaintiffs.  And neither Klutch's performance of its lawful contract with Phillip III, its donation to the Go Fund Me page, nor its refusal to communicate with Plaintiffs constitute the sort of extreme and outrageous conduct giving rise to a claim of IIED.  Accordingly, the Court grants Klutch's motion to dismiss regarding Plaintiffs' IIED claim.

### E.    Unjust Enrichment

While California case law is not entirely clear on whether unjust enrichment is an independent cause of action,[3] the Ninth Circuit has "construed the common law to allow an unjust enrichment cause of action through quasi-contract" seeking restitution.  *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016).  Notably, "[t]o confer a benefit . . . it is not essential that money be paid directly to the recipient by the party seeking restitution."  *City of Oakland v.*

---

[3] *Compare Castillo v. Toll Bros.*, 197 Cal. App. 4th 1172, 1210 (2011) ("California does not recognize unjust enrichment as a separate cause of action") with *LeBrun v. CBS Television Studios, Inc.*, 68 Cal. App. 5th 199, 209–12 (2021) (appearing to agree with the trial court that unjust enrichment is a separate cause of action).

1    *Oakland Raiders*, 83 Cal. App. 5th 458, 478 (2022) (citing *Hirsch v. Bank of Am.*, 107 Cal. App.

2    4th 708, 722 (2003)).  "[W]here someone other than the plaintiff provided the benefit the

3    defendants allegedly unjustly retained, as between the plaintiff and the defendant, the plaintiff is

4    entitled to restitution from the defendant where the plaintiff 'has a better legal or equitable right.'"

5    *Id.* at 479 (quoting Restatement (Third) of Restitution and Unjust Enrichment § 48).

### 1.    Saddleback District and Johnson

7         Plaintiffs contend that Saddleback District and Johnson "profited from the athletic talents

8    of Phillip Bell III by facilitating his enrollment and participation in the school's football program

9    without proper parental consent, thereby depriving Plaintiffs of their rightful parental authority

10   and involvement."  ECF No. 59 at 24.  More specifically, Plaintiffs allege that Saddleback District

11   used Phillip III's "likeness to sell tickets [and] merchandise."  ECF No. 27 ¶ 165.  Saddleback

12   District and Johnson counter that "Plaintiffs fail to allege any facts demonstrating that Defendants'

13   alleged enrichment was unjust or that the alleged enrichment came at Plaintiffs' personal

14   expense."  ECF No. 66 at 18.

15        Saddleback District and Johnson's argument misconstrues the law.  When analyzing a

16   claim for unjust enrichment under California law, courts focus on "the wrongdoer's enrichment,

17   not the victim's loss," so it is "not essential that money be paid directly to the recipient by the

18   party seeking restitution."  *Cnty. of San Bernardino v. Walsh*, 158 Cal. App. 4th 533, 542–43, 69

19   Cal. Rptr. 3d 848, 856 (2007), *as modified on denial of reh'g* (Jan. 25, 2008), *as modified* (Jan. 28,

20   2008) (internal quotation marks omitted).  "In particular, a person acting in conscious disregard of

21   the rights of another should be required to disgorge all profit because disgorgement both benefits

22   the injured parties and deters the perpetrator from committing the same unlawful actions again."

23   *Id.* (citation omitted).

24        Here, as discussed above, Plaintiffs allege that Wong, Osborne, and Johnson knowingly

25   and intentionally engaged in wrongful conduct by transporting Phillip III out of the state and

26   seeking housing accommodations for Phillip III to conceal his location from Plaintiffs against the

27   consent of Plaintiffs.  And Plaintiffs allege that the Saddleback District retained a financial benefit

28   from this wrongful conduct—all aimed at retaining Phillip III in Mission High's football program

United States District Court
Northern District of California

—through the ticket and merchandise sales generated by Phillip III's likeness. *See* ECF No. 27 ¶ 165. Plaintiffs have thus sufficiently stated a claim for unjust enrichment against the Saddleback District because it is vicariously liable for "the torts of employees committed within the course or scope of their employment." *Alma W. v. Oakland Unified Sch. Dist.*, 123 Cal. App. 3d 133, 138–39, 176 Cal. Rptr. 287, 289 (Ct. App. 1981). However, Plaintiffs have not alleged that Johnson personally retained any financial benefit through the sales of ticket and merchandise or the promotion of Mission High's football program. Accordingly, the Court dismisses Plaintiffs' claim for unjust enrichment against Johnson.

