1   JAMIR DAVIS, Esq. SBN 98041- PRO HAC VICE
2   **J. DAVIS LAW FIRM, PLLC**
    106 WINDING WAY UNIT C
3   COVINGTON, KY 41011
    TELE: (859) 750-5033
4   JDAVIS@JDAVISCOUNSEL.COM

5   VALERY NECHAY, SBN 314752
6   ATTORNEY AT LAW
    LAW CHAMBERS BUILDING
7   345 FRANKLIN ST.
    SAN FRANCISCO, CA 94102
8   TELE: 415-652-8569
9   VALERY@NECHAYLAW.COM

10   ATTORNEYS FOR PLAINTIFFS

11         UNITED STATES DISTRICT COURT

12       NORTHERN DISTRICT OF CALIFORNIA

13

| | |
|---|---|
| 14   PHILLIP BELL JR.; LORNA BARNES; and | **Case no: 4:24-cv-05545-JCS** |
| 15   ANTHONY BARNES. | SECOND AMENDED COMPLAINT |
| 16         Plaintiffs, | |
| 17       v. | |
| 18   SADDLEBACK VALLEY UNIFIED SCHOOL | |
| 19   DISTRICT; | JURY TRIAL DEMANDED |
| 20   CALIFORNIA INTERSCHOLASTIC | |
| 21   FEDERATION; NEXT LEVEL SPORTS | |
| 22   & ACADEMICS; and ISAHIA SANDOVAL; | |
| 23   EDWARD WONG; TRICIA OSBORNE: | |
| 24   CHAD JOHNSON; STEVE BRISCOE: | |
| 25   SAREENA CHOW; AND DOES 1-20 in their | |
| 26   individual and official capacities. | |
| 27         Defendants. | |

28

## **INTRODUCTION**

1. This is the compelling story of an entourage of adults harboring a talented teenage football star from a healthy relationship with his biological family, in a scheme to profit off of the teen's talent in direct violation of California Interscholastic Federation Rules, California Law, and the United States Constitution.

2. High school football has become more profitable than ever, and the financial opportunities now available to high school athletes in California allows them to earn money in ways that were previously impossible.

3. However, there are serious issues surrounding the implementation of these financial opportunities, including Name Image and Likeness (NIL) deals, and the monetary influence that comes with them.

4. This Complaint highlights how financial opportunities can manipulate underage high school student-athletes and undermine their relationships with their biological parents in violation of well-established Constitutional principles.

5. This issue, which has long been prevalent in the entertainment industry, has spilled over into the sports arena, with recently uncovered cases of celebrities accused of harboring minors against their will and the will of their parents.

6. This action requests that the Court enforce the long-standing constitutional principles encompassing the right to family integrity, familial association, and the right of parents to direct the upbringing of their children.

*PHILLIP BELL JR. v. SADDLEBACK VALLEY UNIFIED SCHOOL DISTRICT, et al. – SAC*

7. This Complaint will demonstrate that Defendants developed a plan to prevent Plaintiffs from contacting their minor child through a series of actions that shocks the conscience and offends the community's sense of fair play and decency.

## JURISDICTION

8. This action arises under 29 U.S.C. §701, et seq. Title 28 of the United States Code Sections 1331 and 1343 confers jurisdiction upon this Court. The violation of the custody orders occurred in San Francisco California, which is within this judicial district. The Court has supplemental jurisdiction of Plaintiff's state-based claims pursuant to 28 U.S.C. §1367. Title 28 of the United States Code Section 1391 confers venue upon this Court.

## ADMINISTRATIVE PREREQUISITES

9. Plaintiffs are required to comply with an administrative tort claim requirement under California law. Phillip Bell Jr., Lorna Barnes and Anthony Barnes have all filed tort claims with Saddleback Unified School District pursuant to California Government Code Section 910. Plaintiffs filed their claims by sending a claim form and letter to legal counsel for Saddleback Unified School District, per their request. Plaintiffs have not received correspondence from Saddleback Unified School District accepting or denying their claims.

## PARTIES

10. PHILLIP BELL JR. (hereinafter referred to as "FATHER" individually or "PLAINTIFFS" collectively) is at all times herein mentioned is a citizen of the United States of America and a current resident of the San Francisco Bay Area. FATHER is the biological father and only biological parent with custody rights to PHILLIP BELL III (hereinafter referred to as PHILLIP III) a minor. PHILLIP III is currently enrolled as a senior at Mission Viejo High School

3

*PHILLIP BELL JR. v. SADDLEBACK VALLEY UNIFIED SCHOOL DISTRICT, et al. – SAC*

(hereinafter referred to as "MISSION") without the consent of FATHER and is residing at an address that has not been disclosed to FATHER by MISSION.  FATHER has provided notice to all DEFENDANTS that he does not consent to any of them contacting or communicating with PHILLIP III without his approval.



11. MARIA LORNA BARNES (hereinafter "GRANDMA" individually or "PLAINTIFFS" collectively) is the mom of SAMANTHA BARNES (hereinafter referred to as "SAMANTHA") biological mother of PHILLIP III. GRANDMA is maternal grandparent of PHILLIP III, helped raise PHILLIP III, and has custodial and companionship interest in PHILLIP III. GRANDMA has provided notice to all DEFENDANTS that she does not consent to any of them contacting or communicating with PHILLIP III without her approval.

*PHILLIP BELL JR. v. SADDLEBACK VALLEY UNIFIED SCHOOL DISTRICT, et al. – SAC*



12. ANTHONY BARNES (hereinafter "GRANDPA" individually or "PLAINTIFFS" collectively) is the father of SAMANTHA, the biological mother of PHILLIP III. GRANDPA is the maternal grandparent of PHILLIP III. GRANDPA help raise PHILLIP III and has a custodial and companionship interest in PHILLIP III, GRANDPA has notified all DEFENDANTS that he does not consent to any of them contacting or communicating with PHILLIP III without his approval.



*PHILLIP BELL JR. v. SADDLEBACK VALLEY UNIFIED SCHOOL DISTRICT, et al. – SAC*

13. SADDLEBACK VALLEY UNIFIED SCHOOL DISTRICT BOARD (hereinafter referred to as "DISTRICT" individually or "DEFENDANTS" collectively) is a public-school board and is formed under the laws of California. DISTRICT is a public entity located at 25631 Peter A. Hartman Way, Mission Viejo, CA 92691-3142. DISTRICT receives Federal financial assistance from the United States Department of Education and has signed a contractual Title VI assurance of compliance agreement. DISTRICT operates MISSION the school of PHILLIP III. PLAINTIFFS allege that DISTRICT is legally responsible and liable for the incidents giving rise to this Complaint and injuries and damages herein set forth. DISTRICT is liable for its conduct, vicarious or imputed negligence, fault, breach of duty, whether severally or jointly, or whether based upon agency, employment, ownership, entrustment, custody, care or control upon any other act or omission. DISTRICT is also liable for the actions of its employees, agents, or independent contractors at MISSION through vicarious or imputed liability, *respondeat superior.* At all relevant time DISTRICT was a member of the CALIFORNIA INTERSOCHLASTIC FEDERATION (CIF) and required to follow the established CIF rules.

14. CALIFORNIA INTERSCHOLASTIC FEDERATION (hereinafter referred to as "CIF" individually or "DEFENDANTS" collectively) is the governing body of California high school sports. CIF is located at 4658 Duckhorn Drive, Sacramento, California 95834 and at all relevant times was responsible for ensuring proper administration of the rules and regulations governing high school football in California. In 2021 the CIF implemented a rule change that significantly changed the landscape of high school sports for the foreseeable future by allowing high school athletes to receive NIL deals CIF had a duty to train and supervise its employees ensure that the DISTRICT was prepared to implement the changes so that students were not unduly influenced. CIF also had a duty to  adopt rules relating to interscholastic athletics (grades 9-12) and establish

agreed upon minimum standards for certain aspects of the interscholastic athletic program; to guide schools and school districts in the discharge of their responsibilities for, among other considerations, the health, safety, general welfare and educational opportunities of the students taking part in interscholastic athletics.

