ILLOVSKY GATES & CALIA LLP
Kevin Calia (State Bar No. 227406)
kevin@illovskygates.com
Eva Schueller (State Bar No. 237886)
eschueller@illovskygates.com
1611 Telegraph Ave., Ste. 806
Oakland, CA 94612
Telephone: (415) 500-6640

*Attorneys for Defendants*
*Steve Briscoe and*
*Next Level Sports & Academics Foundation*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

|  |  |
|---|---|
| PHILLIP BELL JR.; LORNA BARNES; and ANTHONY BARNES. <br><br> Plaintiffs. <br><br> v. <br><br> SADDLEBACK VALLEY UNIFIED SCHOOL DISTRICT; CALIFORNIA INTERSCHOLASTIC FEDERATION; NEXT LEVEL SPORTS & ACADEMICS; and ISAHIA SANDOVAL; EDWARD WONG; TRICIA OSBORNE; CHAD JOHNSON; STEVE BRISCOE; SAREENA CHOW; AND DOES 1-20 in their individual and official capacities. <br><br> Defendants. | Case No. 4:24-cv-05545-JST <br><br> **NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) BY DEFENDANTS STEVE BRISCOE AND NEXT LEVEL SPORTS & ACADEMICS FOUNDATION** <br><br> Date:   September 11, 2025 <br> Time:   2:00 p.m. <br> Ctrm:  6 <br> Judge:  Hon. Jon S. Tigar |

## NOTICE OF MOTION

**TO THE HONORABLE COURT AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on September 11, 2025 at 2:00 P.M., or as soon thereafter as the matter may be heard in Courtroom 6 of the above-entitled Court, located at 1301 Clay Street, 2nd Floor, Oakland, California 94612, Defendants Steve Briscoe and Next Level Sport & Academics Foundation ("Next Level") will and hereby do move this Court for an order dismissing the Second Amended Complaint filed by Plaintiffs Phillip Bell Jr., Lorna Barnes, and Anthony Barnes (collectively, "Plaintiffs") as against Briscoe and Next Level, without leave to amend, for failure to state a claim pursuant to Federal Rule of Civil Procedure Rules 12(b)(6) (the "Motion").

This Motion is brought on the grounds that Plaintiffs have not, and cannot, plead a viable claim against Briscoe or Next Level for Negligence (third cause of action), Negligent Infliction of Emotional Distress (sixth cause of action), Intentional Infliction of Emotional Distress (seventh cause of action), Unjust Enrichment (eighth cause of action), or Civil Rights Conspiracy (the improperly added tenth cause of action).

This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, all pleadings and files in this matter, and such further oral or documentary evidence as may be presented to the Court at, or prior to, the hearing on this Motion.

Dated: July 15, 2025

By: _/s/Kevin Calia_____
     Kevin Calia

ILLOVSKY GATES & CALIA LLP
Kevin Calia (State Bar No. 227406)
kevin@illovskygates.com
Eva Schueller (State Bar No. 237886)
eschueller@illovskygates.com
1611 Telegraph Ave., Ste. 806
Oakland, CA 94612
Telephone: (415) 500-6640

*Attorneys for Defendants Steve Briscoe and*
*Next Level Sports & Academics Foundation*

**TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................................................1

II.  RELEVANT FACTUAL BACKGROUND.................................................................3

III.  ARGUMENT ....................................................................................................7

    A.  STANDARDS ON A MOTION TO DISMISS.................................................7

    B.  PLAINTIFFS' NEGLIGENCE CLAIM AGAINST BRISCOE AND NEXT LEVEL
        SHOULD BE DISMISSED ..........................................................................8

        1.  Neither Briscoe Nor Next Level Owed Plaintiffs A Duty of Care ...............10

        2.  Neither Briscoe Nor Next Level Engaged In Any Conduct That Breached Any Duty
            Owed to Plaintiffs ..........................................................................12

        3.  Plaintiffs Fail to Allege Facts Showing that Briscoe or Next Level Caused Them Any
            Harm ............................................................................................13

    C.  PLAINTIFFS' NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS CLAIM
        AGAINST BRISCOE AND NEXT LEVEL SHOULD BE DISMISSED..................14

    D.  PLAINTIFFS' INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM
        AGAINST BRISCOE AND NEXT LEVEL SHOULD BE DISMISSED..................14

    E.  PLAINTIFFS' UNJUST ENRICHMENT CLAIM AGAINST BRISCOE AND NEXT
        LEVEL SHOULD BE DISMISSED ............................................................16

    F.  PLAINTIFFS' CIVIL RIGHTS CONCPIRACY CLAIM AGAINST BRISCOE AND
        NEXT LEVEL SHOULD BE DISMISSED.....................................................17

IV.  CONCLUSION................................................................................................21

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)..........................................................................................8

*Astiana v. Hain Celestial Grp., Inc.,*
   783 F.3d 753 (9th Cir. 2015) ........................................................................17

*Ballard v. Uribe,*
   41 Cal. 3d 564 (1986) ...................................................................................10

*Bashkin v. Hickman,*
   No. 07cv0995–LAB(CAB), 2008 WL 183696, at *2 (S.D. Cal. Jan. 17, 2008) ...........................18

*Belen v. Ryan Seacrest Prods., LLC,*
   65 Cal. App 5th 1145 (2021) ........................................................................14

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007)........................................................................................8

*Bily v. Arthur Young & Co.,*
   3 Cal. 4th 370 (1992) ...................................................................................10

*Burns v. County of King,*
   883 F.2d 819, 821 (9th Cir. 1989) .........................................................18, 19

*Burns v. Neiman Marcus Group, Inc.,*
   173 Cal. App. 4th 479 (2009) ......................................................................10

*Cabral v. Ralphs Grocery Co.,*
   51 Cal. 4th 764 (2011) .................................................................................10

*Cahill v. Liberty Mut. Ins. Co.,*
   80 F.3d 336 (9th Cir. 1996) ...........................................................................7

*Carlsen v. Koivumaki,*
   227 Cal. App. 4th 879 (2014) ......................................................................15

*Christensen v. Super. Ct.,*
   54 Cal. 3d 868 (1991) ..................................................................................16

*Collins v. Womancare,*
   878 F.2d 1145, 1151 (9th Cir. 1989) ...........................................................19

*Corales v. Bennett,*
   567 F.3d 554 (9th Cir. 2009) ...................................................................8, 12

*County of San Bernardino v. Walsh*
    158. Cal. App 4th 533 ...................................................................................................17

*Crouch v. Trinity Christian Ctr. of Santa Ana, Inc.,*
    39 Cal. App. 5th 995 (2019) .......................................................................................15

*Dryden v. Tri-Valley Growers,*
    65 Cal. App. 3d 990 (1977) ........................................................................................10

*ESG, Cap. Partners, LP v. Stratos,*
    828 F.3d 1023 (9th Cir. 2016) ....................................................................................16

*Faulks v. Wells Fargo & Company,*
    231 F. Supp. 3d 387 (N.D. Cal. 2017) .......................................................................10

*Garcia v. Grimm,*
    No. 1:06–cv–225–WQH (PCL), 2011 WL 817426, at *9 (S.D.Cal. Mar. 2, 2011) .....18

*Gardner v. Martino,*
    563 F.3d 981 (9th Cir. 2009) ........................................................................................8

*Gilbrook v. City of Westminster,*
    177 F.3d 839, 856–57 (9th Cir. 1999) ........................................................................18

*Hartford Casualty Ins. Co. v. J.R. Marketing, L.L.C.,*
    61 Cal. 4th 988 (2015) ...............................................................................................16

*Hassman v. Rabbinical Assembly of America,*
    2016 WL 6635622 (C.D. Cal. Nov. 9, 2016) .............................................................16

