1
2

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

3
4
5
6
7
8
9
10
11
12
13

PHILLIP BELL JR.; LORNA BARNES;
and ANTHONY BARNES,

          Plaintiffs,

v.

SADDLEBACK VALLEY UNIFIED SCHOOL
DISTRICT; KLUTCH SPORTS;
NEXT LEVEL SPORTS & ACADEMICS; and
ISAHIA SANDOVAL; EDWARD WONG
TRICIA OSBORNE, CHAD JOHNSON;
STEVE BRISCOE, AND DOES 1-20 in their
individual and official capacities,

          Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.: 4:24-CV-05545-JST

**PLAINTIFFS' RESPONSE IN
OPPOSITION TO DEFENDANTS
STEVE BRISCOE AND NEXT LEVEL
SPORTS & ACADEMICS
FOUNDATION NOTICE OF MOTION
AND MOTION TO DISMISS
PURSUANT TO FED. R. CIV. P.
12(b)(6)**

Hon. Judge Jon S. Tigar

Date: September 11, 2025
Time: 2:00 P.M.
Courtroom: 6, 2nd Floor
Judge: Hon. Jon S. Tigar

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF CONTENTS**

I. Introduction ................................................................................. 3

II. Statement of Relevant Facts .................................................... 3

A. Procedural Background ............................................................ 3

B. Factual Background ................................................................. 2

III. Argument ................................................................................ 9

A. Standards on a Motion to Dismiss ......................................... 9

IV. Legal Argument ..................................................................... 10

A. Plaintiffs' Complaint Sufficiently Alleges That Briscoe Was Negligent ............. 10

B. Plaintiffs' Cause of Action for Negligent Infliction

    of Emotional Distress Should Not Be Dismissed ...................................... 14

C. Plaintiffs' Cause of Action for Intentional Infliction of

    Emotional Distress Is Adequately Pled ............................... 16

D. Plaintiffs' Cause of Action for Unjust Enrichment Should Not Be Dismissed ....... 17

E. Plaintiffs' Cause of Action for Civil Rights Conspiracy

    Under 42 U.S.C. § 1983 Is Adequately Pled .................................. 18

F. Plaintiffs Seek Leave to Amend If Necessary ................................. 21

V. Conclusion ................................................................. 21

Proof of Service ............................................................. 22

**TABLE OF AUTHORITIES**

**Cases**

Ashcroft v. Iqbal, 556 U.S. 662 (2009) ........................................ 9, 14, 17, 21

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) ...................... 14, 15, 17, 18, 21

Belen v. Ryan Seacrest Prods., LLC, 65 Cal. App. 5th 1145 (2021) ............ 15

Burgess v. Superior Court, 2 Cal. 4th 1064 (1992) ......................... 11

California Federal Bank v. Matreyek, 8 Cal. App. 4th 125 (1992) ............ 19

1

Carlsen v. Koivumaki, 227 Cal. App. 4th 879 (2014) ................................................ 17

Garcia v. Grimm, No. 1:06–cv–225–WQH (PCL),

2011 WL 817426 (S.D. Cal. Mar. 2, 2011) ................................................................ 18

Great Western Mining & Mineral Co. v. Fox Rothschild LLP,

615 F.3d 159 (2010) ................................................................................................... 19

Hassman v. Rabbinical Assembly of America,

2016 WL 6635622 (C.D. Cal. Nov. 9, 2016)............................................................. 17

Hishon v. King & Spalding, 467 U.S. 69 (1984) .......................................................... 10

Hudacko v. Regents of University of California,

2024 WL 3908113 (N.D. Cal. Aug. 20, 2024) .......................................................... 15

Jutrowski v. Twp. of Riverdale, 904 F.3d 280 (2018) ................................................. 18

King v. Facebook, Inc., 572 F. Supp. 3d 776 (N.D. Cal. 2021) ................................. 17

Lopez v. Smith, 203 F.3d 1122 (9th Cir. 2000) ........................................................... 10

Meyer v. County of San Diego, 2021 WL 4924836 (S.D. Cal. Oct. 21, 2021) .......... 17

Nibbi Bros. v. Home Fed. Sav. & Loan Ass'n, 205 Cal. App. 3d 1415 (1988) ............ 19

Pangburn v. Culbertson, 200 F.3d 65 (2d Cir. 1999) .................................................. 19

Rodriguez v. City of New York, 590 F. Supp. 3d 518 (S.D.N.Y. 2022) ..................... 19

Scheuer v. Rhodes, 416 U.S. 232 (1974) ...................................................................... 10

Seifert v. Hamilton Cty., 951 F.3d 753 (6th Cir. 2019) ............................................... 19

Shirazi v. Oweis, No. 5:21-CV-00136-EJD,

2022 WL 445763 (N.D. Cal. Feb. 14, 2022) .............................................................. 19

Sprewell v. Golden State Warriors, 266 F.3d 979 (9th Cir. 2001) ............................. 10