### 2. Klutch, Briscoe, and Next Level.

As explained above, the Court has found that Plaintiffs have failed to allege any wrongful conduct by Klutch, Briscoe, and Next Level. Accordingly, the Court dismisses Plaintiffs' unjust enrichment claim against each of them because Plaintiffs have failed to allege facts sufficient to show that any financial benefit retained by them would be unjust. *See County of San Bernardino*, 158 Cal. App. 4th at 542–43 (explaining that unjust enrichment focuses "on the wrongdoer's enrichment").

## V.   MOTION TO STRIKE

Federal Rule of Civil Procedure 12(f) authorizes the Court to "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . . ." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (quotation marks and citations omitted). The District Defendants ask the Court to strike Plaintiffs' claims for punitive damages because "Plaintiffs have failed to sufficiently plead their claim for punitive damages." *See* ECF No. 50 at 4.

"Rule 12(f) of the Federal Rules of Civil Procedure does not authorize a district court to strike a claim for damages on the ground that such damages are precluded as a matter of law." *Whittlestone*, 618 F.3d at 971; *see Gatling-Lee v. Del Monte Foods, Inc.*, No. 22-CV-00892-JST, 2023 WL 11113888, at *15 (N.D. Cal. Mar. 28, 2023), *reconsideration denied sub*

1   *nom. Nacarino v. Del Monte Foods, Inc.*, No. 22-CV-00892-JST, 2024 WL 847925 (N.D. Cal.

2   Feb. 28, 2024) (denying motion to strike claims for punitive damages); *Stromberg v. Ocwen Loan*

3   *Servicing, LLC*, No. 15-cv-04719-JST, 2017 WL 2686540, at *12 (N.D. Cal. June 22, 2017)

4   (denying motion to strike claims for the plaintiff's prayer for relief because the "defendants'

5   arguments regarding the availability of damages and injunctive relief are 'better suited for a Rule

6   12(b)(6) motion or a Rule 56 motion, not a Rule 12(f) motion.'" (quoting *Whittlestone*, 618 F.3d at

7   974)); *Pallen Martial Arts, LLC v. Shir Martial Arts, LLC*, No. 13-cv-05898-JST, 2014 WL

8   2191378, at *8 (N.D. Cal. May 23, 2014) (declining to strike a punitive and compensatory

9   damages because "motions to strike are not appropriate as a means of striking a prayer for relief

10  when the damages sought are not recoverable as a matter of law"); *First Nat. Ins. Co. of Am. v.*

11  *Peralta Cmty. Coll. Dist.*, No. 12-cv-5943 JSC, 2013 WL 622944, at *8 (N.D. Cal. Feb. 15,

12  2013) ("Defendant's request to strike the prayer for attorney[']s fees is not the proper subject for a

13  12(f) motion.").

14          Accordingly, the District Defendants' motion to strike is denied.

15                                    **CONCLUSION**

16          In sum, the Court grants the motions to dismiss of Klutch, CIF, and Briscoe and Next

17  Level with leave to amend.  The Court grants the District Defendants' motion to dismiss regarding

18  Plaintiffs' *Monell* claim under a theory of an official policy or custom and Plaintiffs' unjust

19  enrichment claim against Johnson with leave to amend.  It denies the remainder of their motion.

20  The Court also denies the District Defendants' motion to strike.  Within 21 days from this order,

21  Plaintiffs may file a second amended complaint solely to cure the deficiencies identified in this

22  order.

23          The case management conference scheduled for June 17, 2025, is continued to August 19,

24  2025, at 2:00 p.m.  An updated joint case management statement is due August 12, 2025.

25          **IT IS SO ORDERED.**

26  Dated:  June 16, 2025

27  

28                                    JON S. TIGAR
                                      United States District Judge

United States District Court
Northern District of California