15. KLUTCH SPORTS GROUP (hereinafter referred to as "KLUTCH" individually or "DEFENDANTS" collectively) is a Limited Liability Company formed under the laws of California. At all relevant times KLUTCH was duly authorized to do business under the laws of California. KLUTCH is located at 822 North Laurel Avenue, Los Angeles, California 90046. KLUTCH was the sports agency of PHILLIP III at all times when and where the allegations in this Complaint arose. PLAINTIFFS allege that KLUTCH is legally responsible and liable for the incidents giving rise to this Complaint and injuries and damages herein set forth. KLUTCH is liable for its conduct, vicarious or imputed negligence, fault, breach of duty, whether severally or jointly, or whether based upon agency, employment, ownership, entrustment, custody, care or control upon any other act or omission. KLUTCH is also liable for the actions of its employees, agents, or independent contractors, through vicarious or imputed liability, *respondeat superior.*

16. NEXT LEVEL SPORTS & ACADEMICS FND 4673695 (hereinafter referred to as "NEXT LEVEL" individually or "DEFENDANTS" collectively) is a Nonprofit Corporation operated by Steve BRISCOE and formed under the laws of California. NEXT LEVEL is a private entity that describes itself as a Football Mentoring program and is located at 3927 Hummingbird Dr., Antioch, California 94509. PLAINTIFFS allege that NEXT LEVEL is legally responsible and liable for the incidents giving rise to this Complaint and injuries and damages herein set forth. NEXT LEVEL is liable for its conduct, vicarious or imputed negligence, fault, breach of duty,

whether severally or jointly, or whether based upon agency, employment, ownership, entrustment, custody, care or control upon any other act or omission. NEXT LEVEL is also liable for the actions of its employees, agents, or independent contractors, through vicarious or imputed liability, *respondeat superior.*

17. STEVE BRISCOE (hereinafter referred to as "BRISCOE" individually or "DEFENDANTS" collectively) is the owner and operator of NEXT LEVEL. PLAINTIFFS believe that BRISCOE is legally responsible and liable for the conduct alleged in this Complaint, and the resultant injuries and damages herein set forth. BRISCOE is liable for his personal conduct, vicarious or imputed negligence, fault, breach of duty, whether severally or jointly, or whether based upon agency, employment, ownership, entrustment, custody, care or control upon any other act or omission.

18. ISAIAH SANDOVAL (hereinafter referred to as "SANDOVAL" individually or "DEFENDANTS" collectively) is a male adult and former husband of SAMANTHA BARNES. SANDOVAL has no legal custody right to parent PHILLIP III and was only connected with PHILLIP III through association with SAMANTHA. PLAINTIFFS believe that SANDOVAL is legally responsible and liable for the conduct alleged in this Complaint, and the resultant injuries and damages herein set forth. SANDOVAL is liable for his personal conduct, vicarious or imputed negligence, fault, breach of duty, whether severally or jointly, or whether based upon agency, employment, ownership, entrustment, custody, care or control upon any other act or omission.

19. EDWARD WONG (hereinafter referred to as "WONG" individually or "DEFENDANTS" collectively) was the Board President of DISTRICT at all relevant times. PLAINTIFFS believe that WONG is legally responsible and liable for the conduct alleged in this Complaint, and the

*PHILLIP BELL JR. v. SADDLEBACK VALLEY UNIFIED SCHOOL DISTRICT, et al. – SAC*

resultant injuries and damages herein set forth. WONG is liable for his personal conduct, vicarious or imputed negligence, fault, breach of duty, whether severally or jointly, or whether based upon agency, employment, ownership, entrustment, custody, care or control upon any other act or omission.

20. TRICIA OSBORNE (hereinafter referred to as "OSBORNE" individually or "DEFENDANTS" collectively) was an agent of DISTRICT and worked at MISSION as the school's principal. PLAINTIFFS believe that OSBORNE is legally responsible and liable for the conduct alleged in this Complaint, and the resultant injuries and damages herein set forth. OSBORNE is liable for her personal conduct, vicarious or imputed negligence, fault, breach of duty, whether severally or jointly, or whether based upon agency, employment, ownership, entrustment, custody, care or control upon any other act or omission.

21. CHAD JOHNSON (hereinafter referred to as "JOHNSON" individually or "DEFENDANTS" collectively) was an agent of DISTRICT and worked at MISSION as the Head Football Coach. PLAINTIFFS believe that JOHNSON is legally responsible and liable for the conduct alleged in this Complaint, and the resultant injuries and damages herein set forth. JOHNSON is liable for his personal conduct, vicarious or imputed negligence, fault, breach of duty, whether severally or jointly, or whether based upon agency, employment, ownership, entrustment, custody, care or control upon any other act or omission.

22. SERENA CHOW (hereinafter referred to as "CHOW" individually or "DEFENDANTS" collectively) was an agent of BRISCOE, NEXT LEVEL, SANDOVAL, and KLUTCH, and worked in concert with them to house PHILLIP III while he was still a minor, harboring him from his family. At all relevant times, CHOW, who is believed to be in her mid to late 30s, had no lawful custodial relationship with PHILLIP III, yet resided with him in a home in Southern

California against PLAINTIFFS' wishes. CHOW has falsely claimed to be PHILLIP III's aunt but, in fact, has no legitimate familial relationship to him.

23. PLAINTIFFS are ignorant of the true names and capacities of the Defendants sued herein as DOES 1 through 20 inclusive, and therefore PLAINTIFFS sue those Defendants by such fictitious names. PLAINTIFFS will amend this complaint to allege their names and capacities when ascertained. PLAINTIFFS are informed and believe and thereupon allege that each of the fictitious Defendants are responsible in some manner for the occurrences alleged herein.

## STATEMENT OF FACTS

### CIF  BACKGROUND

24.  In 2021, the CIF was among the very first statewide high school athletic governing bodies to permit student-athletes to receive compensation for the use of their name, image, and likeness (NIL), reflecting a significant shift in the high school sports landscape.

25. The CIF's 2021 policy change allowed high school athletes to earn monetary compensation for their NIL while maintaining eligibility to participate in school.

26.  Despite adopting this progressive policy, CIF failed to adequately train or supervise its staff on proper implementation, including safeguards to ensure parental oversight and protect minors from undue influence.

27. As a direct result of these deficiencies, schools, coaches, and athletic programs have begun transferring minor athletes based primarily on NIL and athletic opportunities—sometimes without the informed consent of parents or guardians.

28. On multiple occasions, CIF has been placed on notice regarding issues of this nature and has failed to implement policies or safeguards to prevent such conduct.

*PHILLIP BELL JR. v. SADDLEBACK VALLEY UNIFIED SCHOOL DISTRICT, et al. – SAC*

# C.I.F. Won't Stop Active NIL Violations in California. Refuses to enforce its own rules.

 H.G. Ruiz   ( Follow )   8 min read · Sep 6, 2022

👏 12.5K   💬 5                                    🔖+   ▶   ⬆

50+ California High Schools have players in violation of its Amateur Rules

The <u>California Interscholastic Federation</u>, or CIF, is the 10-section governing body for high school sports in California. On September 6 & 7, all ten sections met in Sacramento to discuss their coordinated response to the amateur status violations reported against numerous 2022 football players. The resolve was to do nothing except talk about creating a three-tier violation system sometime in the future. Despite having very concrete rules against the activity, CIF's response is not to enforce its rules but create more rules for the future.

29. DISTRICT allowed fraudulent documents to be submitted to secure PHILLIP III's eligibility to participate in sports at MISSION.

30. PLAINTIFFS placed CIF on notice of these fraudulent documents, yet CIF failed to take any action.

31. CIF was aware that violations of this nature were occurring throughout California and failed to implement safeguards to protect students and families.

*PHILLIP BELL JR. v. SADDLEBACK VALLEY UNIFIED SCHOOL DISTRICT, et al. – SAC*

# California high school 'scheme' used fake documents to get basketball players on team, report says

Sarah Hofmann
UPDATED: February 27, 2023 at 2:05 PM PST
California News, High School Sports, Latest Headlines, News, Sports



Listen to this article



Poly High School in Riverside is seen Thursday, Feb. 2, 2023. The school's boys basketball program used false addresses to place athletes from outside Poly's

32. *Although CIF had previously been made aware of substantiated misconduct and inappropriate conduct by coaches employed by DISTRICT, it failed to take any action regarding those incidents and likewise failed to act in this case, allowing DISTRICT to continue covering up the bad acts of its coaches without consequence.*

12

*PHILLIP BELL JR. v. SADDLEBACK VALLEY UNIFIED SCHOOL DISTRICT, et al. – SAC*

NEWS > CALIFORNIA NEWS 

# Ex-California cheerleading coach charged with molesting girls

Prosecutors say Erick Kristianson molested girls ages 11 to 16 while coaching at a competitive cheer club and a Mission Viejo high school in the 2000s.



Photo by: Vasha Hunt/AP

FILE - In this Aug. 20, 2020, file photo, Jemison band's flag girls cheer on their team at an Alabama high school football game between Jemison and Thorsby in Thorsby, Ala. (AP Photo/Vasha Hunt, File)

AP By: Associated Press

*Posted 11:09 PM, May 10, 2023*

33. The failure of enforcement by CIF, including its failure to implement clear standards and monitoring mechanisms for student-athletes, is jeopardizing the welfare of minors and infringing upon parental rights and family integrity as protected under the Constitution.

## FAMILY BACKGROUND

34. PHILLIP III is an outstanding football player, but the primary concern of his sole surviving parent, FATHER, along with his maternal grandparents, GRANDMA and GRANDPA, is not his athletic achievements but the kind of person he becomes.