*Hegyes v. Unjian Enterprises, Inc.,*
    234 Cal. App. 3d 1103 (1991) ....................................................................................10

*Hudacko v. Regents of University of California,*
    2024 WL 3908113 (N.D. Cal. Aug. 20, 2024) ...........................................................11

*Inman v. Anderson,*
    294 F.Supp.3d 907 (N.D. Cal. 2018) .........................................................................19

*Ivey v. Board of Regents of the Univ. of Alaska,*
    673 F.2d 266, 268 (9th Cir. 1982) ..............................................................................18

*Johnson v. Knowles,*
    113 F.3d 1114 (9th Cir. 1997) ....................................................................................19

*Jones v. Grewe,*
    189 Cal. App. 3d 950 (1987) ......................................................................................10

DEFENDANTS STEVE BRISCOE AND NEXT LEVEL'S MOTION TO DISMISS
Case No.: 4:24-cv-05545-JST

*Kassa v. BP W. Coast Prods., LLC,*
  2008 WL 3494677 (N.D. Cal. Aug. 12, 2008) ................................................................15

*King v. Facebook, Inc.,*
  572 F. Supp. 3d 776 (N.D. Cal. 2021) ............................................................................14

*Lopez v. Smith,*
  203 F.3d 1122 (9th Cir. 2000) ..........................................................................................8

*Margolis v. Ryan,*
  140 F.3d 850, 853 (9th Cir. 1998) ..................................................................................18

*McGarry v. Sax,*
  158 Cal. App. 4th 983 (2008) ....................................................................................8, 12

*McNaboe v. Safeway Inc.,*
  2016 WL 80553 (N.D. Cal. Jan. 7, 2016) .......................................................................15

*Meyer v. County of San Diego,*
  2021 WL 4924836 (S.D. Cal. Oct. 21, 2021) .................................................................16

*Miller v. California,*
  355 F.3d 1172, 1177 n. 3 (9th Cir. 2004) .......................................................................18

*Navarro v. Block,*
  250 F.3d 729 (9th Cir. 2001) ............................................................................................8

*Nibbi Bros., Inc. v. Home Fed. Sav. & Loan Ass'n,*
  205 Cal. App. 3d 1415 (1988) ........................................................................................17

*Ortega v. Kmart Corp.,*
  26 Cal. 4th 1200 (2001) ..................................................................................................13

*Ostrer v. Aronwald,*
  567 F.2d 551, 553 (2d Cir. 1977).....................................................................................18

*Quelimane Co. v. Stewart Title Guaranty Co.,*
  19 Cal. 4th 26 (1998) ......................................................................................................10

*Regents of Univ. of Cal. v. LTI Flexible Prods., Inc.,*
  2021 WL 4133869 (N.D. Cal. Sept. 10, 2021) ...............................................................17

*Rowland v. Christian,*
  69 Cal. 2d 108 (1968) ...............................................................................................10, 11

*Russell v. Walmart, Inc.,*
  680 F. Supp. 3d 1130 (N.D. Cal. 2023) .....................................................................16, 17

*Shirazi v. Oweis*,
   No. 5:21-cv-00136-EJD, 2022 WL 445763 (N.D. Cal. Feb. 14, 2022)......................................18, 19

*T.H. v. Novartis Pharm. Corp.*,
   4 Cal. 5th 145 (2017) ...........................................................................................................................10

*Union Pacific Railroad Company v. Superior Court of Madera County*,
   105 Cal. App. 5th 838 (2024) ..............................................................................................................11

*United Steelworkers of Am. v. Phelps Dodge Corp.*,
   865 F.2d 1539, 1541 (9th Cir. 1989) ...................................................................................................18

*Vasilenko v. Grace Family Church*,
   3 Cal. 5th 1077 (2017) .................................................................................................................11, 12

*Wise v. Superior Court*,
   222 Cal. App. 3d 1008 (1990) .............................................................................................................11

*Woodrum v. Woodward County*,
   866 F.2d 1121, 1126 (9th Cir. 1989) ...................................................................................................18

*Yurick v. Superior Court*,
   209 Cal. App. 3d 1116 (1989) .............................................................................................................15

**Statutes**

Cal. Civ. Code § 1714(a) ...........................................................................................................................10

**Other Authorities**

55 Cal. Jur. 3d Restitution § 2 (2015) ................................................................................................16, 17

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This is a child custody dispute reimagined as a federal civil rights lawsuit.  Not only that, but the child in dispute (Phillip Bell III or Phillip III) turned 18 in August 2024, approximately two months after his mother's death.

The Court ruled that a prior version of the complaint failed to state a claim against Steve Briscoe or his nonprofit corporation (Next Level Sports & Academics Foundation).  (ECF. No. 85.) Despite allegations in the prior complaint that Briscoe "intentionally interfered with Plaintiffs' custodial rights" by making alleged "affirmative misrepresentations" and having "direct involvement in separating Phillip III from his biological family," the Court ruled that the allegations were "not sufficient to plausibly show the existence of a duty owed to Plaintiffs, a breach of any such duty, or that any such breach was a substantial factor in causing any damage to Plaintiffs."  (ECF No. 85 at 15-16.)  This was because "Briscoe's relationship was with Phillip III—not Plaintiffs."  (*Id.* at 16.) Because Briscoe and Next Level "lacked any relationship with Plaintiffs," the Court ruled that "Briscoe did not engage in any actionable wrongs by refusing to communicate with Plaintiffs or by simply testifying against Bell Jr. at Phillip III's custody hearing."  (*Id.*)  Moreover, the Court ruled that Plaintiffs did not "plausibly allege that the school district relied on any [statement that Briscoe was Phillip III's "uncle"] in allowing Phillip III to attend Mission Viejo during his senior year."  (*Id.*) There were two main reasons the school district did not rely on any alleged statement by Briscoe in deciding to enroll Phillip III for his senior year.  First, Plaintiffs had provided the district with a copy of the family court order showing that Bell Jr. was the only legal guardian of Phillip III.  (*Id.*) Second, Briscoe lived in Antioch, California—400 miles away from Mission Viejo—such that his status as an "uncle" or an "emergency contact" would not be relevant to Phillip III's enrollment at Mission Viejo.  (*Id.*)

The Second Amended Complaint (ECF No. 86, "SAC") does not change any of that.  It makes all the same allegations and asserts all the same claims.  As relevant to Briscoe and Next Level, the SAC alleges very few facts beyond those that were already found to be insufficient in the prior complaint.  The key change is that the SAC now alleges that Briscoe travelled to Southern California

when he learned that Phillip III's mother had died and, for some unspecified time on that day, was present at the house where Phillip III was staying. (SAC, ¶¶ 81-86.) The SAC does not allege any interactions between Briscoe and any Plaintiff during that trip. Like before, the SAC alleges that it was Phillip III's step-father Isaiah Sandoval, not Briscoe, who supposedly "coerced" Phillip III not to open the door for his father. (SAC, ¶ 84.) But this time, the SAC makes the conclusory allegation that Sandoval was "following the plan developed between" Sandoval, Briscoe, and Chad Johnson, the head football coach for Mission Viejo. (SAC, ¶ 84.) The SAC also makes conclusory allegations that Briscoe "traveled to Los Angeles specifically to interfere" with Bell Jr.'s custodial rights and that Briscoe somehow "pressured" Phillip III not to speak to his father. (SAC, ¶¶ 85-86.)