Starr v. Baca, 652 F.3d 1202 (9th Cir. 2011),

reh'g en banc denied, 659 F.3d 850 (9th Cir. 2011) .................................................. 10

United Steelworkers of Am. v. Phelps Dodge Corp.,

865 F.2d 1539 (9th Cir. 1989) ................................................................. 19

Walleri v. Federal Home Loan Bank of Seattle, 83 F.3d 1575 (9th Cir. 1996) .......... 10

Wise v. Superior Court, 222 Cal. App. 3d 1008 (1990) .............................................. 15

# I. INTRODUCTION

Plaintiffs PHILLIP BELL, JR., LORNA BARNES, and ANTHONY BARNES ("Plaintiffs") submit this Opposition to Defendant's Steve Briscoe ("BRISCOE") and Next Level Sports & Academics Foundation ("NEXT LEVEL") Motion to Dismiss the Second Amended Complaint. This case involves cooperation and coordination between the BRISCOE and his NEXT LEVEL company with Mission Viejo high school and its agents. The end result of these goals has been retaining Phillip Bell III's athletic talents, profiting from them, and isolating him from his family.

Plaintiffs have sufficiently alleged facts demonstrating BRISCOE and NEXT LEVEL received the cease and desist from PLAINTIFF's yet disregarded it and continued contacting Phillip Bell III which contributed to the harm suffered by PLAINTIFFs. At this stage, the Court should deny BRISCOE and NEXT LEVEL's Motion to Dismiss in its entirety. However, should the Court find any deficiency in Plaintiffs' Second Amended Complaint ("SAC"), Plaintiffs respectfully request leave to amend.

# II. STATEMENT OF RELEVANT FACTS

## A. Procedural Background

In the SAC, Plaintiffs alleged five causes of action against BRISCOE and NEXT LEVEL: (1) Negligence against BRISCOE; (2) Negligent Infliction of Emotional Distress against BRISCOE and NEXT LEVEL; (3) Intentional Infliction of Emotional Distress against BRISCOE and NEXT LEVEL; (4) Unjust Enrichment against BRISCOE and NEXT LEVEL; and (5) Civil Rights Conspiracy (42 U.S.C. § 1983) against BRISCOE and NEXT LEVEL.

## B. Factual Background

This case concerns BRISCOE and NEXT LEVEL taking advantage of a minor and illegally interfering with the familial relationship, resulting in lasting and significant harm. BRISCOE knew that Phillip Bell III's mother SAMANTHA BARNES (hereinafter referred to as "SAMANTHA"), had tragically passed away. Further, he was aware that after SAMANTHA's death, Phillip Bell III (hereinafter referred to as PHILLIP III) had no legal guardian in Southern California. This fact is reinforced by his receipt of cease and desist letter sent on July, 5, 2024, informing him of the situation regarding PHILLIP III and requesting him to cease all contact with PHILLIP III, and if he were to come into contact with him, to relay that information to his legal guardian. Instead, BRISCOE and NEXT LEVEL acted to block PHILLIP III from any contact with his family and sought to control and exploit his athletic abilities for their own benefit. As a result of these acts, PHILLIP III was wrongfully deprived of crucial moments in his life with his family, including his senior year of high school, college decision-making period, and the time following his mother's passing when he most needed familial support.

PHILLIP III was enrolled as a senior at Mission Viejo High School (hereinafter referred to as "MISSION") without the consent of FATHER and is residing at an address that has not been disclosed to FATHER by MISSION. (SAC, at ¶ 44). The maternal grandparents of PHILLIP III, Maria Lorna Barnes and Anthony Barnes (hereinafter referred to as "GRANDPARENTS" OR "PLAINTIFFS" collectively), helped raise PHILLIP III and have a custodial interest. (SAC, at ¶ 11,12). FATHER lived in Folsom, California, and shared 50/50 custody with SAMANTHA, who lived in nearby Sacramento, California. (SAC, at ¶ 31, 33). PHILLIP III lived in Sacramento with SAMANTHA and ISAIAH SANDOVAL (hereinafter referred to as "SANDOVAL" individually or "DEFENDANTS" collectively). SANDOVAL is the

former husband of SAMANTHA BARNES. SANDOVAL has no legal custody right to PHILLIP III. (Exhibit A- Custody Agreement). (SAC, at ¶ 18).

While in Sacramento, PHILLIP III's athletic talent began attracting attention from coaches and scouts. (SAC, at ¶ 36). SANDOVAL, a convicted felon, degenerate gambler, drug user, and money-hungry stepfather, brokered a deal and devised a scheme to capitalize on the talents of PHILLIP III. (Exhibit B- Criminal Record). (SAC, at ¶ 37). SANDOVAL brokered a compensated deal with BRISCOE the owner and operator of the nonprofit company, NEXT LEVEL. The deal was done under undue influence, and sent PHILLIP III to play football for Bishop Alemany in Southern California, which has a record of prior incidents involving unlawful sports recruitment practices, in direct violation of California Interscholastic Federation Rules. (Exhibit C- Bishop Alemany Prior Records). (SAC, at ¶ 38, 39, 40).