13

*PHILLIP BELL JR. v. SADDLEBACK VALLEY UNIFIED SCHOOL DISTRICT, et al. – SAC*

35. PHILLIP III lived in Sacramento with his mother, SAMANTHA, and his new stepfather, SANDOVAL.

36. His FATHER resided nearby in Folsom, California, and shared parenting duties and custody rights with SAMANTHA.

37. SAMANTHA and FATHER had a court-ordered agreement in place to share 50/50 custody of PHILLIP III. (Exhibit A- Custody Agreement)

38. GRANDMA and GRANDPA lived nearby in Herald California and actively participated in raising PHILLIP III.



39. Under the custody and the care of SAMANTHA, FATHER, GRANDMA and GRANDPA, PHILLIP III developed into a young star student-athlete, known not only for his talent on the field but also for his academic achievements and well-mannered demeanor.

40. While in Sacramento, PHILLIP III's talent became undeniable, attracting attention from coaches and scouts far beyond his local high school.

*PHILLIP BELL JR. v. SADDLEBACK VALLEY UNIFIED SCHOOL DISTRICT, et al. – SAC*

41. SANDOVAL, a convicted felon, gambler, drug user, and money-hungry stepfather, brokered a deal and devised a scheme to capitalize on the talents of PHILLIP III. (Exhibit B- Criminal Record)

42. SANDOVAL brokered a deal with BRISCOE, one of PHILLIP III's trainers and NEXT LEVEL, a nonprofit company owned by BRISCOE, to send PHILLIP III to attend Bishop Alemany in Southern California without FATHER'S knowledge or consent.

43. BRISCOE, SANDOVAL, and NEXT LEVEL brokered the deal knowing it would violate the shared custody agreement between SAMANTHA and FATHER.

44. BRISCOE and NEXT LEVEL received compensation for this transaction, fully aware that Bishop Alemany has a record of prior incidents involving unlawful sports recruitment practices, in direct violation of California Interscholastic Federation Rules.

45. SAMANTHA, SANDOVAL, and PHILLIP III then abruptly moved to Los Angeles, California without notifying FATHER, directly violating the parents' custody agreement.

46. While the move promised SAMANTHA, SANDOVAL and PHILLIP III housing, direct compensation to SAMANTHA and SANDOVAL, and potential NIL deals for PHILLIP III, it also brought consequences.

47. **BRISCOE and NEXT LEVEL violated CIF Rule 510 by exercising undue influence— defined as any act, gesture, or communication (including accepting material or financial inducement to attend a CIF-member school for the purpose of engaging in CIF competition, regardless of the source). Specifically, they used monetary compensation and promises to influence PHILLIP III and SAMANTHA to transfer schools. (Exhibit C, CIF Rule 510)**

*PHILLIP BELL JR. v. SADDLEBACK VALLEY UNIFIED SCHOOL DISTRICT, et al. – SAC*





**The CIF Bylaw 510 Guidelines**

**Introduction**

The CIF Bylaw 510 Guidelines are written to assist CIF Member Schools regarding the many nuances that encompass "undue influence."

48. After an unsuitable month at Bishop Alemany, SANDOVAL and SAMANTHA moved again and enrolled PHILLIP III at MISSION without FATHER'S knowledge or consent.

49. FATHER always intended that PHILLIP III attend a Catholic high school and did not want PHILLIP to attend a public high school.

50. While attending MISSION, the bond between PHILLIP III, FATHER, GRANDMA, and GRANDPA became strained, deepening the rift between them caused by the distance.

51. While in Los Angeles, SANDOVAL'S drug abuse, physical abuse of SAMANTHA and verbal abuse of PHILLIP III escalated significantly, and their tumultuous relationship began to take a toll on PHILLIP III.

52. GRANDMA and GRANDPA would visit SAMANTHA to find that there was no food in the home, alcohol that was easily accessible, and little to no furniture throughout the house.

16

*PHILLIP BELL JR. v. SADDLEBACK VALLEY UNIFIED SCHOOL DISTRICT, et al. – SAC*

53. In the first month of being in the Los Angeles area SAMANTHA filed two police reports in Trabuco Canyon, California against SANDOVAL for domestic violence.

54. Friends and family would hear SANDOVAL make comments such as, "You think you are going to leave me once PHILLIP III becomes successful?" "I'll kill you all."

55. Disturbed and in tears, PHILLIP III would call his FATHER and GRANDMA and GRANDPA, begging to leave Los Angeles.

56. PHILLIP III would report the abuse and drug use to GRANDMA and GRANDPA stating, "They are doing it again."

57. Hearing PHILLIP III's cry for help FATHER, GRANDMA and GRANDPA traveled to Los Angeles to meet with PHILLIP III, only to find him uncommunicative and a shadow of his former self.

58. Recognizing the warning signs, FATHER and GRANDMA and GRANDPA immediately filed a legal action in Superior Court of California, requesting that PHILLIP III be returned to Sacramento to attend his old Catholic High School, Christian Brothers.

59. In an attempt to continue his scheme to broker deals on behalf of PHILLIP III, BRISCOE and NEXT LEVEL testified against FATHER at the custody hearing.

60. After reviewing all the evidence, which included testimony from PHILLIP III, the Judge ordered SAMANTHA and SANDOVAL to return PHILLIP III to FATHER in Sacramento immediately after his first semester at MISSION. (Exhibit D, County of San Francisco Court Order)

61. However, in his first semester at MISSION, PHILLIP III helped the football team capture a Division I-A State Football Championship and in the state title game, PHILLIP III was recognized as the most valuable player.

*PHILLIP BELL JR. v. SADDLEBACK VALLEY UNIFIED SCHOOL DISTRICT, et al. – SAC*

62. DISTRICT, seeing the talent that PHILLIP III brought to the school, was aware of the Court Order to have PHILLIP III return to Christian Brothers, but ignored it.

63. SAMANTHA and SANDOVAL also ignored the Court's order and kept PHILLIP III hidden in the Los Angeles area, instructing him not to contact any of his other family members.

64. SAMANTHA and SANDOVAL would move PHILLIP III from house to house, out of reach of FATHER, GRANDMA, GRANDPA, and all other biological family members.

65. SAMANTHA would then enter PHILLIP III into a contractual relationship with KLUTCH, a Los Angeles-based sports agency.

66. KLUTCH would begin to manage the NIL deals and profits for PHILLIP III.

67. FATHER was not aware of PHILLIP III's contractual relationship with KLUTCH nor did FATHER consent to it.

68. Shortly thereafter, tragedy struck.

**SAMANTHA'S DEATH**

69. Approximately nine months after the move to Los Angeles, SAMANTHA died under suspicious circumstances.

70. On or about June 25th, 2024, SAMANTHA and SANDOVAL were allegedly vacationing in Las Vegas, Nevada.

71. SAMANTHA, a type 1 diabetic, was without her medicine and was supplied cocaine by SANDOVAL.

72. Almost immediately thereafter SAMANTHA became very ill.

73. SAMANTHA began vomiting to the point of becoming lethargic.

74. Instead of seeking medical assistance, SANDOVAL left SAMANTHA in their hotel room alone for over 6 hours.

*PHILLIP BELL JR. v. SADDLEBACK VALLEY UNIFIED SCHOOL DISTRICT, et al. – SAC*

75. SANDOVAL allegedly returned later and found SAMANTHA dead.

76. SANDOVAL left Las Vegas almost immediately, taking all of SAMANTHA'S bank cards and thousands of dollars in casino chips.

77. The next day SANDOVAL went shopping with SAMANTHA'S bank card spending nearly a thousand dollars on items at a Footlocker in Los Angeles.

## HARBORING OF A MINOR

78. PHILLIP III was devastated by the news of his mother's death and called FATHER in tears.

79. Upon learning of SAMANTHA's passing, FATHER immediately flew to Los Angeles to try to locate his son, PHILLIP III.

80. PHILLIP III gave FATHER the address where he was staying.

81. Before FATHER could arrive at that address, DISTRICT and MISSION sent JOHNSON to the same location where PHILLIP III was being harbored, to meet with SANDOVAL and BRISCOE and discuss plans for where to place PHILLIP III. (Exhibit E, Transcript of Johnson Convo).[1]

---

[1] During a conversation with FATHER, JOHNSON admitted that he had been present at the location where PHILLIP III was being held by BRISCO and SANDOVAL and had met with both individuals there. JOHNSON further admitted that he met with BRISCO in Southern California on the day of Samantha's death. This conversation took place while FATHER was attempting to attend a football practice to meet with PHILLIP III in person; however, JOHNSON prevented FATHER from doing so.

*PHILLIP BELL JR. v. SADDLEBACK VALLEY UNIFIED SCHOOL DISTRICT, et al. – SAC*

19

**CHAD JOHNSON:** Briscoe was down there the Thursday that - I don't know when she died. She  died on Tuesday, Wednesday?

**TONY BARNES:** Thursday, on Thursday.

**CHAD JOHNSON:** Thursday morning. So, that night. Mom passed away on Thursday. Briscoe  was there at the house with another guy I don't know  and Isaiah. Another guy was living there and there  two friends with him. There was another young kid  there with him and they're just on the bed, you know,  kind of.

I had my mom diagnosed right now, too. So, I've seen what happened was just totally blocked,  so I tried to be there for him. Like, I knew that  wasn't my deal that's why I let him know I was there  for him. Before I left, I went back down there and  let everyone out and, like, I had some questions  because I had no inklings of Ohio State with anyone.  My mom calls me, block.