      Even assuming these allegations were true, as the Court must do for now, the minimal and conclusory additions to the SAC about Briscoe are not enough to create a duty between Briscoe and Plaintiffs, to show a breach of any such duty, or to show that Briscoe's alleged conduct was the cause of any interference in the relationship between Phillip III and his biological father. The SAC still does not allege any connection between Briscoe and the house where Phillip III was staying and it still doesn't allege any details about how Briscoe supposedly pressured Phillip III. The centerpiece of the SAC's new allegations against Briscoe is an apparently surreptitious (and thus, in California, illegal) recording of Mission Viejo football coach Chad Johnson on Mission Viejo's campus, while Phillip III was nearby. Read in context, that recording doesn't support Plaintiffs' claims or show any wrongdoing by Briscoe. For one thing, the recording says that Phillip III had been staying at the same place where Briscoe visited him since before his mother died. (SAC, Ex. E at 49:21-50:6.) It also says that "police officers" came to that location, talked with Phillip III, and ultimately refused to force Phillip III to go with his biological father because he was "going to be 18 in a couple weeks anyway." (*Id.* at 3:24-4:3.) It also indicates that Phillip III told his football coach that he did not want to go with, or even talk with, his biological father. (*Id.* at 48:11-49:6.) Plaintiffs essentially ask the Court to impose a duty on Briscoe to do what the police refused to do—force Phillip III to go with his father. The law does not impose on Briscoe a duty to force Phillip III to comply with the family court order.

1    Plaintiffs also ignored the Court's order that leave to amend was granted "solely to cure the

2    deficiencies identified" in the Court's order.  (ECF No. 85 at 22.)  In contravention of those

3    instructions, Plaintiffs added a new claim for "civil rights conspiracy" and a new defendant—

4    "Sareena" or "Serena" Chow (who Phillip III allegedly lived with at unspecified times before turning

5    18), along with a conclusory allegation that Ms. Chow "was an agent" of Briscoe, Next Level and

6    others. (SAC, ¶ 22.)  If the Court considers these improper additions, the Court should dismiss the

7    civil right conspiracy claim for failure to state a claim against Briscoe or Next Level.

8    In short, the Court should dismiss all of the claims asserted against Briscoe and Next Level

9    for failure to state a claim, and, this time, the Court should deny leave to amend the complaint.

10   **II.    RELEVANT FACTUAL BACKGROUND**

11   Plaintiffs filed their original complaint on August 20, 2024, and then filed their First

12   Amended Complaint on November 22, 2024.  (*See* ECF Nos. 1, 27.)  The Court dismissed the claims

13   asserted against Briscoe and Next Level in the First Amended Complaint and granted Plaintiffs leave

14   to amend "solely to cure the deficiencies identified" in the Court's order.  (ECF No. 85 at 22.)

15   On July 1, 2025, Plaintiffs filed the Second Amended Complaint.  (ECF. No. 86.)  This

16   background section is drawn from the allegations of the operative Second Amended Complaint,

17   which, as relevant to Briscoe and Next Level, repeat the allegations of the prior complaint with minor

18   additions.  Plaintiffs are the biological father and maternal grandparents of a young, talented former

19   high school football player named Phillip Bell III.  The defendants who bring this motion to dismiss

20   are Steve Briscoe and his nonprofit Next Level Sports & Academics Foundation.  All allegations

21   against Next Level are based on the alleged conduct of Briscoe, which the SAC sometimes misspells.

22   Plaintiffs allege that Briscoe was "one of Phillip III's trainers" and that he ran a "Football Mentoring

23   program" called Next Level from his home in Antioch, California.  (*See* SAC, ECF No. 86, ¶¶ 16-17,

24   42.)

25   Plaintiffs allege that, after Phillip III's athletic talents attracted the attention of various

26   coaches and scouts throughout California, Phillip III and his mother (Samantha Barnes) and step-

27   father (Isaiah Sandoval) "abruptly moved" from Sacramento to Los Angeles before Phillip III's

28   junior year of high school.  (SAC, ¶ 45.)  Plaintiffs say that Sandoval "brokered a deal" with Briscoe

that facilitated Phillip III playing football at Bishop Alemany High School.  (SAC, ¶ 42.)  They claim that Briscoe and Next Level received unspecified "compensation for this transaction."  (SAC, ¶ 44.)  They allege that the move to Southern California violated a "custody agreement."  (SAC, ¶¶ 37, 43, 45.)  They describe the agreement as a "court-ordered agreement" to "share 50/50 custody" of Phillip III (SAC, ¶ 37), but attach a copy of a "Stipulation and Order for Custody and/or Visitation of Children" dating back to 2015, which states that Phillip III's biological father would have visitation on "alternate weekends" from Saturday at 10:00 a.m. until Sunday at 6:00 p.m. and certain specific holidays.  (ECF No. 86-1 at 3, 5.)  They allege, without further explanation, that Briscoe knew that Phillip III's mother's decision to move to Southern California "would violate the shared custody agreement between" Phillip III's mother and biological father.  (SAC, ¶ 43.)

After "an unsuitable month at Bishop Alemany," Plaintiffs allege that Phillip III and his mother and step-father "moved again" and enrolled Phillip III at Mission Viejo High School.  (SAC, ¶ 48.)  They do not allege that Briscoe or Next Level had any role in the decision to switch from Bishop Alemany to Mission Viejo.  They do not allege that another "deal" or "transaction" was "brokered" at this time, and they do not allege that Briscoe or Next Level received compensation of any kind in connection with the decision to move again or to switch schools from Bishop Alemany to Mission Viejo.

Plaintiffs allege they were unhappy about the move to Southern California and the later decision to attend a non-Catholic high school.  (SAC, ¶¶ 49-50.)  They also allege that there were family problems between Phillip III and his mother and step-father that led them to believe Phillip III was in distress and to initiate family court proceedings seeking a family court order that Phillip III should return to Sacramento and attend his former high school.  (SAC, ¶¶ 51-58.)  Those proceedings led to a November 20, 2023 court order, which is attached as an exhibit to the SAC and which directed Phillip III to return to Sacramento and his former school.  (ECF No. 86-4; SAC, ¶ 60.)

The only alleged connection between Briscoe or Next Level and this family dispute is that Briscoe testified "against" Phillip III's biological father during the course of the proceedings.  (SAC, ¶ 59.)  There is no allegation regarding the content of Briscoe's testimony or any suggestion that his

1  testimony was not given truthfully and under oath in response to questions from the court and the

2  parties or their counsel.

3       Plaintiffs claim that despite a court order requiring Phillip III to be returned to Sacramento,

4  Phillip III's mother and step-father ignored the order and kept Phillip III from Plaintiffs in Los

5  Angeles and prevented him from contacting Plaintiffs.  (SAC, ¶¶ 61-64.)

6       Phillip III's mother died on or about Thursday, June 27, 2024, in Las Vegas, Nevada while on

7  vacation with Sandoval.  (SAC, ¶¶ 69-77, 81.)  Plaintiffs allege that Phillip III, who was

8  approximately two months away from turning 18 (according to the exhibits attached to the SAC), was

9  then "harbored" in Southern California so that he could continue to attend Mission Viejo.  (SAC, ¶¶

10  78-93; ECF No. 86-1 at 2 (listing Phillip III's birthdate); ECF No. 86-4 at 2 (same).)  They also now

11  allege that Briscoe travelled to Southern California when he learned that Phillip III's mother had died

12  and, for some unspecified time on that day, was present at the house where Phillip III was staying.

13  (SAC, ¶¶ 81-86.)  The SAC does not allege any interactions between Briscoe and any of the Plaintiffs

14  during that trip.  Like before, the SAC alleges that it was Sandoval, not Briscoe, who supposedly

15  "coerced" Phillip III not to open the door for his father.  (SAC, ¶ 84.)  But this time, the SAC makes

16  the conclusory allegation that Sandoval was "following the plan developed between" Sandoval,

17  Briscoe, and Chad Johnson, the head football coach for Mission Viejo.  (SAC, ¶ 84.)  The SAC also

18  makes conclusory allegations that Briscoe "traveled to Los Angeles specifically to interfere" with

19  Bell Jr.'s custodial rights and that Briscoe somehow "pressured" Phillip III not to speak to his father.

20  (SAC, ¶¶ 85-86.)