PLAINTIFFS began to be concerned when PHILLIP III was moved to Los Angeles California, in direct violation of the custody agreement. (SAC, at ¶ 41). After an unsuitable month at Bishop Alemany, SANDOVAL and SAMANTHA moved again and enrolled PHILLIP III at MISSION without FATHER'S knowledge or consent. (SAC, at ¶ 44). PHILLIP III reached out to FATHER in distress stating he did not want to be in Los Angeles, and was upset by the domestic violence and drug use between SAMANTHA and SANDOVAL. GRANDPARENTS also would visit SAMANTHA to find that there was no food in the home, alcohol was easily accessible, and there was little to no furniture. (Exhibit D - Police Reports). (SAC, at ¶ 47, 48, 49).

PLAINTIFFS immediately filed a legal action in Superior Court of California, requesting that PHILLIP III be returned to Sacramento to attend his old school, Catholic High School Christian Brothers, in which the Judge ordered SAMANTHA and SANDOVAL to

return PHILLIP III to FATHER in Sacramento immediately after his first semester at MISSION. (Exhibit E, County of Sacramento Court Order). (SAC, at ¶ 54).

In his first semester at MISSION, PHILLIP III helped the football team capture a Division I-A State Football Championship and in the state title game, PHILLIP III was recognized as the most valuable player. (SAC, at ¶ 57). SADDLEBACK VALLEY UNIFIED SCHOOL DISTRICT (hereinafter referred to as "DISTRICT" individually or "DEFENDANTS" collectively) is a public school district under the laws of California. DISTRICT, SAMANTHA, and SANDOVAL were aware of the Court Order to have PHILLIP III return to Christian Brothers, but ignored it. (SAC, at ¶ 13, 58). SAMANTHA would then enter PHILLIP III into a contractual relationship with KLUTCH, a Los Angeles-based sports agency. FATHER was not aware of PHILLIP III's contractual relationship with KLUTCH nor did FATHER consent to it. (Exhibit F - KLUTCH Contract). (SAC, at ¶ 61, 62, 63). Approximately nine months after the move to Los Angeles, SAMANTHA died under suspicious circumstances. (SAC, at ¶ 65). On or about June 25th, 2024 SAMANTHA and SANDOVAL were allegedly vacationing in Las Vegas, Nevada. SAMANTHA, a type 1 diabetic, was without her medicine and was supplied cocaine by SANDOVAL. SAMANTHA began vomiting to the point of becoming lethargic. (SAC, at ¶ 66, 67, 68, 69).

Instead of seeking medical assistance, SANDOVAL left SAMANTHA in their hotel room alone for hours and allegedly went out gambling with SAMANTHA's money. (SAC, at ¶ 70, 71). After receiving a phone call that SAMANTHA was found dead, SANDOVAL left Las Vegas almost immediately, taking only SAMANTHA's bank cards, phone, purse, and thousands of dollars in casino chips, leaving all of her other belongings behind. (SAC, at ¶ 72). The next day SANDOVAL went shopping with SAMANTHA'S bank card spending nearly

a thousand dollars on items at a Footlocker in Los Angeles. (Exhibit G- Bank Statements). (SAC, at ¶ 73).

PHILLIP III called FATHER in tears over the news of his mother's death, and FATHER immediately flew to Los Angeles for his son. (SAC, at ¶ 74, 75). PHILLIP III provided his FATHER his address but when FATHER arrived at the address SANDOVAL, BRISCOE, and others coerced PHILLIP III not to open the door. (SAC, at ¶ 76). After SAMANTHA's death, PHILLIP III was harbored without parental consent at another high school student's home that was organized with MISSION and DISTRICT. (SAC, at ¶ 80). DISTRICT and MISSION immediately decided to re-enroll PHILLIP III in school for his senior year with SANDOVAL and BRISCOE listed as his guardians, although they knew that it violated DISTRICT's policy because FATHER, the only parent with custody rights, lived over 400 miles away from the DISTRICT. (Exhibit H - SVUSD Residency Verification Form). (SAC, at ¶ 83). DISTRICT and MISSION publicly promoted a GoFundMe page started by SANDOVAL which stated that it would be used for SAMANTHA'S funeral expenses and children although they knew that he did not have custodial rights. (SAC, at ¶ 85). KLUTCH also monetarily supported this GoFundMe, and SANDOVAL did not use any of the funds from the go fund me for SAMANTHA'S funeral, but demanded that GRANDPARENTS pay for all expenses. (Exhibit I- GoFundMe Screenshots); (Exhibit J- Funeral Text Messages). (SAC, at ¶ 86, 87, 88, 89).