Okay.

So, I had some questions, right

82. BRISCOE, JOHNSON, and SANDOVAL all met at 256 Moccasin, Irvine, California 92618, an address associated with the MISSION football program. (Exhibit E, Transcript of Johnson Convo pg. 19).

83. When FATHER reached Los Angeles on the same day, he went directly to the address provided by PHILLIP III in an effort to locate him.

84. When FATHER arrived at the address, SANDOVAL coerced PHILLIP III not to open the door, following the plan developed between SANDOVAL, BRISCOE, and JOHNSON.

85.  At the same time, BRISCOE, SANDOVAL, and others were present at the address and continued to pressure PHILLIP III not to answer the door for his FATHER.

86. **BRISCOE, in particular, had traveled to Los Angeles specifically to interfere with FATHER's custodial rights.**

87. As a result of these coordinated actions by DEFENDANTS, FATHER was completely denied access to PHILLIP III.

88. Unfortunately, this was only the beginning of a complex web of secrecy and control over PHILLIP III after his mother's death

89. DEFENDANTS were determined to keep their rising star, shielded him from his FATHER GRANDMA and GRANDPA, and kept PHILLIP III whereabouts a closely guarded secret.

90. DISTRICT and MISSION immediately decided to re-enroll PHILLIP III in school for his senior year.

91. SANDOVAL and BRISCOE purposefully misrepresented their relationship to PHILLIP III and were listed as his guardians so they could reenroll PHILLIP III at MISSION. They did this despite knowing it violated DISTRICT's policy because FATHER was the only parent with custody rights lived over 400 miles away from the DISTRICT. (Exhibit F - SVUSD Residency Verification Form)

92.  BRISCOE and NEXT LEVEL also intentionally interfered with the PLAINTIFFS' custodial rights by fraudulently claiming to be PHILLIP III's uncle and providing contact information to MISSION so that PHILLIP would have an emergency contact on official school documentation.

93. DISTRICT and MISSION then publicly promoted a Go Fund Me page started by SANDOVAL to assist SANDOVAL in raising money to harbor PHILLIP III from FATHER, GRANDMA and GRANDPA.

*PHILLIP BELL JR. v. SADDLEBACK VALLEY UNIFIED SCHOOL DISTRICT, et al. – SAC*

94. SANDOVAL claimed that the funds would be used for SAMANTHA'S funeral expenses and children even though DISTRICT and MISSION knew SANDOVAL was not PHILLIP'S father.



(Photo displays SANDOVAL's Go Fund Me page)

95. In support of SANDOVAL, KLUTCH donated a substantial amount to the go fund me page.



*PHILLIP BELL JR. v. SADDLEBACK VALLEY UNIFIED SCHOOL DISTRICT, et al. – SAC*

(Photo displays $1,000 KLUTCH donation to SANDOVAL Go Fund Me)

96. The funds from the Go Fund Me account were directly used to move SANDOVAL and

PHILLIP III from hotel room to hotel room and away from FATHER until MISSION and

DISTRICT could find them permanent housing with CHOW an associate of SANDOVAL.

97. SANDOVAL did not use any of the funds from the Go Fund Me for SAMANTHA'S funeral

and demanded that GRANDMA and GRANDPA pay for all expenses.

98. DEFENDANTS knew the funds from the go fund me would be used to harbor PHILLIP III

away from FATHER.

99. JOHNSON admittedly knew that BRISCO and SANDOVAL were "bad guys" but failed to do

anything to help reunite PHILLIP III with FATHER.

100.    At one point during the conversation between JOHNSON and FATHER, JOHNSON states

that if SAMANTHA was related to JOHNSON, JOHNSON would have killed SANDOVAL.

(Exhibit E, Transcript pg. 27)

27

1    CHAD JOHNSON: Because I'm like that.

2    I'm a CCW guy. I have a gun on me all times. I  would kill

3    him. If that was my sister, I'd kill the  motherfucker.

4    TONY BARNES: Yeah, but this dude's

5    been -.

6

7    CHAD JOHNSON: Right. But the problem

8    is, is, like, I know.

9    TONY BARNES: What's going on.

10    CHAD JOHNSON: Dude, I'm telling you

11    that story that I heard.

12

13    101.    DISTRICT, OSBORNE, and WONG did not provide notice to PLAINTIFFS or hold a

14    hearing of any kind to determine if PHILLIP III should remain at MISSION but instead

15    purposefully refused to communicate with FATHER GRANDMA and GRANDPA.

16    102.    DISTRICT and MISSION planned for their well to do parents to offer PHILLIP III

17    permanent housing without consent.

18

19    103.    DISTRICT and MISSION also allowed PHILLIP III to participate in summer football

20    practice without consent from FATHER.

21    104.    On July 5, 2024, FATHER, GRANDPA and GRANDMA sent a cease-and-desist letter to

22    SADDLEBACK, SANDOVAL,  and OSBORNE asking them not to have contact with

23    PHILLIP III and to notify them of PHILLIP III's whereabouts. (See Exhibit G, Cease and

24    Desist Letter)

25

26    105.    PLAINTIFFS also sent a cease-and-desist directly to BRISCOE and NEXT LEVEL.

27

28

*PHILLIP BELL JR. v. SADDLEBACK VALLEY UNIFIED SCHOOL DISTRICT, et al. – SAC*



**J. Davis Law Firm, PLLC**

THERE IS PROTECTION IN COUNSEL

JDAVISCOUNSEL.COM | LAW@JDAVISCOUNSEL.COM
P.O. BOX 122123, COVINGTON, KY 41011
(859) 750-5033



The Law Office of Valery Nechay
345 Franklin Street
San Francisco, CA 94102
Phone: 650-487-0671

July 5, 2024

Steve Briscoe
Next Level Sports & Academics
3927 Hummingbird Dr.
Antioch, CA 94509

**NOTICE TO CEASE AND DESIST ENTICEMENT OF A CHILD FROM A PARENT**

Dear Mr. Briscoe,

This letter serves as a formal cease and desist notice. Our offices represent Phillip Bell Jr., along with Maria Lorna Barnes, and Anthony Barnes. Phillip Bell Jr. (biological father of Phillip Bell III), along with Maria Lorna Barnes and Anthony Barnes (biological grandparents) (collectively "the Family") have legal custody rights to Phillip Bell III. Contrary to any opinion, Isaiah Sandoval has no legal right to parent Phillip Bell III.

This notice is issued due to your involvement in actions that may violate California Civil Code § 49. It has come to our attention that you have been engaging with Phillip Bell III in a manner that interferes with the custodial rights of his biological Family. Specifically, your role as a football coach and mentor to Phillip Bell III appears to be directly interfering with the parental relationship. We understand that you may have facilitated Phillip Bell III's separation from his Family through recruiting efforts under Next Level Sports & Academics. It is also our understanding that you have continued to promote and influence

25

*PHILLIP BELL JR. v. SADDLEBACK VALLEY UNIFIED SCHOOL DISTRICT, et al. – SAC*

106.    The cease-and-desist letter reiterated to all DEFENDANTS that SANDOVAL had no legal

parental rights to PHILLIP III and that PHILLIP III needed to be returned to his biological

family.

107.    BRISCOE and NEXT LEVEL responded to the cease and desist letter confirming their

receipt and claiming that PLAINTIFFS slandering their name.



*NEXT LEVEL* Sports & Academics

July 7, 2024

Jamir Davis, Esq.
J. Davis Law Firm, PLLC
326 Scott Street
Covington, KY 41011
jdavis@jdaviscounsel.com

**RESPONSE TO**
**NOTICE TO CEASE AND DESIST ENTICEMENT OF A CHILD FROM A PARENT**

Mr. Davis,

Whether unwittingly or knowingly, the Barnes and Bell families have engaged in slander and are leaning
toward potential grounds for a lawsuit or countersuit, should you proceed to file the threatened misguided,
baseless, unjust, and frivolous lawsuit.

Contrary to your "attention and understanding" Next Level Sports & Academics, per our name and
mission, has only been instrumental in supporting the minor's athletic, academic, moral, and social well-
being, over the past 10 years, and with his mother's consent and encouragement, prior to her passing.
We request that *the Family* provide evidence and documentation to back up these baseless claims.

108.    BRISCOE and NEXT LEVEL intentionally disregarded the cease-and-desist letter and

continued communications with PHILLIP III.

109.    BRISCOE, NEXT LEVEL, SADDLEBACK, OSBORN, and JOHNSON, all knew where

Phillip BELL III was located and failed to communicate that information to PLAINTIFFS.

*PHILLIP BELL JR. v. SADDLEBACK VALLEY UNIFIED SCHOOL DISTRICT, et al. – SAC*

110.    The fraudulent misrepresentation by BRISCOE and NEXT LEVEL aided MISSION in its

scheme to re-enroll PHILLIP III without proper consent in violation of the CIF regulation,

California Law, DISTRICT policy, and United States Constitution.