21       As before, the SAC does not allege any connection between Briscoe and the house where

22  Phillip III was staying and it doesn't allege any details about how Briscoe supposedly pressured

23  Phillip III.  Instead, the SAC relies on a secret recording of Chad Johnson made on Mission Viejo's

24  campus, while Phillip III was nearby. Read in context, that recording doesn't support Plaintiffs'

25  claims or show any wrongdoing by Briscoe.  For one thing, it says that Phillip III had been staying at

26  the same place since before his mother died and that Briscoe had been listed as an "emergency

27  contact" since before Phillip III's mother died.  (ECF No. 86-5 at 49:21-50:6; 51:11-20.)  It also says

28  that "police officers" came to that location, talked to Phillip III, and ultimately refused to force

Phillip III to go with his biological father because he was "going to be 18 in a couple weeks anyway." (*Id.* at 3:24-4:3.)  It also indicates that Phillip III told his football coach that he did not want to go with, or even talk with, his biological father.  (*Id.* at 48:11-49:6.)

Despite the lack of factual allegations connecting Briscoe (who lived in Northern California) to the place or places where Phillip III was staying in Southern California, Plaintiffs allege generally that all "DEFENDANTS were determined to keep Phillip III shielded from [Plaintiffs] and kept Phillip III's whereabouts a closely guarded secret."  (SAC, ¶ 89.)  Yet, Plaintiffs also allege that they went to the house where Phillip III was staying (SAC, ¶¶ 80-81), apparently secretly recorded his football coaches on the Mission Viejo campus while demanding to see Phillip III (SAC, Ex. E), and sent "police officers" to do a wellness check where the officers succeeded in talking to Phillip III but refused to make him go with his father.  (SAC, Ex. E at 3-4.)

Within weeks after his mother's death, which occurred over the summer between his junior and senior year, Phillip III started his senior year of high school at the same school he attended his junior year – Mission Viejo High School within the Saddleback Valley United School District. (SAC, at ¶¶ 90-91.)  Plaintiffs allege that Briscoe was "listed as" a "guardian" in unspecified records of the school district or as an "emergency contact" on unspecified "official school documentation." (SAC, ¶¶ 91-92.)  Plaintiffs do not provide any details about who submitted these forms or when. Instead, they attach as an exhibit to the SAC a blank "Residency Verification Form," which says it is "[f]or continuing students who have moved or whose address has changed."  (ECF No. 86-6.) Plaintiffs do not allege that any version of this form was ever submitted in connection with Phillip III's enrollment for his senior year of high school, much less who completed the form or when. Before summer break began, Phillip III's mother and step-father were allegedly still determining where he would stay.  (SAC, ¶¶ 63-64.)  According to the exhibits attached to the SAC, by the time school started again, Phillip III was weeks away from turning 18.  (ECF No. 86-1 at 2 (listing Phillip III's birthdate); ECF No. 86-4 at 2 (same).)

Over the summer, Plaintiffs allege that the school and school district arranged for "their well to do parents" to offer Phillip III permanent housing and allowed him to participate in summer football practice, without his biological father's consent, which prompted Plaintiffs to send cease-

and-desist letters to all Defendants on July 5, 2024.  (SAC, ¶¶ 101-108.)  They claim that Briscoe and Next Level "intentionally disregarded the cease-and-desist letter" and continued unspecified "communications" with Phillip III.  (SAC, ¶¶ 105, 107-108.)  They also claim that at some unspecified time to some unspecified listener, Briscoe "fraudulently claim[ed] to be Phillip III's uncle."  (SAC, ¶¶ 92, 114.)  They say that Briscoe, Next Level, and Sandoval "made and published statements" promoting Mission Viejo as the school Phillip III should attend based on a social media post from Sandoval that makes no mention of Briscoe or Next Level.  (SAC, ¶ 111.)

Plaintiffs also complain about various football activities that Phillip III was allowed to participate in without their consent, including tournaments and a trip to Hawaii.  (SAC, ¶¶ 113, 126.)  There is no allegation connecting any of these activities to Briscoe or Next Level.

Finally, Plaintiffs make a series of general claims that lump all defendants together, alleging that "Defendants" generally or an undifferentiated list of many defendants "benefited" from Phillip III's talents, "influenced" him to continue playing football for Mission Viejo, and "knew" he needed counseling "but offered no such assistance."  (SAC, ¶¶ 127, 132-139.)  The SAC acknowledges that Phillip III had great success as a football player at Mission Viejo, winning a state championship and being recognized as the most valuable player in the championship game.  (SAC, ¶ 61.)  Yet, Plaintiffs try to paint Phillip III's success as harm to their interests because Phillip III and his mother did not make the choices that Plaintiffs prefer.  The SAC fails to provide any specifics about how the decisions made by Phillip III and his mother, whether or not "influenced" by Briscoe or Next Level, actually harmed Plaintiffs or how they resulted in any unjust benefit to Briscoe or Next Level.

## III.  ARGUMENT

### A.  STANDARDS ON A MOTION TO DISMISS

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted.  On a motion to dismiss under Rule 12(b)(6), the court construes the allegations in the complaint in the light most favorable to the non-moving party and takes as true all material allegations in the complaint.  *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-338 (9th Cir. 1996).  Even under the liberal pleading standard of Rule 8(a)(2), however, a plaintiff's obligation to provide the "'grounds' of his 'entitle[ment] to relief'

requires more than labels and conclusions," and "a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, to survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *See Iqbal*, 556 U.S. at 678.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Although the plausibility standard is "not akin to a 'probability requirement,'" it "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. Thus, "[w]hen a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557). Dismissal is proper "where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

If a Rule 12(b)(6) motion to dismiss is granted, a plaintiff will be given leave to amend unless the Court determines that the defects in the complaint cannot be cured by the allegation of additional facts. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (*en banc*); *Gardner v. Martino,* 563 F.3d 981, 990 (9th Cir. 2009) ("When a proposed amendment would be futile, there is no need to prolong the litigation by permitting further amendment.").

## B.    PLAINTIFFS' NEGLIGENCE CLAIM AGAINST BRISCOE AND NEXT LEVEL SHOULD BE DISMISSED

"Under California law, '[t]he elements of negligence are: (1) defendant's obligation to conform to a certain standard of conduct for the protection of others against unreasonable risks (duty); (2) failure to conform to that standard (breach of duty); (3) a reasonably close connection between the defendant's conduct and resulting injuries (proximate cause); and (4) actual loss (damages).'" *Corales v. Bennett*, 567 F.3d 554, 572 (9th Cir. 2009) (quoting *McGarry v. Sax*, 158 Cal. App. 4th 983, 994 (2008)). Here, Plaintiffs have not alleged and cannot allege any facts supporting this cause of action against Briscoe or Next Level.