DISTRICT and MISSION also allowed PHILLIP III to participate in summer football practice without consent from FATHER. (SAC, at ¶ 92). After learning of this, on July 5, 2024, PLAINTIFF'S sent a cease-and-desist letter to all DEFENDANTS asking them not to have contact with PHILLIP III and to notify them of PHILLIP III's whereabouts. (See Exhibit

K- Cease and Desist Letter). (SAC, at ¶ 95). The cease-and-desist was ignored and violated by all DEFENDANTS in direct violation of California law, the court order, and CIF regulations. (Exhibit L- Football Screenshot). (SAC, at ¶ 99). BRISCOE and NEXT LEVEL also intentionally interfered with the PLAINTIFFS custodial rights by fraudulently adding himself as an emergency contact on official school documentation, claiming to be PHILLIP III's uncle. (SAC, at ¶ 84).

EDWARD WONG (hereinafter referred to as "WONG " individually or "DEFENDANTS" collectively) was the Board President of DISTRICT at all relevant times. TRICIA OSBORNE (hereinafter referred to as "OSBORNE" individually or "DEFENDANTS" collectively) was an agent of DISTRICT and worked at MISSION as the school's principal. CHAD JOHNSON (hereinafter referred to as "JOHNSON " individually or "DEFENDANTS" collectively) was an agent of DISTRICT and worked at MISSION as the Head Football Coach. (SAC, at ¶ 19, 20, 21). MISSION, DISTRICT, OSBORNE, and JOHNSON were all aware of SAMANTHA's death, SANDOVAL's lack of custodial rights, BRISCOE's fraudulent claim of relation to PHILLIP III, but still allowed PHILLIP III to enroll at MISSION for the 2024-2025 school year without parental consent. (Exhibit M- 2024-2025 MISSION Enrollment). (SAC, at ¶ 100). When PLAINTIFFS reached out with concern for their son and grandson, OSBORNE and JOHNSON disclosed that they were aware of PHILLIP III's location but refused to share it. (SAC, at ¶ 105). JOHNSON intentionally interfered with PLAINTIFFS' rights by making promises to PHILLIP III that he would be able to participate in football even if he did not have any consent from PLAINTIFFS. (SAC, at ¶ 107). DISTRICT, WONG, JOHNSON, and OSBORNE also took PHILLIP III and SANDOVAL 2,400 miles across state lines on a trip to Hawaii for a football game without PLAINTIFFS' consent. (Exhibit N-

Hawaii Screenshot). (SAC, at ¶ 109). BRISCOE, JOHNSON, and NEXT LEVEL were able to capitalize off of PHILLIP III due to his isolation from his family, and keep him playing at Mission Viejo.

**ARGUMENT**

**A. STANDARDS ON A MOTION TO DISMISS**

A Motion to Dismiss should be denied if the subject complaint contains factual allegations adequate to give defendants fair notice of the pending claims and enables them to defend themselves if the complaint's allegations, taken as true, plausibly suggest entitlement to relief. *Starr v. Baca, 652 F.3d 1202, 1216-1217 (9th Cir. 2011), rehearing en banc denied, 659 F.3d 850 (9th Cir. 2011).* When ruling on a dismissal motion, the Court must accept as true all factual allegations in the complaint. *Erickson v. Pardus, 551 U.S. 89, 94 (2007).* The Court must also draw inferences in favor of the plaintiff; the complaint should be construed favorably to the pleader. *Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Walleri v. Federal Home Loan Bank of Seattle, 83 F.3d 1575, 1580 (9th Cir. 1996).* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted).* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id., 556 U.S. at 677-78.*

"A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." *Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).* Dismissal for failure to state a claim is proper "only if it is clear that no relief could be granted under any

set of facts that could be provided consistent with the allegations." *Hishon v. King &amp; Spalding, 467 U.S. 69, 73 (1984).* The issue is whether the plaintiff is entitled to offer evidence to support the claims, not whether based on a complaint's allegation they will prevail as a matter of law. *Scheuer, supra 416 U.S. at 236 (no quotations added).* Furthermore, the Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).*

### IV. LEGAL ARGUMENT

**A. PLAINTIFFS' Complaint Sufficiently Alleges That BRISCOE was negligent.**

The defendant BRISCOE argues that he does not owe a duty of care to strangers, yet this is ignorant of the duty of care between BRISCOE and PLAINTIFF's minor child. BRISCOE admits that "there is generally no duty to control the conduct of a third person to prevent him from causing harm to another, absent a special relationship between defendant and either person whose conduct needs to be controlled or the foreseeable victim of that conduct. *Wise v. Superior Court*, 222 Cal. App. 3d 1008, 1013 (1990)." (*See* Defendant's Motion to Dismiss). In this case that special relationship is present, as PHILLIP III's trainer and coach, BRISCOE had a duty of care to PHILLIP III's parents.

For the court to assert that adults who interact with minors in the capacity of a coach, trainer, etc., have no duty of care to that person's legal guardians would be a misstep in public policy. BRISCOE's role towards PHILLIP III was more than "giving advice to Phillip III and his mother about Phillip III playing football in high school and college." (*See* Defendant's Motion to Dismiss). Rather, PLAINTIFF embedded himself with PHILLIP III and

10

SAMANTHA. That BRISCOE's "relationship was with Phillip III—not Plaintiffs", is inaccurate. (*See* Defendant's Motion to Dismiss). In fact, BRISCOE created a relationship with both SAMANTHA and PLAINTIFF, PHILLIP BELL JR, by inserting himself in the custody proceedings by testifying against the PLAINTIFF, thus creating a relationship that previously did not exist. For him to claim there is no relationship now is convenient for him.