111.    Upon receiving the cease-and-desist letters, BRISCOE, NEXT LEVEL, and SANDOVAL

actively made and published statements promoting MISSION as the school PHILLIP III should

attend, breaking the CIF Undue Influence Rule 510 and perpetuating violations of the custody

agreement.



(Photo of SANDOVAL'S Instagram story post cease-and-desist).

*PHILLIP BELL JR. v. SADDLEBACK VALLEY UNIFIED SCHOOL DISTRICT, et al. – SAC*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15



16    112.    On July 9, 2024, General counsel for the DISTRICT and WONG confirmed receipt of the

17    cease-and-desist letter sent to OSBORNE and affirmed that DISTRICT and MISSION would

18

19    comply with PLAINTIFFS request.

20
21
22
23
24
25
26
27
28

*PHILLIP BELL JR. v. SADDLEBACK VALLEY UNIFIED SCHOOL DISTRICT, et al. – SAC*

---------- Forwarded message ----------
From: **Alefia E. Mithaiwala** <Alefia.Mithaiwala@aalrr.com>
Date: Tue, Jul 9, 2024 at 2:31 PM
Subject: P. Bell/SVUSD [AALRR-CERRITOS.005650.00141.FID1446806]
To: jdavis@jdaviscounsel.com <jdavis@jdaviscounsel.com>

Mr. Davis,

Please be advised that I represent Saddleback Valley USD with respect to matters involving Phillip Bell III.  Please direct all future communication to my attention. The District is in receipt of your July 5, 2024 communication to Principal Osborne.  Please be advised District employees are not currently in communication with Phillip and have been directed to refrain from communicating with him at this time.

Thank you,

**Alefia E. Mithaiwala** | Partner
Atkinson, Andelson, Loya, Ruud & Romo
20 Pacifica, Suite 1100, Irvine, California 92618
Direct (949) 536-2232 • Main (949) 453-4260 • Fax (949) 453-4262
alefia.mithaiwala@aalrr.com | website | subscribe

(Photo of email receipt DISTRICT confirmation)

113.    However, on July 16, 2024, DISTRICT employees were in fact in communication with

PHILLIP III and posted footage of PHILLIP III on social media participating in a 7-on-7

football tournament with the MISSION team.

*PHILLIP BELL JR. v. SADDLEBACK VALLEY UNIFIED SCHOOL DISTRICT, et al. – SAC*



(Photo depicts PHILLIP III on July 16, 2024, 7v7 tournament)

114.    MISSION, DISTRICT, OSBORNE, JOHNSON and WONG were all aware of

SAMANTHA's death, SANDOVAL's lack of custodial rights, BRISCOE's fraudulent claim of

relation to PHILLIP III, but still allowed PHILLIP III to enroll in classes at MISSION for the

2024-2025 school year without parental consent.

115.    PLAINTIFFS were devastated by the blatant disregard of the cease-and-desist letter by

DISTRICT and WONG especially considering that they could not locate PHILLIP III, they

knew PHILLIP III was in close proximity to SANDOVAL and they believed SANDOVAL to

be responsible for the death of SAMANTHA.

116.    Even after being made aware of all the facts, DISTRICT, WONG, MISSION, SANDOVAL,

BRISCOE, OSBORNE and JOHNSON and others, in direct violation of California law, the

*PHILLIP BELL JR. v. SADDLEBACK VALLEY UNIFIED SCHOOL DISTRICT, et al. – SAC*

1    court order, and CIF regulations, allowed PHILLIP III to continue playing football without

2    PLAINTIFFS permission, further complicating an already strained relationship.

3    117.    DISTRICT, OSBORNE, and JOHNSON continued to meet with PHILLIP III to influence

4    him away from PLAINTIFFS.

5    118.    Fed up with DEFENDANTS' interference with their relationship with PHILLIP III,

6    PLAINTIFFS traveled to Los Angeles to meet with DISTRICT, OSBORNE, and JOHNSON to

7    discuss PHILLIPS whereabouts.

8    119.    FATHER attempted to go see PHILLIP III while he was at practice and JOHNSON would

9    not allow FATHER to see PHILLIP III and said that he had to call him on the phone. (Exhibit

10   E, Transcript)

11   120.    JOHNSON physically impeded FATHER from see PHILLIP III and gave him miss

12   information about the situation to try to confuse FATHER. (Exhibit E, Transcript)

13   121.    **During the conversation JOHNSON admitted that both BRISCOE and SANDOLVA**

14   **were highly involved with PHILLIP III and were directly influencing his decisions while**

15   **he was a minor in direct violation of the cease-and-desist letters. (Exhibit E, Transcript pg.**

16   **10, 19, 23)**

17   122.    DURING meetings with OSBORNE and JOHNSON it was disclosed that they were aware

18   of PHILLIP III's location but refused to share it with PLAINTIFFS.

19   123.    JOHNSON admitted to having PHILLIP III over to his home for dinner and that he was

20   arranging for families to house and care for PHILLIP III.

21   124.    JOHNSON intentionally interfered with PLAINTIFFS' rights by making promises to

22   PHILLIP III that he would be able to participate in football even if he did not have any consent

23   from PLAINTIFFS.

*PHILLIP BELL JR. v. SADDLEBACK VALLEY UNIFIED SCHOOL DISTRICT, et al. – SAC*

125.    JOHNSON knew that his actions violated CIF regulations and California law but continued to act with impunity.

126.    DISTRICT, WONG, JOHNSON, and OSBORNE then took PHILLIP III and SANDOVAL 2,400 miles across state lines on a trip to Hawaii for a televised football game without PLAINTIFFS' consent.



(Photo features SANDOVAL and PHILLIP III in Hawaii after participation in football game)

127.    DEFENDANTS used the influence of trips to Hawaii, opportunities to live with millionaires, clothing, housing, fame, fortune, and other resources to persuade PHILLIP III not to have contact with PLAINTIFFS. **(Exhibit E, Transcript pg. 41)**

128.    After SAMANTHA's death, KLUTCH continued to profit from PHILLIP III's success even though he was a minor and had no parental oversight.

129.    PLAINTIFFS reached out to KLUTCH in an attempt to discuss PHILLIP III's NIL deal and KLUTCH flat out refused to have any discussion with PLAINTIFFS.

*PHILLIP BELL JR. v. SADDLEBACK VALLEY UNIFIED SCHOOL DISTRICT, et al. – SAC*

130.    PLAINTIFFS reached out to CIF for assistance and asked that an investigation be performed and CIF refused to cooperate.

131.    CIF knew DISTRICT was not abiding by CIF rules and failed to act.

132.    CIF, DISTRICT, WONG, NEXT LEVEL, BRISCOE, SANDOVAL, OSBORNE, and JOHNSON all benefited from the talents, skills, abilities, name, image and likeness of PHILLIP III at the expense of PLAINTIFFS and told PHILLIP III not to communicate with PLAINTIFFS

133.    DISTRICT, WONG, NEXT LEVEL, KLUTCH, BRISCOE, OSBORNE, WONG, and JOHNSON all knew that PHILLIP III was supposed to undergo court ordered counseling and needed counseling to mend the relationship with PLAINTIFFS but offered no such assistance.

134.    DISTRICT, WONG, NEXT LEVEL, KLUTCH, BRISCOE, OSBORNE, and JOHNSON knew that PHILLIP III needed counseling to cope with the death of SAMANTHA and SANDOVAL'S involvement in that but offered no such assistance.

135.    NEXT LEVEL, KLUTCH, BRISCOE, and SANDOVAL then caused PHILLIP III to move in with CHOW (Mickey)  against FATHER's will, despite the fact that FATHER had previously sent cease-and-desist letters to each of them demanding that they refrain from interfering with his custodial rights. (Exhibit E, Transcript pg. 2)

136.    DEFENDANTS harbored PHILLIP III from PLAINTIFFS and benefited from PHILLIP III's talent, fame, and fortune in direct violation of CIF regulations, California law, and the United States Constitution and Common Law.

137.    KLUTCH outright refused to communicate with PLAINTIFFS and continued contact with PHILLIP III, SANDOVAL, and BRISCOE in a plot to keep PHILLIP III in Los Angeles and profit from PHILLIP III's likeness.

*PHILLIP BELL JR. v. SADDLEBACK VALLEY UNIFIED SCHOOL DISTRICT, et al. – SAC*

138.    If PHILLIP III was an average student who never played football DEFENDANTS would have never offered him opportunities to live with millionaires, clothing, housing, fame, fortune, and other resources to persuade PHILLIP III not to have contact with PLAINTIFFS and to stay at MISSION.

139.    Further, if PHILLIP III was an ordinary student, DEFENDANTS would not have violated district policies by offering the student such profound benefits.

140.    DISTRICT and WONG were aware of the "Put the student first" policy implemented by MISSION, OSBORNE, and JOHNSON and their failure to act in accordance with official DISTRICT policies thereby ratifying the behavior or OSBORNE and JOHNSON.