The Court already ruled that the prior complaint's allegations (which are repeated in the SAC) were "not sufficient to plausibly show the existence of a duty owed to Plaintiffs, a breach of any such duty, or that any such breach was a substantial factor in causing any damage to Plaintiffs." (ECF No. 85 at 15-16.) This was because "Briscoe's relationship was with Phillip III—not Plaintiffs." (*Id.* at 16.) Because Briscoe and Next Level "lacked any relationship with Plaintiffs," the Court ruled that "Briscoe did not engage in any actionable wrongs by refusing to communicate with Plaintiffs or by simply testifying against Bell Jr. at Phillip III's custody hearing." (*Id.*) Moreover, the Court ruled that Plaintiffs did not "plausibly allege that the school district relied on any [statement that Briscoe was Phillip III's "uncle"] in allowing Phillip III to attend Mission Viejo during his senior year." (*Id.*) There were two main reasons the school district did not rely on any alleged statement by Briscoe in deciding to enroll Phillip III for his senior year. First, Plaintiffs had provided the district with a copy of the family court order showing that Bell Jr. was the only legal guardian of Phillip III. (*Id.*) Second, Briscoe lived in Antioch, California—400 miles away from Mission Viejo—such that his status as an "uncle" or an "emergency contact" would not be relevant to Phillip III's enrollment at Mission Viejo. (*Id.*)

The few additional allegations in the SAC that relate to Briscoe or Next Level do not change the analysis. The thrust of the new allegations in the SAC is that Briscoe, and many others, traveled to visit Phillip III when they learned that his mother had died. (SAC, ¶¶ 78-84.) The SAC does not allege any interactions between Briscoe and any Plaintiff during that trip. Like before, the SAC alleges that it was Phillip III's step-father Isaiah Sandoval, not Briscoe, who supposedly "coerced" Phillip III not to open the door for his father. (SAC, ¶ 84.) But this time, the SAC makes the conclusory allegation that Sandoval was "following the plan developed between" Sandoval, Briscoe, and Chad Johnson, the head football coach for Mission Viejo. (SAC, ¶ 84.) These minimal and conclusory additions are not enough to create a duty between Briscoe and Plaintiffs, to plausibly show a breach of any such duty, or to show that Briscoe's alleged conduct was the cause of any interference in the relationship between Phillip III and his biological father.

### 1.    *Neither Briscoe Nor Next Level Owed Plaintiffs A Duty of Care*

"The threshold element of a cause of action for negligence is the existence of a duty to use due care toward an interest of another that enjoys legal protection against unintentional invasion." *Quelimane Co. v. Stewart Title Guaranty Co.*, 19 Cal. 4th 26, 57 (1998); *see also Faulks v. Wells Fargo & Company*, 231 F. Supp. 3d 387, 408 (N.D. Cal. 2017) ("Existence of a duty of care owed by a defendant to a plaintiff is a prerequisite to establish a claim for negligence" under California law.  "Whether this essential prerequisite to a negligence cause of action has been satisfied in a particular case is a question of law to be resolved by the court." *Quelimane Co.*, 19 Cal. 4th at 57; *see also Ballard v. Uribe*, 41 Cal. 3d 564, 572 & n.6 (1986) ("The existence of a duty of care is a question of law.")  A complaint that lacks factual allegations showing that defendants owed a legal duty of care to plaintiffs should be dismissed.  *Hegyes v. Unjian Enterprises, Inc.*, 234 Cal. App. 3d 1103, 1111 (1991); *Jones v. Grewe*, 189 Cal. App. 3d 950, 954 (1987).

California law establishes the general duty of each person to exercise, in his or her activities, reasonable care for the safety of others.  Cal. Civ. Code § 1714(a); *Cabral v. Ralphs Grocery Co.*, 51 Cal. 4th 764, 768 (2011) (citing Cal. Civ. Code § 1714(a)); *T.H. v. Novartis Pharm. Corp.*, 4 Cal. 5th 145, 163 (2017) (same).  No actionable wrong is committed where defendant's conduct consists of something which he had an absolute right to do.  *Dryden v. Tri-Valley Growers*, 65 Cal. App. 3d 990, 996 (1977).  Courts use the "concept of duty to limit generally the otherwise potentially infinite liability which would follow from every negligent act." *Bily v. Arthur Young & Co.*, 3 Cal. 4th 370, 397 (1992).  Notably, "California courts have explicitly rejected the concept of universal duty." *Burns v. Neiman Marcus Group, Inc.*, 173 Cal. App. 4th 479, 487 (2009).

To determine whether a duty exists, courts in California consider the following factors, known as the "*Rowland* factors":

> the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.

*Rowland v. Christian*, 69 Cal. 2d 108, 113 (1968).  Social policy must at some point intervene to delimit negligence liability even for foreseeable injury.  *Union Pacific Railroad Company v. Superior*

*Court of Madera County*, 105 Cal. App. 5th 838, 858 (2024).  Importantly, there is generally no duty to control the conduct of a third person to prevent him from causing harm to another, absent a special relationship between defendant and either person whose conduct needs to be controlled or the foreseeable victim of that conduct.  *Wise v. Superior Court*, 222 Cal. App. 3d 1008, 1013 (1990).

In particular, the facts of *Hudacko v. Regents of University of California*, 2024 WL 3908113 (N.D. Cal. Aug. 20, 2024) are informative here.  In *Hudacko*, the parents of a minor were embroiled in a custody dispute regarding their minor child, with the central issue being whether the minor would be allowed to seek gender reassignment treatment.  *Id*. at *1.  This issue was addressed in a custody order that allowed the mother to seek certain treatment without the father's consent and prohibited certain other treatment before the minor turned 18.  *Id.* at *1-2.  A further dispute arose about whether a procedure performed on the minor was permitted or prohibited and the father sued a wide variety of third parties—doctors and hospitals and attorneys who knew of the custody order and had been involved in the decision to perform the disputed procedure—for tort claims, including negligence-based claims.  *Id.* at *2.  The father asserted that these defendants owed him a duty of care to refrain from conduct which allegedly violated the custody order without his consent.  *Id*. at *16.  The court, however, found that these defendants did not owe any duty to the father, "who was not their client, nor [a] third party in a transaction that was intended to benefit him."  *Id.*

The same reasoning can be applied here.  Plaintiffs allege that Briscoe and Next Level owed Plaintiffs "a duty to use reasonable care while engaging with [Plaintiffs'] minor child."  (SAC, ¶ 160.)  As such, Plaintiffs are alleging that Briscoe and Next Level owed them a direct duty of care, as opposed to a duty of care to Phillip III.  Briscoe giving advice to Phillip III and his mother about Phillip III playing football in high school and college, however, could not create a duty of care owed to Plaintiffs or any special relationship between Plaintiffs and Briscoe or Next Level.  An application of the *Rowland* factors to this case results in the same conclusion because they simply do not apply to the facts here.  Plaintiffs' vague, generalized assertions of "facts" are insufficient to confer a legal duty on Briscoe or Next Level under the *Rowland* factors such that "carving out an entire category of cases from [the] general duty rule is justified by clear considerations of policy."  *Vasilenko v. Grace Family Church*, 3 Cal. 5th 1077, 1083 (2017) (internal quotations omitted).

DEFENDANTS STEVE BRISCOE AND NEXT LEVEL'S MOTION TO DISMISS
Case No.: 4:24-cv-05545-JST

1    In particular, Phillip III and his parents are not the only family to have a dispute over a child

2  custody issue involving where a child should live or what school a child should attend.  We have

3  family law courts and law enforcement professionals and complex systems to resolve such disputes.

4  Phillip III's mother was a party to the family court proceedings and orders.  (SAC, ¶ 60.)  Briscoe

5  was a mere witness who gave testimony during the proceedings.  (SAC, ¶ 59.)  He had no duty to

6  attempt to force Phillip III or his mother to comply with any order or to refrain from giving advice

7  about the pros and cons of playing football at different high schools or colleges based on mere

8  knowledge of the court order.  Public policy strongly weighs against imposing liability on every third

9  party who is aware of a custody order to take it upon themselves to enforce the order (or influence

10  others to comply with the order) on pain of being sued for tort claims if they are unable or unwilling

11  to coerce independent actors to comply with the order.  Enforcing such family court orders is better

12  left to the well-developed systems for seeking a contempt ruling or seeking aid from trained law

13  enforcement professionals.  Accordingly, the Court should rule, as a matter of law, that neither

14  Briscoe nor Next Level owed any duty of care to Plaintiffs and dismiss their negligence-based claims

15  against Briscoe and Next Level with prejudice.