Furthermore like SANDOVAL, BRISCOE had an active relationship with SAMANTHA in discussing PHILLIP III's NIL offers from colleges. After SAMANTHA's death, BRISCOE sought to increase his control. Under California law, interference with parental rights is a cognizable harm that gives rise to a duty of care. *See Burgess v. Superior Court*, 2 Cal.4th 1064, 1073 (1992) (recognizing that parents suffer legally cognizable harm when their parental relationship is disrupted).

The defendants reliance on *Hudacko v. Regents of University of California*, 2024 WL 3908113 (N.D. Cal. Aug. 20, 2024) is misplaced. In *Hudacko*, the minor's mother did consent to the procedure; it was only the father who did not. *Hudacko* at 43. In the present case, after SAMANTHA's death PHILLIP III was a minor without a legal guardian in the picture. *Hudacko* represents a disagreement between parents, while the case at bar represents an only father being denied his legally entitled contact with his son.

Moreover, Briscoe's false claim that he was PHILLIP III's "uncle" is a critical allegation that warrants this Court's reconsideration, as it constitutes continued interference with Plaintiffs' parental rights. Just as he did during the custody hearing— when he attempted to keep PHILLIP BELL Jr. away from PHILLIP III—Briscoe again sought

to separate father and son by creating a pretext for PHILLIP III to remain in Southern California without his sole legal parent, PHILLIP BELL Jr.

However, even if the Court declines to reconsider Briscoe's actions in falsely representing himself as PHILLIP III's uncle—despite Plaintiff being the sole individual with custodial rights—Briscoe also persisted in contacting the minor after receiving a cease-and-desist notice from Plaintiffs. This cease and desist letter contained the information regarding PHILLIP III's legal guardianship status and reiterated that SANDOVAL had no right to PHILLIP III as a legal guardian. The DEFENDANTs are correct in that BRISCOE has no duty to enforce a family custody order, but this is not what was asked by the PLAINTIFFs, but rather that he not violate the order. Suggesting recourse through a family court (*See* Defendant's Motion to Dismiss), is insufficient if a party is actively acting to frustrate the familial relationship.

DEFENDANT mischaracterizes his relationship with PHILLIP III and PLAINTIFFs as insignificant, but rather, DEFENDANTs demonstrated an undeniable pattern of interference over the course of two years. PHILLIP III is not a child of a broken home or unfortunate upbringing. In Northern California, PHILLIP III was not more than ten minutes away from both parents. As a Freshman at Christian Brothers, PHILLIP III was an outstanding student and athlete. His football career was supported by both parents, who came to every game. PHILLIP III was successful in this environment, and had no reason to depart from it. It was only upon the corruption of the relationship with SAMANTHA, that BRISCOE and SANDOVAL were able to cement their control. A timeline of BRISCOE's activities can shed light on the extent of his interference.

- BRISCOE, along with SANDOVAL, brokered a deal and was compensated to remove PHILLIP III from a beneficial environment to Bishop Alemany High School. (SAC ¶38, 39).

- BRISCOE testified against FATHER at the custody hearing and claimed that he was not a good father. His testimony was deemed not to be credible as a judge ruled that PHIILLIP III should return to Sacramento. (SAC ¶55, 56).

- BRISCOE knew PHILLIP III was to return to Sacramento but continued to encourage PHILLIP III to remain in Southern California.

- BRISCOE participates with SAMANTHA in NIL negotiations with universities without fathers involvement.

- SAMANTHA dies under suspicious circumstances

- Briscoe meets with PHILLIP III, SANDOVAL, and JOHNSON to devise a plan to keep PHILLIP III in Southern California and away from his father. (SAC ¶ 78).

- To keep a distraught PHILLIP III away from his father, BRISCOE and SANDOVAL coerced PHILLIP III to not open the door when his father arrived in Southern California to console his son. (SAC ¶ 76, 77, 78, 79).

- BRISCOE listed himself as a "guardian" and "uncle" for PHILLIP III for the purposes of re-enrolling him at MISSION VIEJO in Southern California. (SAC ¶ 83, 84, 96).

- BRISCOE received a cease and desist from PLAINTIFFs and acknowledged his receipt. (SAC ¶ 95, 97).

- BRISCOE continued his contact with PHILLIP III after receiving the cease and desist. (SAC ¶102).

- BRISCOE was one of the only parties in contact with PHILLIP III when he finally made his college decision and was able to profit off of the NIL benefits.