141.    CIF officials JAMES PERRY and MIKE WEST were notified a second time of the violations of CIF rules by DISTRICT and failed to take any action which allowed WONG, MISSION, DISTRICT, JOHNSON, and OSBORNE to intentionally interfere with the parental rights of PLAINTIFFS. (Exhibit H, CIF emails)

### FIRST CAUSE OF ACTION

**(Violation of the Fourteenth Amendment – Interference with a Familial Relationship)**

**(42 U.S.C. § 1983)**

**ALL PLAINTIFFS v. WONG, OSBORNE, JOHNSON, and DOES 1-20**

142.    PLAINTIFFS incorporate paragraphs 1 through 114, as though fully reproduced herein.

143.    At all relevant times mentioned herein, WONG, OSBORNE, JOHNSON, and DOES 1-20 acted under the color of law when performing their official duties. At all relevant times PLAINTIFFS had an established custodial and companionship interest with PHILLIP III that e

34

*PHILLIP BELL JR. v. SADDLEBACK VALLEY UNIFIED SCHOOL DISTRICT, et al. – SAC*

144.    WONG, OSBORNE, JOHNSON, and DOES 1-20 deprived PLAINTIFFS of their rights under the United States Constitution to family integrity, familial association, and the right of PLAINTIFFS to direct the upbringing of PHILLIP III.

145.    WONG, OSBORNE, JOHNSON, and DOES 1-20 developed and implemented a plan to prevent PLAINTIFFS from contacting their minor child by enrolling PHILLIP III without consent in violation of DISTRICT policy, allowing PHILLIP to participate in the dangerous sport of football will out consent from PLAINTIFFS, housing PHILLIP III and offering PHILLIP III clothing, travel, fame, fortune, and other resources to persuade PHILLIP III not to have contact with PLAINTIFFS. WONG, OSBORNE, JOHNSON, and DOES 1-20 behavior shock the conscience and offends the community's sense of fair play and decency.

146.    The actions of WONG, OSBORNE, JOHNSON, and DOES 1-20 were taken without proper procedure and in direct violation of a court order. Furthermore, the actions were the direct and proximate cause of PLAINTIFF'S rights under the United States Constitution because it resulted in PLAINTIFFS being separated from PHILLIP III.

147.    In actions as alleged above, WONG, OSBORNE, JOHNSON, and DOES 1-20 have acted with malice or reckless indifference to the rights of PLAINTIFFS, thereby entitling PLAINTIFFS to an award of punitive damages against DISTRICT.

148.    By reason of the conduct of WONG, OSBORNE, JOHNSON, and DOES 1-20 as alleged herein, PLAINTIFFS have necessarily retained attorneys to prosecute the present action. PLAINTIFFS are therefore entitled to reasonable attorney's fees and litigation expenses incurred in bringing this action

WHEREFORE, PLAINTIFFS pray for relief as hereinafter set forth.

## SECOND CAUSE OF ACTION

*PHILLIP BELL JR. v. SADDLEBACK VALLEY UNIFIED SCHOOL DISTRICT, et al. – SAC*

**MONELL**

**OFFICAL POLICY, FINAL ACT OF POLICY MAKER, & FAILURE TO TRAIN**

**(42 U.S.C. § 1983)**

**ALL PLAINTIFFS v. DISTRICT**

149.    PLAINTIFFS incorporate the paragraphs 1 through 114, as though fully reproduced herein.

150.    At all relevant times mentioned herein, OSBORNE, JOHNSON and DOES 1-20, acted under the color of law when performing official duties.

151.    The acts of OSBORNE JOHNSON and DOES 1-20 deprived the PLAINTIFFS of particular rights under the United States Constitution because they interfered with PLAINTIFFS' right to associate with their minor child.

152.    OSBORNE, JOHNSON and DOES 1-20 acted pursuant to an expressly adopted official policy to ignore the DISTRICT bylaws and "put the child first" which was a widespread or longstanding practice or custom of the defendant DISTRICT.

153.    The Defendant DISTRICT's official policy or widespread or longstanding practice or custom caused the deprivation of the PLAINTIFFS' rights by DISTRICT; that is, the DISTRICT's official policy or widespread or longstanding practice or custom is so closely related to the deprivation of the PLAINTIFFS' rights as to be the moving force that caused the ultimate injury.

154.    OSBORNE, JOHNSON and DOES 1-20 also had final policy making authority from defendant District concerning these acts.

155.    The training policies of the Defendant DISTRICT were not adequate to prevent violations of law by OSBORNE, JOHNSON and the training policies of the Defendant

36

*PHILLIP BELL JR. v. SADDLEBACK VALLEY UNIFIED SCHOOL DISTRICT, et al. – SAC*

DISTRICT did not prepare OSBORNE and JOHNSON to handle the situations with

which they were required to manage.

156.    DISTRICT'S behavior was a direct and proximate cause of PLAINTIFF'S rights under the

United States Constitution because it resulted in PLAINTIFFS being separated from PHILLIP

III.

157.    In actions as alleged above, OSBORNE, JOHNSON and DOES 1-20 have acted with malice

or reckless indifference to the rights of PLAINTIFFS, thereby entitling PLAINTIFFS to an

award of punitive damages against DISTRICT.

158.    By reason of the conduct of DISTRICT as alleged herein, PLAINTIFFS have necessarily

retained attorneys to prosecute the present action. PLAINTIFFS are therefore entitled to

reasonable attorney's fees and litigation expenses incurred in bringing this action

WHEREFORE, PLAINTIFFS pray for relief as hereinafter set forth.

## THIRD CAUSE OF ACTION
### NEGLIGENCE
### (Common Law)
### ALL PLAINTIFFS v. OSBORNE, JOHNSON, BRISCOE, SANDOVAL, and DOES 1-20
### (INDIVIDAL CAPCITY)

### ALL PLAINTIFFS v. NEXT LEVEL

159.    PLAINTIFFS incorporate paragraphs 1 through 114, as though fully reproduced herein

except for any and all allegations of intentional, malicious, extreme, outrageous, wanton, or

oppressive conduct by defendants, and any and all allegations requesting punitive damages.

*PHILLIP BELL JR. v. SADDLEBACK VALLEY UNIFIED SCHOOL DISTRICT, et al. – SAC*

160.    OSBORNE, JOHNSON, BRISCOE, SANDOVAL, NEXT LEVEL, and DOES 1-20 owed

PLAINTIFFS a duty to use reasonable care while engaging with PLAINTIFFS' minor child.

161.    OSBORNE, JOHNSON, BRISCOE, SANDOVAL, NEXT LEVEL,, and DOES 1-20

breached this duty of care by developing and implementing a plan to harbor PHILLIP III away

from PLAINTIFFS, by failing to comply with the court order, concealing PHILLIP III's

whereabouts from PLAINTIFFS, allowing PHILLIP III to participate in football without

PLAINTIFFS' consent, and failing to keep PLAINTIFFS informed in PHILLIP's education and

contractual obligations.

162.    OSBORNE, JOHNSON, BRISCOE, SANDOVAL, NEXT LEVEL, and DOES 1-20 were

negligent and breached their duty by advising PHILLIP III to violate a court order, offered

PHILLIP III the opportunity to live with millionaire families and offered PHILLIP III clothing,

housing, travel, fame, fortune, and other resources to persuade PHILLIP III not to have contact

with PLAINTIFFS.

163.    These negligent acts directly and proximately caused PLAINTIFFS' harm.

164.    As a direct and proximate result of said OSBORNE, JOHNSON, BRISCOE, SANDOVAL,

NEXT LEVEL, and DOES 1-20's negligence, PLAINTIFFS sustained mental and emotional

injuries and PLAINTIFFS have sustained pecuniary loss resulting from the loss of comfort,

society, attention, and services, in an amount to be determined at trial.

165.    By reason of the conduct of OSBORNE, JOHNSON, BRISCOE, SANDOVAL, NEXT

LEVEL, and DOES 1-20 as alleged herein, PLAINTIFFS have necessarily retained attorneys to

prosecute the present action.

WHEREFORE, JOHN prays for relief as hereinafter set forth.

**FOURTH CAUSE OF ACTION**

38

*PHILLIP BELL JR. v. SADDLEBACK VALLEY UNIFIED SCHOOL DISTRICT, et al. – SAC*

## NEGLIGENCE - RESPONDEAT SUPERIOR
## ALL PLAINTIFFS. v. DISTRICT, WONG, and OSBORNE (OFFICIAL CAPACITY)

166.    PLAINTIFFS incorporate paragraphs 1 through 114, as though fully reproduced herein except for any and all allegations of intentional, malicious, extreme, outrageous, wanton, or oppressive conduct by defendants, and any and all allegations requesting punitive damages.

167.    DISTRICT, WONG, and OSBORNE owed PLAINTIFFS a duty to use reasonable care while engaging with PLAINTIFFS' minor child PHILLIP III.