16          **2.      *Neither Briscoe Nor Next Level Engaged In Any Conduct That Breached
17                     Any Duty Owed to Plaintiffs***

18          To state a claim for negligence, a plaintiff must also state facts showing the defendant failed

19  to conform to a certain standard of conduct for the protection of others against unreasonable risks

20  (i.e., that the defendant breached a duty owed to the plaintiff).  *Corales*, 567 F.3d at

21  572 (quoting *McGarry v. Sax*, 158 Cal. App. 4th 983, 994 (2008)).  Here, there are no factual

22  allegations showing that either Briscoe or Next Level breached any duty to Plaintiffs.  Plaintiffs'

23  allegations against Briscoe and Next Level are limited to broadly alleging that an undifferentiated list

24  of many defendants, including Briscoe and Next Level, breached a supposed duty by "developing and

25  implementing a plan to harbor" Phillip III, "failing to comply with the court order" to which they

26  were not parties, "concealing" Phillip III's whereabouts, "allowing" Phillip III "to participate in

27  football" without Plaintiffs consent, failing to keep Plaintiffs' informed about Phillip III, advising

28

1    Phillip III to "violate a court order," or influencing Phillip III to play football for Mission Viejo

2    against Plaintiffs' wishes.  (SAC, ¶¶ 161-162.)

3         None of those generalized and conclusory allegations explains how either Briscoe or Next

4    Level specifically had any relationship with Plaintiffs or how their specific actions failed to conform

5    to some standard of conduct necessary to protect Plaintiffs.  Plaintiffs' laundry list of generalized

6    allegations appears to concede that there was no breach during the period before Phillip III's mother

7    died, when it was her responsibility to care for Phillip III and to work out any custody issues through

8    the family court process.  During the brief period between the death of Phillip III's mother and him

9    reaching the age of majority, there are no allegations of any relationship or interactions between

10   Plaintiffs and Briscoe or Next Level, including during the one trip to Southern California by Briscoe

11   that is alleged in the SAC.  (SAC, ¶¶ 81-86.)  At most, Plaintiffs' attorney sent Briscoe and Next

12   Level a "cease-and-desist" letter, and Plaintiffs are offended that Briscoe and Next Level supposedly

13   ignored the letter.  (SAC, ¶¶ 105, 107-108.)  A party cannot create a duty, or manufacture a breach,

14   by having their lawyer send a letter to a stranger.  Plaintiff's negligence claim against Briscoe and

15   Next Level should be dismissed for failure to allege facts plausibly showing a breach of any duty to

16   Plaintiffs.

17        **3.    _Plaintiffs Fail to Allege Facts Showing that Briscoe or Next Level Caused_**

18             **_Them Any Harm_**

19        A plaintiff must also demonstrate causation for purposes of a negligence claim by showing

20   that "the defendant's breach of its duty to exercise ordinary care was a substantial factor in bringing

21   about the plaintiff's harm."  _Ortega v. Kmart Corp._, 26 Cal. 4th 1200, 1205 (2001).

22        The Court's order dismissing the prior complaint focused on this causation element.  (ECF

23   No. 85 at 16.)  The Court ruled that it was implausible that Briscoe's alleged actions were the

24   proximate cause of Plaintiffs' alleged injuries both because the school district knew about the family

25   law custody order and because Briscoe lived 400 miles away in Northern California.  (_Id._)  The SAC

26   does nothing to address these deficiencies.  Instead, it alleges a single trip to Southern California by

27   Briscoe to visit Phillip III after his mother died and speculates that a "plan" must have been hatched

28   simply because Briscoe, Sandoval, and Johnson were all present at the house where Phillip III was

1   staying for some unspecified period.  Such conclusory statements without any supporting facts

2   against either Briscoe or Next Level do not meet the well-established standard required to survive a

3   motion to dismiss.  Thus, even assuming that Plaintiffs have adequately pled each of the other

4   negligence elements (they have not), the SAC does not allege sufficient facts to show that either

5   Briscoe's or Next Level's conduct was a substantial factor in bringing about Plaintiffs' alleged harm.

6   ## C.   PLAINTIFFS' NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
        CLAIM AGAINST BRISCOE AND NEXT LEVEL SHOULD BE
7       DISMISSED

8           As for Plaintiffs' claim for negligent infliction of emotional distress, there is no such

9   "'independent tort'"; rather, the claim is simply one of "'negligence to which the traditional elements

10  of duty, breach of duty, causation, and damages apply.'"  *King v. Facebook, Inc.*, 572 F. Supp. 3d

11  776, 785 (N.D. Cal. 2021) (quoting *Belen v. Ryan Seacrest Prods., LLC*, 65 Cal. App 5th 1145, 1165

12  (2021).  The Court told Plaintiffs this in its order (ECF No. 85 at 12), but Plaintiffs do not make any

13  change to the SAC in response.  Because Plaintiffs have failed to allege sufficient facts to establish a

14  claim for negligence, and because Plaintiffs cannot allege facts that would satisfy the elements of a

15  negligence claim as against Briscoe or Next Level, Plaintiff's claim for negligent infliction of

16  emotional distress should be dismissed without leave to amend.

17  ## D.   PLAINTIFFS' INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
        CLAIM AGAINST BRISCOE AND NEXT LEVEL SHOULD BE
18      DISMISSED

19

20          Plaintiff's claim for intentional infliction of emotional distress should be dismissed because

21  Plaintiffs failed to allege (and cannot allege) that either Briscoe's or Next Level's conduct was

22  extreme and outrageous.  The elements of a claim for intentional infliction of emotional distress are:

23              (1) extreme and outrageous conduct by the defendant with the intention
                of causing, or reckless disregard of the probability of causing, emotional
24              distress; (2) the plaintiff's suffering severe or extreme emotional distress;
                and (3) actual and proximate causation of the emotional distress by the
25              defendant's outrageous conduct.... Conduct to be outrageous must be so
                extreme as to exceed all bounds of that usually tolerated in a civilized
26              community. The defendant must have engaged in conduct intended to
                inflict injury or engaged in with the realization that injury will result.
27

28

*Carlsen v. Koivumaki*, 227 Cal. App. 4th 879, 896 (2014) (cleaned up). "A defendant's conduct is considered to be outrageous if it is so extreme as to exceed all bounds of that usually tolerated in a civilized community. Liability for intentional infliction of emotional distress does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Crouch v. Trinity Christian Ctr. of Santa Ana, Inc.*, 39 Cal. App. 5th 995, 1007 (2019) (cleaned up); *see, e.g.*, *McNaboe v. Safeway Inc.*, 2016 WL 80553, at *6 (N.D. Cal. Jan. 7, 2016) ("terminating an employee on the basis of unproven or false or even malicious accusations" not "outrageous"); *Kassa v. BP W. Coast Prods., LLC*, 2008 WL 3494677, at *8 (N.D. Cal. Aug. 12, 2008) ("[f]or better or worse, 'civilized community' tolerates run-of-the-mill breaches of contract; such conduct is not sufficiently 'extreme and outrageous' for a claim of intentional infliction of emotional distress"); *Yurick v. Superior Court*, 209 Cal. App. 3d 1116, 1124-25, 1129 (1989) (allegations by an employee that her supervisor repeatedly called her senile and a liar in front of coworkers was not "outrageous" as a matter of law).