This is an extended period of acts that uniquely benefit BRISCOE and NEXT LEVEL. As someone in consistent contact with athletes, BRISCOE had become expert in handling them for his own gain, but BRISCOE was unable to profit from PHILLIP III if he remained in his healthy environment in Northern California. Rather, BRISCOE negotiated PHILLIP III's move to Bishop Alemany in order to accept improper payments from the high school. Bishop Alemany has a track record of prior controversies regarding impermissible football athletic recruiting. (SAC ¶40). The only possible reason for this move was for BRISCOE and SANDOVAL's benefit. When this move proved too uncomfortable for PHILLIP III, shaken by the change and his isolation from his family, PHILLIP III was moved again to MISSION VIEJO. When PHILLIP III continued his athletic success despite his depressive isolation, BRISCOE saw another opportunity to capitalize through his control of the college NIL process.

This directly refutes the DEFENDANTs assertion that their activities merely consisted of "giving advice to Phillip III and his mother about Phillip III playing football in high school and college." (*See* Defendant's Motion to Dismiss). This evidence satisfies the plausibility requirement for surviving a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Therefore, the court should hold that PLAINTIFFs have adequately alleged the DEFENDANTs negligence.

**B. PLAINTIFFS' Cause of Action for Negligent Infliction of Emotional Distress Should Not be Dismissed.**

PLAINTIFFs have adequately pleaded a claim for negligence, and therefore, their cause of action for negligent infliction of emotional distress (NIED) is legally viable. As courts have consistently recognized, NIED is not an independent tort but rather a subset of negligence, requiring proof of duty, breach, causation, and damages. *King v. Facebook, Inc.*, 572 F.Supp.3d 776 (N.D. Cal. 2021); *Belen v. Ryan Seacrest Prods., LLC*, 65 Cal. App. 5th 1145, 1165 (2021). Here, Plaintiffs have sufficiently established each of these elements. As previously argued, BRISCOE owed PLAINTIFFs a duty of care, which arose from his special relationship with PHILLIP III's mother and his knowledge of a court-ordered custody arrangement. The argument that PLAINTIFFs failed to allege sufficient facts to establish negligence is without merit. PLAINTIFFs have set forth detailed factual allegations demonstrating BRISCOE's direct role in violating a court order and obstructing PLAINTIFF's custodial rights.

When the facts are examined in context, a truly disturbing reality for the family of PHILLIP III emerges. SANDOVAL is the possible murderer of SAMANTHA, yet remained in custody of PHILLIP III after SAMANTHA's death. Such a nightmare scenario is enabled by BRISCOE's conduct and efforts in isolating PHILLIP III. It is known that BRISCOE and SANDOVAL would meet to discuss PHILLIP III. Despite BRISCOE's knowledge of SANDOVAL's unsavory character, he made NO attempt to contact the family. BRISCOE never once expressed concern over SANDOVAL having custody of PHILLIP III, an act in complete disregard of SANDOVAL's status as a gambling addict and habitual substance and narcotic abuser. For any family, this is cause to suffer emotional distress.

This evidence satisfies the plausibility requirement for surviving a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007)). Given that NIED is simply a negligence claim where emotional distress serves as the primary harm, and PLAINTIFFs have clearly alleged negligence, their claim is legally sound and should not be dismissed.

### C. PLAINTIFFS' Cause of Action for Intentional Infliction of Emotional Distress is Adequately Pled.

PLAINTIFFs have adequately alleged extreme and outrageous conduct by BRISCOE sufficient to support a claim for intentional infliction of emotional distress (IIED). Under California law, conduct is considered extreme and outrageous when it is "so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Carlsen v. Koivumaki*, 227 Cal.App.4th 879, 896 (2014). The facts here are not minor insults or annoyances, but cut to heart of sacred bonds; that of a father to a son, and grandparents to a grandson. After SAMANTHA's death, PHILLIP III was distraught with grief, to the point of calling his father tearfully. In this important moment, BRISCOE contributed to blocking PHILLIP III access to his family. Isolating a grieving son from his father is extreme and outrageous conduct. Further, the DEFENDANTS reliance on *Hassman v. Rabbinical Assembly of America*, 2016 WL 6635622, at *1, 6 (C.D. Cal. Nov. 9, 2016) is misplaced. (*See* Defendant's Motion to Dismiss).  *Hassman* is a case of insane ramblings by a plaintiff who sued, among others, Michelle Obama over her displeasure with a divorce court judgment. It does not assert that the interruption of a familial relationship by itself cannot plausibly demonstrate that a plaintiff has suffered severe emotional distress.

Likewise, in *Meyer v. County of San Diego*, 2021 WL 4924836, at *2, 11 (S.D. Cal. Oct. 21, 2021), the court held that the plaintiffs had failed to meet their burden due to their "scattershot and generalized allegations". (*See Meyer v. County of San Diego* at 11). This case

is distinguishable, as in the case at bar the pleadings have produced concrete allegations

that BRISCOE and NEXT LEVEL were the proximate cause of the PLAINTIFFs harm.

This evidence satisfies the plausibility requirement for surviving a motion to dismiss.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007)). Therefore, the court should hold that PLAINTIFFS have adequately alleged the

DEFENDANTS IIED.