168.    DISTRICT, WONG, and OSBORNE failed to use reasonable care that a reasonably careful school district and school principal should use under similar circumstances. DISTRICT, WONG, and OSBORNE allowed JOHNSON to continue contact with PHILLIP III, register PHILLIP III for football in violation of DISTRICT policy, offer PHILLIP III housing, and take PHILLIP III across state lines without consent from PLAINTIFFS.  DISTRICT and WONG allowed OSBORNE to continue communication with PHILLIP III in direct violation of the cease and desist, register PHILLIP III for classes against DISTRICT policy, and have non legal guardians on PHILLIP III official school documentation without PLAINTIFFS permission in violation of DISTRICT policy.

169.    At all times mentioned herein, OSBORNE, JOHNSON, and DOES 1-20 were acting within the course and scope of their employment and/or agency with DISTRICT, WONG, and OSBORNE. As such, DISTRICT, WONG, and OSBORNE are liable in respondent superior for the injuries caused by the acts and omissions of OSBORNE and JOHNSON pursuant to California Common Law in the negligent hiring, retention, and supervision of its employees and/or contractors.

*PHILLIP BELL JR. v. SADDLEBACK VALLEY UNIFIED SCHOOL DISTRICT, et al. – SAC*

170.    As an actual and proximate result of DISTRICT, WONG, and OSBORNE and negligence and mental injuries and emotional injuries sustained by PLAINTIFFS, PLAINTIFFS have sustained pecuniary loss resulting from the loss of comfort, society, attention, and services, in an amount to be determined at trial.

171.    By reason of the conduct of DISTRICT, WONG, and OSBORNE as alleged herein, PLAINTIFFS have necessarily retained attorneys to prosecute the present action.

WHEREFORE, PLAINTIFFS pray for relief as hereinafter set forth.

**FIFTH CAUSE OF ACTION**

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS-**

**(RESPONDEAT SUPERIOR)**

**ALL PLAINTIFFS v. DISTRICT, WONG, and OSBORNE**

172.    PLAINTIFFS incorporate paragraphs 1 through 114, as though fully reproduced herein.

173.    The present action is brought pursuant to the Common Law of California, and as a public entity and public employees, DISTRICT, WONG, and OSBORNE are liable for injuries caused by their acts or omissions to the same extent as a private person. At all times mentioned herein, OSBORNE, JOHNSON, and DOES 1-20 were acting within the course and scope of their employment and/or agency with DISTRICT, WONG, and OSBORNE. As such, Defendants DISTRICT, WONG, and OSBORNE are liable in respondent superior for the injuries caused by the acts and omissions of OSBORNE, JOHNSON, and DOES 1-20.

174.    DISTRICT and WONG perpetuated extreme and outrageous conduct against PLAINTIFFS by allowing OSBORNE to continue communication with PHILLIP III in direct violation of the cease and desist, allowing her to register PHILLIP III for classes against DISTRICT policy, and

*PHILLIP BELL JR. v. SADDLEBACK VALLEY UNIFIED SCHOOL DISTRICT, et al. – SAC*

by allowing SANDOVAL and BRISCOE to be added as primary contacts to school

documentation without PLAINTIFFS permission in violation of DISTRICT policy.

175.    DISTRICT, WONG, and OSBORNE allowed JOHNSON to continue contact with PHILLIP

III, register PHILLIP III for football in violation of DISTRICT policy, offer PHILLIP III

housing, and take PHILLIP III across state lines without consent from PLAINTIFFS.

176.    At all times mentioned herein, OSBORNE, JOHNSON, and DOES 1-20 were acting within

the course and scope of their employment and/or agency with DISTRICT, WONG, and

OSBORNE. As such, DISTRICT, WONG, and OSBORNE are liable in respondent superior for

the injuries caused by the acts and omissions of OSBORNE and JOHNSON pursuant to

California Common Law in the negligent hiring, retention, and supervision of its employees

and/or contractors.

177.    As an actual and proximate result of DISTRICT, WONG, and OSBORNE and negligence

and mental injuries and emotional injuries sustained by PLAINTIFFS, PLAINTIFFS have

sustained pecuniary loss resulting from the loss of comfort, society, attention, and services, in

an amount to be determined at trial.

178.    By reason of the conduct of DISTRICT, WONG, and OSBORNE as alleged herein,

PLAINTIFFS have necessarily retained attorneys to prosecute the present action.

WHEREFORE, PLAINTIFFS pray for relief as hereinafter set forth.


**SIXTH CAUSE OF ACTION**

**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

**(ALL PLAINTIFFS v. DISTRICT, OSBORNE, JOHNSON, WONG and DOES 1-20)**


**(ALL PLAINTIFFS v. BRISCOE, SANDOVAL, and NEXT LEVEL,)**


41

*PHILLIP BELL JR. v. SADDLEBACK VALLEY UNIFIED SCHOOL DISTRICT, et al. – SAC*

179.    PLAINTIFFS incorporate paragraphs 1 through 114, as though fully reproduced herein except for any and all allegations of intentional, malicious, extreme, outrageous, wanton, or oppressive conduct by defendants, and any and all allegations requesting punitive damages.

180.    In the alternative, PLAINTIFFS alleges DEFENDANTS negligent actions and/or negligent failure to act within the scope and course of their responsibilities as adults as set forth herein-above approximately cause severe physical injury and serious emotional distress to PLAINTIFFS.

181.    The present action is brought pursuant to the laws of California. DEFENDANTS and DOES 1-20 are liable for injuries caused by their acts or omissions to the same extent as a private person. At all times mentioned herein, DEFENDANTS and DOES 1-20 were acting as adults individually or in the course of their employment.

182.    DEFENDANTS' negligence was a substantial factor in causing PLAINTIFFS serious emotional distress including both mental and emotional suffering, fright, nervousness, anxiety, worry, shock, humiliation, and shame.

WHEREFORE, PLAINTIFFS prays for relief as hereinafter set forth.

## SEVENTH CAUSE OF ACTION
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (ALL PLAINTIFFS v. OSBORNE, JOHNSON, and DOES 1-20)

### (ALL PLAINTIFFS v. BRISCOE, SANDOVAL, and NEXT LEVEL)

183.    PLAINTIFFS incorporate paragraphs 1 through 114, as though fully reproduced herein.

184.    The present action is brought pursuant to Common Law of California, as a public entity and public employees, OSBORNE, JOHNSON, BRISCOE, SANDOVAL, NEXT LEVEL, and

DOES 1-20 are liable for injuries caused by their acts or omissions to the same extent as a private person. At all times mentioned herein, OSBORNE, JOHNSON, BRISCOE, SANDOVAL, NEXT LEVEL, and DOES 1-20 were acting within the course and scope of their employment and/or individually. As such, DISTRICT and WONG are liable in respondent superior for the injuries caused by the acts and omissions of OSBORNE, JOHNSON and DOES 1-20.

185.    OSBORNE, JOHNSON, BRISCOE, SANDOVAL, NEXT LEVEL, and DOES 1-20 perpetuated extreme and outrageous conduct against PLAINTIFFS by developing and implementing a plan to harbor PHILLIP III away from PLAINTIFFS,  failing to comply with the court order, concealing PHILLIP III's whereabouts from PLAINTIFFS, allowing PHILLIP III to participate in football without PLAINTIFFS' consent, and failing to keep PLAINTIFFS informed in PHILLIP's education and contractual obligations.

186.    PLAINTIFFS have a right to be free from such callous actions aimed at inflicting mental and emotional damage and this right was violated by OSBORNE, JOHNSON, BRISCOE, SANDOVAL, NEXT LEVEL, and DOES 1-20, inclusive.

187.    These acts directly and proximately caused PLAINTIFF'S harm.

188.    As a direct and proximate result of said OSBORNE, JOHNSON, BRISCOE, SANDOVAL, NEXT LEVEL, and DOES 1-20 negligence, PLAINTIFFS sustained mental and emotional injuries and PLAINTIFFS have sustained pecuniary loss resulting from the loss of comfort, society, attention, and services, in an amount to be determined at trial.

189.    By reason of the conduct of DISTRICT, WONG, and OSBORNE as alleged herein, PLAINTIFFS have necessarily retained attorneys to prosecute the present action.

WHEREFORE, PLAINTIFFS prays for relief as hereinafter set forth.

*PHILLIP BELL JR. v. SADDLEBACK VALLEY UNIFIED SCHOOL DISTRICT, et al. – SAC*

**EIGHTH CAUSE OF ACTION**

**UNJUST ENRICHMENT**

**PLAINTIFFS v. DISTRICT, JOHNSON, BRISCOE &NEXT LEVEL**

190.    PLAINTIFFS incorporate paragraphs 1 through 114, as though fully reproduced herein.

191.    DISTRIC, BRISCOE, and NEXT LEVEL benefited from talents, name, image, and likeness of PHILLIP III while he was a minor.

192.    DISTRICT, BRISCOE, and NEXT LEVEL knowingly used PHILLIP III talents, skills, abilities, and likeness to sell tickets, merchandise, to promote DEFENDANTS' Brands and to market other goods and services.

193.    DISTRICT, BRISCOE, and NEXT LEVEL were unjustly enriched because at the time of the benefit PHILLIP III was a minor and did not receive fair compensation.