In an effort plead "outrageous" conduct, Plaintiffs rely on the same generalized and conclusory list of allegations alleged against an undifferentiated group of several defendants that they assert constitute a breach of a supposed duty to them (discussed above). (*Compare* SAC, ¶ 185 *with* SAC, ¶ 161.) Because those generalized allegations are insufficient to establish a breach of any duty by Briscoe or Next Level, they certainly cannot meet the higher standard of pleading "outrageous" conduct on behalf of either Briscoe or Next Level.

The Court already ruled that these allegations do "not plausibly allege that Briscoe's alleged conduct caused the injuries alleged or was wrongful, let alone 'extreme and outrageous.'" (ECF No. 85 at 19.) The only thing that has changed is that Plaintiffs now allege that Briscoe made one trip to Southern California to visit Phillip III when his mother died, at the same location that Bell Jr. knew about and came to. (SAC, ¶¶ 79-86.) Plaintiffs do not allege any interactions with Briscoe during that trip or provide any details about what advice or "pressure" Briscoe allegedly gave to Phillip III while he was there. In any event, giving advice about where to play football in high school or college is not the type of extreme and outrageous conduct that exceeds the bounds usually tolerated in a civil society, even if Phillip III or his mother made decisions (whether based on the advice or not) that violated a child custody order. Moreover, giving Phillip III advice about where to play football is not

1  sufficient to give Plaintiffs a valid claim for intentional infliction of emotional distress because

2  Briscoe's services were not provided to Plaintiffs or intentionally directed at them.  *See Christensen*

3  *v. Super. Ct.*, 54 Cal. 3d 868, 903 (1991) ("It is not enough that the conduct be intentional and

4  outrageous.  It must be conduct directed at the plaintiff, or occur in the presence of a plaintiff of

5  whom the defendant is aware.").  Because Plaintiffs have not alleged (and cannot allege) that either

6  Briscoe or Next Level directed "outrageous" conduct at them, their claims for intentional infliction of

7  emotional distress should be dismissed without leave to amend.

8    Plaintiffs' claim also should be dismissed because Plaintiffs have not alleged facts to

9  plausibly show that they actually suffered extreme emotional distress or that any conduct by Briscoe

10  or Next Level was the proximate cause of any such distress.  An interruption of a family relationship,

11  by itself, is not enough to plausibly show that Plaintiffs actually suffered severe emotional distress

12  caused by Briscoe or Next Level.  *See Meyer v. County of San Diego*, 2021 WL 4924836, at *2, 11

13  (S.D. Cal. Oct. 21, 2021) (finding plaintiffs had not adequately alleged severity of distress even

14  though they had been removed from their minor child for many months, pending the outcome of

15  juvenile dependency proceedings, while the child was hospitalized and subjected to various tests and

16  medical procedures, including an "invasive swallow test," without their consent); *Hassman v.*

17  *Rabbinical Assembly of America*, 2016 WL 6635622, at *1, 6 (C.D. Cal. Nov. 9, 2016) (dismissing

18  claim based on alleged failure to help plaintiff challenge an allegedly invalid divorce decree that had

19  awarded sole custody to plaintiff's spouse).

20    **E.    PLAINTIFFS' UNJUST ENRICHMENT CLAIM AGAINST BRISCOE AND**
        **NEXT LEVEL SHOULD BE DISMISSED**

21

22    "To allege unjust enrichment as an independent cause of action, a plaintiff must show that a

23  defendant received and unjustly retained a benefit at the plaintiff's expense."  *Russell v. Walmart,*

24  *Inc.*, 680 F. Supp. 3d 1130, 1133 (N.D. Cal. 2023); *see also ESG*, *Cap. Partners, LP v. Stratos*, 828

25  F.3d 1023, 1038-39 (9th Cir. 2016).  "Restitution is not mandated merely because one person has

26  realized a gain at another's expense.  Rather, the obligation arises when the enrichment obtained

27  lacks any adequate legal basis and thus 'cannot conscientiously be retained.'" *Hartford Casualty Ins.*

28  *Co. v. J.R. Marketing, L.L.C.*, 61 Cal. 4th 988, 998 (2015) (quoting Restatement (Third) of

Restitution & Unjust Enrichment § 1 cmt. b (Am. L. Inst. 2011)).  Thus, restitution generally requires "that a defendant has been *unjustly* conferred a benefit 'through mistake, fraud, coercion, or request.'" *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (emphasis added) (quoting 55 Cal. Jur. 3d Restitution § 2 (2015)).  Absent a benefit conferred to the defendant because of mistake, fraud, coercion, or request by the defendant, there is no injustice.  *See Russell*, 680 F. Supp. 3d at 1133 (citing *Regents of Univ. of Cal. v. LTI Flexible Prods., Inc.*, 2021 WL 4133869, at *10 (N.D. Cal. Sept. 10, 2021) ("Under California law, '[i]t must ordinarily appear that the benefits were conferred by mistake, fraud, coercion or request; otherwise, though there is enrichment, it is not unjust.'") (quoting *Nibbi Bros., Inc. v. Home Fed. Sav. & Loan Ass'n*, 205 Cal. App. 3d 1415, 1422 (1988)).

Here, the SAC is missing any factual allegations sufficient to establish that either Briscoe or Next Level unjustly retained any benefit at Plaintiffs' expense.  Plaintiffs' allegations are limited to conclusory assertions that Briscoe and Next Level, along with several other Defendants generally, "were unjustly enriched because at the time of the benefit" Phillip III "was a minor and did not receive fair compensation" or that Defendants generally "were unjustly enriched at the expense of" Plaintiffs.  (SAC, ¶¶ 193-194.)  This type of "threadbare recital" of an element of the claim is not sufficient to satisfy the pleading standard or to survive a motion to dismiss.  Thus, the Court dismissed the prior complaint because it "failed to allege facts sufficient to show any financial benefit retained by [Briscoe or Next Level] would be unjust."  (ECF No. 85 at 21 (citing *County of San Bernardino v. Walsh*, 158 Cal. App 4th 533, 542-43 (explaining that unjust enrichment focuses "on the wrongdoer's enrichment").)  The SAC did nothing to address this deficiency.  As such, the Court should dismiss Plaintiff's eighth cause of action for unjust enrichment as against Briscoe and Next Level without leave to amend.

### F.    PLAINTIFFS' CIVIL RIGHTS CONCPIRACY CLAIM AGAINST BRISCOE AND NEXT LEVEL SHOULD BE DISMISSED

Plaintiffs also ignored the Court's instructions that leave to amend was granted "solely to cure the deficiencies identified" in the Court's order.  (ECF No. 85 at 22.)  In contravention of those instructions, Plaintiffs added a new claim for "civil rights conspiracy" and a new defendant—

"Sareena" or "Serena" Chow (who Phillip III allegedly lived with at unspecified times before turning 18), along with a conclusory allegation that Ms. Chow "was an agent" of Briscoe, Next Level and others.  (SAC, ¶ 22.)

  If the Court considers these improper additions, the Court should rule that Plaintiffs' allegations fail to state a conspiracy claim under Section 1983, which requires a plaintiff to show (1) an agreement between the defendants to deprive the plaintiff of a constitutional right, (2) an overt act in furtherance of the conspiracy, and (3) a constitutional deprivation.  *Garcia v. Grimm*, No. 1:06–cv–225–WQH (PCL), 2011 WL 817426, at \*9 (S.D. Cal. Mar. 2, 2011); *see also Gilbrook v. City of Westminster*, 177 F.3d 839, 856–57 (9th Cir. 1999).  To plead a claim of conspiracy under Section 1983, a plaintiff must allege facts with sufficient particularity to show an agreement or a meeting of the minds to violate the plaintiff's constitutional rights.  *Miller v. California*, 355 F.3d 1172, 1177 n. 3 (9th Cir. 2004); *Margolis v. Ryan*, 140 F.3d 850, 853 (9th Cir. 1998); *Woodrum v. Woodward County*, 866 F.2d 1121, 1126 (9th Cir. 1989).  "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy."  *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1541 (9th Cir. 1989).