### D. PLAINTIFFS' Cause of Action for Unjust Enrichment Should Not be Dismissed.

At multiple instances, BRISCOE was uniquely situated to profit off of PHILLIP III.

BRISCOE was integral to the decision to move PHILLIP III from high school to high school.

This included brokering the deal and profiting from PHILLIP III's move to Bishop Alemany.

Further, BRISCOE was party to negotiations with SAMANTHA regarding the money

PHILLIP III was offered from colleges in NIL to play football. As party to these negotiations,

BRISCOE was uniquely positioned to pay himself out for his role in developing PHILLIP III

as an athlete. This role became even easier to play after SAMANTHA's death.

That BRISCOE or NEXT LEVEL did not directly deprive PLAINTIFFs of money is not

fatal to this cause of action. "For a benefit to be conferred, it is not essential that money be

paid directly to the recipient by the party seeking restitution." *California Federal Bank v.*

*Matreyek*, 8 Cal. App. 4th 125, 132 (1992).

Further, "[i]t must ordinarily appear that the benefits were conferred by mistake,

fraud, coercion or request; otherwise, though there is enrichment, it is not unjust." (Nibbi

Bros. v. Home Fed. Sav. & Loan Ass'n, 205 Cal. App. 3d 1415). For BRISCOE and NEXT

LEVEL, fraud and coercion were their methods of control over PHILLIP III. Despite PHILLIP

III's multiple tearful pleadings with his father to come and get him, BRISCOE was

consistently able to deftly put him out of arms reach. By isolating a grieving minor, BRISCOE successfully removed him from his family.

This evidence satisfies the plausibility requirement for surviving a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Therefore, the court should hold that PLAINTIFFs have adequately alleged the DEFENDANTs unjust enrichment.

### E. PLAINTIFFS' Cause of Action for Civil Rights Conspiracy Under 42 U.S.C. §1983 is Adequately Pled.

For a civil rights conspiracy under Section 1983, the plaintiff must allege "(1) an agreement between the defendants to deprive the plaintiff of a constitutional right, (2) an overt act in furtherance of the conspiracy, and (3) a constitutional violation." *Garcia v. Grimm*, No. 1:06–cv–225–WQH (PCL), 2011 WL 817426, at *9 (S.D. Cal. Mar. 2, 2011). In the present case the PLAINTIFFs plausibly alleges these facts.

In order for a "meeting of the minds" to occur the parties must have some sort of contact with each other, this happened multiple times regarding BRISCOE, JOHNSON, and SANDOVAL. While meeting at SANDOVAL's house where PHILLIP III was living, the parties had ample opportunity to conspire to withhold PHILLIP III from his family so that he could continue playing football at Mission Viejo. The case *Jutrowski v. Twp. of Riverdale,* 904 F.3d 280, 297 (2018), notes the importance of the evidence that the parties had "time that was available to reach an agreement," in finding a conspiracy.

This agreement acted to unconstitutionally deprive PLAINTIFF's of their right to familial association. Further, in accordance with their agreement, the exact goals of their plan played out. PHILLIP III was successfully isolated and hidden from his family and

18

continued his football career at Mission Viejo. It is implausible to allege that these results came by way of coincidence rather than coordination between SANDOVAL, BRISCOE, and JOHNSON. Each participant shared the common objective of the conspiracy and stood to benefit from its achievement. *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1541 (9th Cir. 1989).

BRISCOE committed the overt act of violating the cease and desist and continuing his contact with PHILLIP III. His continued contact with PHILLIP III allowed him to continue influencing him to remain at Mission Viejo. The PLAINTIFFs detailed allegations include "the approximate time when the agreement was made, the specific parties to the agreement[,] the period of the conspiracy, or the object of the conspiracy." *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 295 (2018).

The agreement for conspiracy does not have to be completely detailed directly by the PLAINTIFF but "in the absence of direct proof, that "meeting of the minds" or "understanding or agreement to conspire" can be "infer[red]" from circumstantial evidence." *Id.*

Mere association does not make a conspiracy, but the repeated acts of BRISCOE and his conspirators of isolating PHILLIP III plausibly alleges the existence of Section 1983 civil rights conspiracy claim. Importantly, "allegation of conspiracy can only be overcome at summary judgment when "the moving parties' submissions foreclose[] the possibility of the existence of certain facts from which 'it would be open to a jury . . . to infer from the circumstances' that there had been a meeting of the minds." *Id.*

DEFENDANT's misconstrue the case law in attempting to laden the PLAINTIFF's with a higher burden than they are required to meet at the pleading stage. Unlike in *Shirazi*

*v. Oweis*, No. 5:21-CV-00136-EJD, in the case at bar there *are* facts to show an agreement or a meeting of the minds to accomplish an unlawful purpose. *Shirazi v. Oweis*, No. 5:21-CV-00136-EJD, 2022 WL 445763 (N.D. Cal. Feb. 14, 2022). See also *Rodriguez v. City of NewYork*, 590 F. Supp. 3d 518 (2022), requiring plaintiffs to only prove "some factual basis supporting a meeting of the minds" to survive a motion to dismiss.