194.    DISTRICT, BRISCOE, and NEXT LEVEL were unjustly enriched at the expense of the PLAINTIFFS

195.    DISTRICT, BRISCOE, and NEXT LEVEL actions were the direct cause of the unjust enrichment, and they should be required to make restitution to PLAINTIFFS.

WHEREFORE, PLAINTIFFS prays for relief as hereinafter set forth.


**NINTH CAUSE OF ACTION**
**MONELL**
**(42 U.S.C. § 1983)**


**(RATIFICATION, & FAILURE TO TRAIN)**
**PLAINTIFFS v. CIF**

196.    PLAINTIFFS incorporate paragraphs 1 through 114, as though fully reproduced herein.

*PHILLIP BELL JR. v. SADDLEBACK VALLEY UNIFIED SCHOOL DISTRICT, et al. – SAC*

197.    At all relevant times mentioned herein, JAMES PERRY, MIKE WEST, WONG, OSBORNE, JOHNSON and DOES 1-20, acted under the color of law when performing official duties.

198.    The acts of JAMES PERRY, MIKE WEST, WONG, OSBORNE, and JOHNSON deprived the PLAINTIFFS of particular rights under the United States Constitution because they interfered with PLAINTIFFS' right to associate with their minor child.

199.    JAMES PERRY, MIKE WEST, WONG, OSBORNE, and JOHNSON acted pursuant to an expressly adopted official policy to ignore the CIF rules and "put the child first," which was a widespread and longstanding practice or custom of JAMES PERRY, MIKE WEST, WONG, OSBORNE, and JOHNSON.

200.    The defendants JAMES PERRY, MIKE WEST, WONG, OSBORNE, and JOHNSON official policy or widespread or longstanding practice or custom caused the deprivation of the PLAINTIFFS' rights by CIF; that is, the JAMES PERRY, MIKE WEST, WONG, OSBORNE, and JOHNSON's official policy or widespread or longstanding practice or custom is so closely related to the deprivation of the PLAINTIFFS' rights as to be the moving force that caused the ultimate injury.

201.    The training policies of the defendant CIF were not adequate to prevent violations of law by JAMES PERRY, MIKE WEST, WONG, OSBORNE, and JOHNSON and the training policies of Defendant CIF did not prepare WONG, OSBORNE, and JOHNSON to handle the usual and recurring situations with which she was required to manage.

202.    CIF ratified WONG, OSBORNE, and JOHNSON acts, that is, CIF knew of and specifically made a deliberate choice to approve WONG, OSBORNE, and JOHNSON's acts and the basis for it.

*PHILLIP BELL JR. v. SADDLEBACK VALLEY UNIFIED SCHOOL DISTRICT, et al. – SAC*

203.  The Defendant CIF was deliberately indifferent to the substantial risk that its policies were inadequate to prevent violations of law by WONG, OSBORNE, and JOHNSON.

204.  The acts of Defendant CIF caused the deprivation of the PLAINTIFFS' rights; that is, Defendant CIF's acts were so closely related to the deprivation of the PLAINTIFFS' rights as to be the moving force that caused the ultimate injury.

205.  The failure of the defendant CIF to prevent violations of law by WONG, OSBORNE, and JOHNSON and to provide adequate training caused the deprivation of the PLAINTIFFS' rights.

206.  In actions as alleged above, WONG, OSBORNE, and JOHNSON have acted with malice or reckless indifference to the rights of PLAINTIFFS, thereby entitling PLAINTIFFS to an award of punitive damages against CIF.

207.  By reason of the conduct of CIF as alleged herein, PLAINTIFFS have necessarily retained attorneys to prosecute the present action. PLAINTIFFS are therefore entitled to reasonable attorney's fees and litigation expenses incurred in bringing this action

WHEREFORE, PLAINTIFFS pray for relief as hereinafter set forth.

## TENTH CAUSE OF ACTION
### CIVIL RIGHTS CONSPIRACY
### (42 U.S.C. § 1983)

### ALL PLAINTIFFS v. ALL DEFENDANTS

208.  PLAINTIFFS reallege and incorporate by reference each and every prior paragraph of this complaint as though fully set forth herein.

209.  PLAINTIFFS allege that DEFENDANTS, acting under color of state law and/or in concert with state actors, knowingly conspired and agreed together to deprive PLAINTIFFS of their clearly established Fourteenth Amendment rights to familial association, care, custody, and control of a minor child, PHILLIP III, in violation of 42 U.S.C. § 1983.

*PHILLIP BELL JR. v. SADDLEBACK VALLEY UNIFIED SCHOOL DISTRICT, et al. – SAC*

210.    In furtherance of this conspiracy, DEFENDANTS engaged in coordinated overt acts designed to interfere with FATHER's custody rights and remove PHILLIP III from his lawful custodians. Specifically, SANDOVAL and BRISCOE harbored PHILLIP III at a private residence and actively prevented him from opening the door to FATHER, despite FATHER having legal custody rights. BRISCOE traveled to Los Angeles for the purpose of directly interfering with FATHER's custodial authority.

211.    On the same day as SAMANTHA's death, DISTRICT and MISSION, acting through JOHNSON, sent representatives to the address where PHILLIP III was being harbored, to meet with SANDOVAL and BRISCOE and coordinate where they would place PHILLIP III, all without notifying or seeking consent from FATHER.

212.    DISTRICT and MISSION then re-enrolled PHILLIP III for his senior year with SANDOVAL and BRISCOE listed as his guardians, even though this violated DISTRICT policy and disregarded the fact that FATHER, who lived over 400 miles away, held the only legal custody rights.

213.    BRISCOE and NEXT LEVEL also intentionally interfered with PLAINTIFFS' custodial rights by fraudulently claiming to be PHILLIP III's uncle and providing false emergency contact information to MISSION to ensure control over PHILLIP III's school documentation. DISTRICT and MISSION further promoted a Go Fund Me page created by SANDOVAL to raise funds under the false pretense of funeral expenses, even though they knew SANDOVAL was not PHILLIP III's father, and those funds were used to harbor PHILLIP III from FATHER, GRANDMA, and GRANDPA.

214.    PLAINTIFFS allege that these concerted acts had the purpose and effect of depriving FATHER of his parental rights, denying PHILLIP III access to his lawful family, and interfering with the fundamental liberty interests guaranteed by the Due Process Clause of the Fourteenth Amendment to maintain the parent-child relationship.

215.    As a direct and proximate result of DEFENDANTS' unlawful conspiracy, PLAINTIFFS have suffered emotional distress, loss of companionship, and the denial of constitutionally protected familial association and parental rights.

*PHILLIP BELL JR. v. SADDLEBACK VALLEY UNIFIED SCHOOL DISTRICT, et al. – SAC*

216.    PLAINTIFFS seek compensatory damages, punitive damages against the individual
DEFENDANTS, attorneys' fees under 42 U.S.C. § 1988, costs of suit, and such other and
further relief as the Court deems just and proper.

**JURY DEMAND**

PLAINTIFFS HEREBY DEMAND A JURY TRIAL.

**PRAYER FOR RELIEF**

WHEREFORE, PLAINTIFFS pray that the Court grant relief, as follows:

For general damages in a sum according to proof.

For special damages, including but not limited to, past, present, and/or future wage loss,
medical expenses, and other special damages to be determined according to proof;

For punitive and/or exemplary damages against DEFENDANTS in a sum according to
proof;

For preliminary and permanent injunctive relief according to proof;

Any and all permissible statutory damages;

For costs of suit and reasonable attorney's fees pursuant to 42 U.S.C. §1988 and U.S.C.
§794(a);

For all other relief to which the Court deems just and proper.

**Date: July 1, 2025**

*PHILLIP BELL JR. v. SADDLEBACK VALLEY UNIFIED SCHOOL DISTRICT, et al. – SAC*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Respectfully Submitted,**

**/s/** Jamir Davis
Jamir Davis, Esq.
J. Davis Law Firm, PLLC
106 Winding Way, Unit C
Covington, KY 41011
(859) 750-5033
jdavis@jdaviscounsel.com

*PHILLIP BELL JR. v. SADDLEBACK VALLEY UNIFIED SCHOOL DISTRICT, et al. – SAC*

**Proof of Service**

I, Jamir Davis, am a citizen of the United States. I am over the age of 18 years old and am not a party to the within action.:

**SECOND AMENDED COMPLAINT:**

**Violation of the Fourteenth Amendment - Interference with a Familial Relationship 42 U.S.C. § 1983;**

*Monell* **claim 42 U.S.C. § 1983;**

**Negligence;**

**Negligence - Respondeat Superior;**

**Intentional Infliction of Emotional Distress - Respondeat Superior;**

**Negligent Infliction of Emotional Distress; and**

**Intentional Infliction of Emotional Distress**

**BY ELECTRONIC MAIL: I caused the document(s) to be filed electronically via ECF. I did not receive a notification that the electronic transmission was unsuccessful.**

Executed on **July 1, 2025**

**/s/ Kaylah Bozman**

Kaylah Bozman

*PHILLIP BELL JR. v. SADDLEBACK VALLEY UNIFIED SCHOOL DISTRICT, et al. – SAC*