  Courts in the Ninth Circuit have required a plaintiff alleging a conspiracy to violate civil rights to state specific facts to support the existence of the claimed conspiracy.  *Burns v. County of King*, 883 F.2d 819, 821 (9th Cir. 1989) ("To state a claim for conspiracy to violate one's constitutional rights under Section 1983, the plaintiff must state specific facts to support the existence of the claimed conspiracy."); *accord Bashkin v. Hickman*, No. 07cv0995–LAB(CAB), 2008 WL 183696, at \*2 (S.D. Cal. Jan. 17, 2008).  "Vague and conclusory allegations of official participation in civil rights violations are not sufficient…."  *Ivey v. Board of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982); *see also Ostrer v. Aronwald*, 567 F.2d 551, 553 (2d Cir. 1977).  Finally, to state a claim for conspiracy, a plaintiff must show that he was deprived of a constitutional right.  *Garcia*, 2011 WL 817426 at \*9.

  By way of example, in *Shirazi v. Oweis*, No. 5:21-cv-00136-EJD, 2022 WL 445763 (N.D. Cal. Feb. 14, 2022), the plaintiff alleged a cause of action for a conspiracy in violation of Section

1983 as a result of allegedly being assaulted by police officers while plaintiff was participating in an

on-campus protest. Plaintiff alleged that the police officers present at the protest worked in concert

with each other and "took concrete steps to enter into an agreement" and "committed specific overt

acts." *Id*. at *5. The court found plaintiff's conclusory allegations in this regard "inadequate" and

dismissed the Section 1983 conspiracy claim because there were "no facts to show an agreement or a

meeting of the minds to accomplish an unlawful purpose." *Id*. at *6.

As another example, in *Inman v. Anderson*, 294 F.Supp.3d 907 (N.D. Cal. 2018), the plaintiff

alleged a Section 1983 conspiracy claim against various police officers, the city, district attorney, and

county that employed the district attorney as a result of their investigation and arrest of plaintiff for

suspicion of violation of sex-related crimes. In finding that plaintiff's Section 1983 conspiracy claim

was insufficiently pled, the court noted that the plaintiff did not assert any specific allegations against

the county, and instead lumped multiple defendants into a broad allegation thus failing to satisfy the

notice and pleading requirement of FRCP 8(a)(2). *Id*. at 919. Moreover, with respect to the Section

1983 conspiracy claim alleged against the police officers, the court found that the plaintiff's general

allegations, based on information and belief, that the police officers conspired with the district

attorney to present false incriminating evidence to the court and present a misleading probable cause

statement failed to sufficiently allege "specific facts to support the existence of the claimed

conspiracy." *Id*. at 927 (quoting *Burns*, 883 F.2d at 821.)

Here, Plaintiffs' Section 1983 conspiracy claim fails for the same reasons set forth in *Shirazi*,

2022 WL 445763, and *Inman*, 294 F.Supp.3d 907. First, Plaintiffs only make general, conclusory

allegations that "DEFENDANTS" "agreed together" to deprive Plaintiffs of their rights and "engaged

in coordinated overt acts." (SAC, ¶¶ 209, 210.) There are no facts to show an agreement, just a

naked conclusion that there was one.

More importantly, Plaintiffs fail to allege any facts that would show that Briscoe or Next

Level acted on behalf of any state/government entity. The Fourteenth Amendment only protects

against *state/government* interference, not private conduct. *See Johnson v. Knowles*, 113 F.3d 1114

(9th Cir. 1997) (confirming that any violation under Section 1983 must involve conduct that is "fairly

attributable" to the State); *see also Collins v. Womancare*, 878 F.2d 1145, 1151 (9th Cir. 1989)

1  (same).  In order to properly maintain a cause of action rooted in a violation of a party's Fourteenth

2  Amendment rights, as alleged here, it is a threshold requirement that the alleged interference must be

3  caused by state or government actors, or be "fairly attributable" to the State.  Briscoe and Next Level

4  are clearly not a state actors.  The Court previously ruled that Plaintiffs' allegations did not "plausibly

5  demonstrate that Briscoe's alleged conduct" was "wrongful."  (ECF No. 85 at 19; *see also* ECF No.

6  85 at 16.)  The thrust of the new allegations in the SAC is that Briscoe, and many others, traveled to

7  visit Phillip III when they learned that his mother had died.  (SAC, ¶¶ 78-84.)  Phillip III's location

8  was not secret from Plaintiffs at this time; Bell Jr. went to the same house and Plaintiffs sent the

9  police to do a "welfare check," but the police refused to make Phillip III leave with his biological

10  father.  (SAC, ¶¶ 80-81; SAC, Ex. E at 3:19-4:3.)

11       The SAC makes the conclusory allegation that an unspecified "plan" was "developed"

12  between Sandoval, Briscoe, and Johnson merely because they were present in the same location for

13  some unspecified time.  (SAC, ¶ 84.)  It does not plausibly allege what the plan was or any facts

14  showing that both Briscoe and Johnson (the only potential state actor alleged to have interacted with

15  Briscoe) agreed to any such plan.  Indeed, the SAC alleges only one instance where Johnson and

16  Briscoe ever met, and the fact that both men went to see Phillip III when they learned that his mother

17  had died does not plausibly give rise to an inference of a conspiracy or any nefarious conduct.  To the

18  contrary, the SAC itself includes all kinds of facts to undercut the plausibility of any allegation that

19  Johnson and Briscoe were working together.  The SAC does not allege any connection between

20  Briscoe and the house where Phillip III was staying and it doesn't allege any details about how

21  Briscoe supposedly pressured Phillip III not to speak to his biological father.  Plaintiffs' secret

22  recording of Johnson doesn't indicate a civil rights conspiracy or show that Briscoe and Johnson

23  reached an agreement for some nefarious purpose.  Read in context, the recording shows that Johnson

24  tried hard to get Phillip III to talk to his biological father, but was not in a position where he could

25  force Phillip III to do so.  It indicates that Johnson and Briscoe were both present at the house where

26  Phillip III was staying on June 27, 2024, but it provides no support that Briscoe and Johnson entered

27  into a conspiracy to convince Phillip III not to talk with his biological father or to somehow pressure

28  Phillip III not to comply with the family court order in the weeks before he turned 18.

Alleging a civil right conspiracy is a serious matter.  It requires more to state a claim than to simply assert there must have been a "plan" merely because Briscoe and Johnson were once in the same location.  If the Court considers this improperly added claim, it should dismiss the claim as against Briscoe and Next Level for failure to state a claim.

## IV.    <u>CONCLUSION</u>

For these reasons, the Court should dismiss all claims asserted against Briscoe and Next Level, without leave to amend, because the facts alleged fail to state any claim against Briscoe or Next Level and it would be futile to continue to allow amendments here.

Dated: July 15, 2025

Respectfully submitted,

By: */s/Kevin Calia*
     Kevin Calia

ILLOVSKY GATES & CALIA LLP
Kevin Calia (State Bar No. 227406)
kevin@illovskygates.com
Eva Schueller (State Bar No. 237886)
eschueller@illovskygates.com
1611 Telegraph Ave., Ste. 806
Oakland, CA 94612
Telephone: (415) 500-6640

*Attorneys for Defendants Steve Briscoe and*
*Next Level Sports & Academics Foundation*

DEFENDANTS STEVE BRISCOE AND NEXT LEVEL'S MOTION TO DISMISS
Case No.: 4:24-cv-05545-JST