Requiring the PLAINTIFFs to give the exact details of an agreement without the benefit of discovery would necessitate placing an unfair burden on PLAINTIFFs. See also *Pangburn v. Culbertson*, 200 F.3d 65, 72 (1999), "we have recognized that such "conspiracies are by their very nature secretive operations," and may have to be proven by circumstantial, rather than direct, evidence." See also *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (2010), "a plaintiff must assert facts from which a conspiratorial agreement can be *inferred*." (Emphasis added).

Further, DEFENDANT's misstate the facts of the case, stating "but the police refused to make Phillip III leave with his biological father." (*See* Defendant's Motion to Dismiss). At no point did PHILLIP II demand that PHILLIP III leave with him, but he simply wished to see his son out of concern for him. At multiple times including showing up at football practice and going to the house PHILLIP III shared with SANDOVAL. At all of these occasions PHILLIP II was denied the privilege of *even looking* at his son to determine if he was alright.

The result of this conspiracy has been the denial of PLAINTIFF's right to familial association. That BRISCOE is not a state actor is not fatal to this cause of action due to him conspiring with state actors and acting on their behalf. As seen in *Siefert v. Hamilton Cty.,* 951 F.3d 753 (2019), close collaboration with a state actor can be used to plausibly allege a

Section 1983 civil rights conspiracy claim. In *Siefert*, the court noted how closely the non-state actor worked with a state actor to communicate and depend on each other in keeping a child away from a parent. *Id.* at 759-760. BRISCOE acting through JOHNSON as an agent of Mission Viejo committed acts "fairly attributable to the state." (*Id.* at 760). Like in *Siefert*, the parties to the conspiracy remained in contact, relied on each other in keeping PHILLIP III in Southern California, and at various times worked at hiding PHILLIP III from his family. This was a symbiotic relationship between BRISCOE and state actors, thus providing the nexus for a Section 1983 civil rights conspiracy claim.

This evidence satisfies the plausibility requirement for surviving a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Therefore, the court should hold that PLAINTIFFs have adequately alleged a civil rights conspiracy under Section 1983.

### D. PLAINTIFFS SEEK LEAVE TO AMEND IF NECESSARY

In the event that the Court finds any deficiencies in the SAC, Plaintiffs respectfully request leave to amend. Leave to amend should be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). Plaintiffs are prepared to clarify any allegations necessary to meet the Court's concerns.

### V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny BRISCOE and NEXT LEVEL's Motion to Dismiss in its entirety. However, should the Court find any deficiency in the SAC, Plaintiffs seek leave to amend to address any such concerns.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully Submitted,


**/s/** Jamir Davis
Jamir Davis, Esq.
J. Davis Law Firm, PLLC
328 Scott Street
Covington, KY 41011
(859) 750-5033
jdavis@jdaviscounsel.com
www.jdaviscounsel.com

**PROOF OF SERVICE**
**Bell, et al. v. Saddleback Valley Unified School District, et al.**
**Case No. 4:24-cv-05545-JST**
I am over the age of 18, and not a party to this action.
On August 12, 2025, I served the following document(s) in this matter:

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS STEVE BRISCOE AND NEXT LEVEL SPORTS & ACADEMICS FOUNDATION NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**

A true and correct copy of the document(s) was served on all parties in this action, addressed as indicated below, by the following means: Email

J. Scott Donald
Spinelli | Donald | Nott
300 University Avenue, Suite 100
Sacramento, CA 95825
Telephone: (916) 448-7888
Fax: (916) 448-6888

Kevin Calia
ILLOVSKY GATES & CALIA LLP
Kevin Calia (State Bar No. 227406)
Eva Schueller (State Bar No. 237886)
kevin@illovskygates.com
eschueller@illovskygates.com
1611 Telegraph Ave., Ste. 806
Oakland, CA 94612
Telephone: (415) 500-6640
*Attorneys for Defendants Steve Briscoe and*
*Next Level Sports & Academics Foundation*

Anthony N. DeMaria
DEMARIA LAW FRIM, A.P.C.
Anthony N. DeMaria (State Bar No. 177894)
ademaria@demarialawfirm.com
1684 W. Shaw Ave., Ste. 101
Fresno, CA 93711
Telephone: (559) 206-2410
*Attorneys for Defendants Saddleback Valley*
*Unified School District, Edward Wong, Tricia*
*Osborne, and Chad Johnson*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Bryan M. Sullivan
EARLY SULLIVAN WRIGHT GIZER & MCRAE LLP
Bryan M. Sullivan (State Bar No. 209743)
bsullivan@earlysullivan.com
6420 Wilshire Blvd., 17th Floor
Los Angeles, CA 90048
Telephone: (323) 301-4660
*Attorneys for Klutch Sports Group, LLC*


/s/ Kaylah Bozman
Kaylah Bozman