1  ILLOVSKY GATES & CALIA LLP
   Kevin Calia (State Bar No. 227406)
2  kevin@illovskygates.com
   Eva Schueller (State Bar No. 237886)
3  eschueller@illovskygates.com
4  1611 Telegraph Ave., Ste. 806
   Oakland, CA 94612
5  Telephone: (415) 500-6640

6  *Attorneys for Defendants*
7  *Steve Briscoe and*
   *Next Level Sports & Academics Foundation*
8

9                     UNITED STATES DISTRICT COURT

10                    NORTHERN DISTRICT OF CALIFORNIA

11                             OAKLAND DIVISION

12

13                                              Case No. 4:24-cv-05545-JST
14  PHILLIP BELL JR.; LORNA BARNES; and
    ANTHONY BARNES.
15                                              **REPLY IN SUPPORT OF MOTION TO**
              Plaintiffs.                       **DISMISS PURSUANT TO FED. R. CIV.**
16                                              **P. 12(b)(6) SECOND AMENDED**
         v.                                     **COMPLAINT BY DEFENDANTS STEVE**
17                                              **BRISCOE AND NEXT LEVEL SPORTS**
    SADDLEBACK VALLEY UNIFIED SCHOOL            **& ACADEMICS FOUNDATION**
18  DISTRICT; CALIFORNIA
    INTERSCHOLASTIC FEDERATION; NEXT            Date:  September 11, 2025
19  LEVEL SPORTS & ACADEMICS; and ISAHIA        Time:  2:00 p.m.
    SANDOVAL; EDWARD WONG; TRICIA               Ctrm:  6
20  OSBORNE; CHAD JOHNSON; STEVE                Judge: Hon. Jon S. Tigar
    BRISCOE AND DOES 1-20 in their individual
21  and official capacities.
22
              Defendants.
23

24

25

26

27

28

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................................1

II. ARGUMENT ..............................................................................................................................2

    A. STANDARDS ON A MOTION TO DISMISS ...............................................................2

    B. PLAINTIFFS' NEGLIGENCE-BASED CLAIMS AGAINST BRISCOE AND NEXT LEVEL SHOULD BE DISMISSED ................................................................2

    C. PLAINTIFFS' INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM AGAINST BRISCOE AND NEXT LEVEL SHOULD BE DISMISSED ..........................5

    D. PLAINTIFFS' UNJUST ENRICHMENT CLAIM AGAINST BRISCOE AND NEXT LEVEL SHOULD BE DISMISSED ................................................................7

    E. PLAINTIFFS' CIVIL RIGHTS CONSPIRACY CLAIM AGAINST BRISCOE AND NEXT LEVEL SHOULD BE DISMISSED ................................................................9

III. CONCLUSION ........................................................................................................................13

# TABLE OF AUTHORITIES

**Cases**

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)......................................................................................................2, 10

*Burgess v. Superior Court*,
   2 Cal. 4th 1064 (1992).........................................................................................................4

*California Federal Bank v. Matreyek*,
   8 Cal. App. 4th 125 (1992)..................................................................................................9

*Carlsen v. Koivumaki*,
   227 Cal. App. 4th. 879 (2014).............................................................................................5

*Christensen v. Super. Ct.*,
   54 Cal. 3d 868 (1991).........................................................................................................7

*County of San Bernardino v. Walsh*,
   158 Cal. App 4th 533 (2007)..............................................................................................9

*De Rocha Express, Inc. v. Combined Resources, Inc.*,
   2024 WL 4504536 (Oct. 15, 2024).....................................................................................2

*Great Western Mining & Mineral Co. v. Fox Rothschild LLP*,
   615 F.3d 159 (3d Cir. 2010)..............................................................................................10

*Hassman v. Rabbinical Assembly of America*,
   2016 WL 6635622 (C.D. Cal. Nov. 9, 2016).....................................................................6

*Heyne v. Metropolitan Nashville Public Schools*,
   655 F.3d 556 (6th Cir. 2011).............................................................................................11

*Hudacko v. Regents of University of California*,
   2024 WL 3908113 (N.D. Cal. Aug. 20, 2024)................................................................4, 7

*Hughes v. Pair*,
   46 Cal. 4th 1035 (2009).......................................................................................................6

*Jutrowski v. Township of Riverdale*,
   904 F.3d 280 (3d Cir. 2018)..............................................................................................11

*Meyer v. County of San Diego*,
   2021 WL 4924836 (S.D. Cal. Oct. 21, 2021)..................................................................5, 6

*Nibbi Bros., Inc. v. Home Fed. Sav. & Loan Ass'n*,
   205 Cal. App. 3d 1415 (1988).............................................................................................9

*Pangburn v. Culbertson*,
   200 F.3d 65 (2d Cir. 1999)................................................................................................11

*Rodriguez v. City of New York*,
   590 F. Supp. 3d 518 (E.D.N.Y. 2022).........................................................................11, 12

*Shirazi v. Oweis*,
    2022 WL 445763 (N.D. Cal. Feb. 14, 2022) ................................................................................ 10

*Siefert v. Hamilton County*,
    951 F.3d 753 (6th Cir. 2020) ............................................................................................ 10, 11

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) ..................................................................................................... 2

## I. INTRODUCTION

Plaintiffs oppose the motion to dismiss filed by Briscoe and Next Level Sport & Academics Foundation. But their opposition mostly acts as though this Court's order dismissing the prior version of Plaintiff's claims against Briscoe and Next Level did not exist. Plaintiffs' opposition does not explain what is new about the Second Amended Complaint ("SAC") or how any new allegations have fixed the deficiencies identified in this Court's prior order.

To the extent that Plaintiffs acknowledge this Court's order at all, they frame their request as one for "reconsideration." (ECF No. 103 at 11-12.) Rather, than pointing to new allegations of fact, Plaintiffs mostly seek to reargue issues that the Court has already decided.

It is telling that Plaintiffs do not focus on what is new about the SAC. It is because the SAC is hardly different from the prior complaint in any way that would be relevant to the claims against Briscoe and Next Level; the SAC makes all the same allegations and asserts all the same claims as the prior complaint. Plaintiffs make no effort to deny that the key change in the factual allegations is that the SAC now alleges that Briscoe made one trip to Southern California to visit Phillip III when he learned that Phillip III's mother had died. (SAC, ¶¶ 81-86.) Plaintiffs argue that an unspecified "plan" must have been "developed" between Sandoval, Briscoe, and Johnson merely because the men were present in the same location for some unspecified time on a day when many others also came to the same house to try to see Phillip III, including Bell Jr. (SAC, ¶ 84.)

The SAC attaches a transcript of an apparently surreptitious recording of Coach Johnson made on Mission Viejo's campus, while Phillip III was nearby. But we showed in our opening brief why this recording does not support Plaintiffs' claims against Briscoe and Next Level. In response, Plaintiffs fail to even mention the recording in their opposition, much less to explain how it could support any claim against Briscoe or Next Level.

In short, the minimal and conclusory additions to the SAC about Briscoe are not enough to create a duty between Briscoe and Plaintiffs, to show a breach of any such duty, to show that Briscoe's alleged conduct was the cause of any interference in the relationship between Phillip III and his biological father, or to show that Briscoe engaged in some kind of "extreme and outrageous" conduct that could give rise to a claim for intentional infliction of emotional distress. Nor can the

conclusory allegation of a "plan" state a plausible claim that Briscoe joined Coach Johnson in a conspiracy to violate Plaintiffs' constitutional rights, as would be required to support Plaintiffs' new claim that Briscoe and Next Level were part of a Section 1983 civil rights conspiracy.

The Court should dismiss all the claims brought against Briscoe and Next Level, this time without leave to amend.

## II. ARGUMENT

### A. STANDARDS ON A MOTION TO DISMISS

Plaintiffs' opposition once again misstates the standard for evaluating a motion to dismiss. It cites a wide variety of old, pre-*Twombly* cases and specifically quotes the standard derived from *Conley v. Gibson* that was retired in *Twombly*. (ECF No. 103 at 9-10.) Specifically, Plaintiffs' opposition says: "A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims that would entitle the plaintiff to relief." (ECF No. 103 at 9 (citing *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

Nearly twenty years ago, the United States Supreme Court stated that the "'no set of facts' language has been questioned, criticized, and explained away long enough," and that the phrase has "earned its retirement" and is "best forgotten as an incomplete, negative gloss on an accepted pleading standard." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 562-63 (2007); *see also De Rocha Express, Inc. v. Combined Resources, Inc.*, Case No. 24-cv-02037-JST, 2024 WL 4504536, at *2 & n.2 (Oct. 15, 2024). Although Plaintiffs' opposition at times pays lip service to the correct standard and cites *Twombly* and *Iqbal*, the pre-*Twombly* reasoning appears to infect Plaintiffs' minimalist view of their pleading burden. Worse still, Plaintiffs consistently fail to provide citations to the SAC for the arguments they make in the argument section of their opposition.

Under the governing plausibility standard, Plaintiffs' claims against Briscoe and Next Level should be dismissed.

### B. PLAINTIFFS' NEGLIGENCE-BASED CLAIMS AGAINST BRISCOE AND NEXT LEVEL SHOULD BE DISMISSED

Plaintiffs once again fail to cite any case that is remotely similar to the facts or legal theory alleged in the SAC, which seeks to hold Briscoe and Next Level responsible for not ensuring

2
DEFENDANTS STEVE BRISCOE AND NEXT LEVEL'S REPLY ISO MOTION TO DISMISS
Case No.: 4:24-cv-05545-JST

Samantha and Phillip III complied with a child custody order directing Phillip III to return to Sacramento and enroll at his former high school. The few cases that are cited demonstrate what is missing here and why Briscoe and Next Level did not owe Plaintiffs a duty of care, breach any such duty, or engage in conduct that was a substantial factor in causing any harm to Plaintiffs. Plaintiffs also admit that their negligent infliction of emotional distress claim rises or falls with their negligence claims. (ECF No. 103 at 15.)

To the extent Plaintiffs acknowledge this Court's ruling regarding Briscoe and Next Level's prior motion to dismiss at all, they frame their request as one for "reconsideration." (ECF No. 103 at 11-12.) They do not focus on any new allegations in the SAC that supposedly make a difference in plausibly showing that Plaintiffs have alleged the elements of a negligence claim against Briscoe or Next Level. Instead, they retread old ground. They argue that the supposed misrepresentation that Briscoe was Phillip III's "uncle," which the Court already addressed (ECF No. 85 at 15-16), is "critical" and "warrants this Court's reconsideration." (ECF No. 103 at 11.) They argue that Briscoe's testimony during custody proceedings, which the Court already addressed (ECF No. 85 at 16), is what creates a "special relationship" with Bell Jr. (ECF No. 103 at 11.) They say it is inaccurate to say that Briscoe's "relationship was with Phillip III—not Plaintiffs," but they fail to acknowledge that this is a direct quote from the Court's order. (ECF No. 85 at 16.)

No new allegations in the SAC have corrected the prior complaint's deficiencies as to the negligence-based claims against Briscoe or Next Level. The thrust of the new allegations in the SAC is that Briscoe, and many others, traveled to visit Phillip III when they learned that his mother had died. (SAC, ¶¶ 78-84.) The SAC does not allege any interactions between Briscoe and any Plaintiff during that trip. Like before, the SAC alleges that it was Phillip III's step-father Isaiah Sandoval, not Briscoe, who supposedly "coerced" Phillip III not to open the door for his biological father. (SAC, ¶ 84.) But this time, the SAC makes the conclusory allegation that Sandoval was "following the plan developed between" Sandoval, Briscoe, and Chad Johnson, the head football coach for Mission Viejo. (SAC, ¶ 84.) Plaintiffs do not allege that Briscoe was living with Phillip III, was providing him a place to stay, was transporting him anywhere, or enrolled him at Mission Viejo. And the one visit to Southern California alleged in the SAC is before Plaintiffs sent their cease-and-desist letter to

Briscoe. (SAC, ¶¶ 104-105.) The minimal and conclusory additions in the SAC are not enough to create a duty between Briscoe and Plaintiffs.

Plaintiffs say that "[u]nder California law, interference with parental rights is a cognizable harm that gives rise to a duty of care." (ECF No. 103 at 11.) They cite *Burgess v. Superior Court*, 2 Cal. 4th 1064 (1992), for this point. But, as we previously explained, *Burgess* involved a birth injury. *Id.* at 1070. The court held that both the mother was not a "bystander" with respect to the injury to her child during labor and delivery but was herself owed a duty because she was in a physician-patient relationship with the obstetrician. *Id.* at 1078. Here, Plaintiffs do not allege that they were clients of Briscoe or Next Level or that they had any relationship whatsoever with Briscoe and Next Level. Instead, they appear to argue that adults who interact with a seventeen-year-old athlete should always, automatically have a duty to all biological or custodial parents of that child, even those living hundreds of miles away who did not have day-to-day contact with the athlete or the trainer. (ECF No. 103 at 10.) No case holds that.

Briscoe and Next Level cited the most factually similar case in their opening brief: *Hudacko v. Regents of University of California*, 2024 WL 3908113 (N.D. Cal. Aug. 20, 2024). (ECF No. 88 at 11.) Plaintiffs' only effort to distinguish that case is to say that it involved a "disagreement between parents." (ECF No. 103 at 11.) This case is likewise about a disagreement between parents. The SAC is full of allegations about Briscoe's alleged conduct while Phillip III's mother was alive. Indeed, the only thing the SAC alleges that Briscoe did after Samantha's death was to make one trip to Southern California to be with Phillip III at a location known to Bell Jr. and where Bell Jr. also appeared (and brought the police) on the same day. (SAC, ¶¶ 78-84; SAC, Ex. E at 3:24-4:3.) *Hudacko* is fundamentally inconsistent with Plaintiffs' theory that interaction with a seventeen-year-old athlete automatically creates a special relationship with all biological or custodial parents of the athlete.

Plaintiffs also fail to address the element of causation. The lack of allegations to plausibly show causation was the primary basis of the Court's prior ruling dismissing the negligence-based claims against Briscoe and Next Level. (ECF No. 85 at 16.) The Court ruled that it was implausible that Briscoe's alleged actions were the proximate cause of Plaintiffs' alleged injuries both because the school district knew about the family law custody order and because Briscoe lived 400 miles

away in Northern California. (*Id.*) Plaintiffs' opposition does not provide any response to these points or make any effort to show how new allegations in the SAC should change the result. Thus, even assuming that Plaintiffs have adequately pleaded each of the other negligence elements (they have not), the SAC does not allege sufficient facts to show that either Briscoe's or Next Level's conduct was a substantial factor in bringing about Plaintiffs' alleged harm.

### C. PLAINTIFFS' INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM AGAINST BRISCOE AND NEXT LEVEL SHOULD BE DISMISSED

Plaintiffs agree, as they must, that extreme and outrageous conduct is required to support an intentional infliction of emotional distress claim against Briscoe or Next Level. (ECF No. 103 at 16.) Plaintiffs fail to cite any case that supports the idea that their allegations regarding supposed acts by Briscoe or Next Level could meet the legal definition of "outrageous" conduct. Indeed, Plaintiffs do not cite any cases in support of their intentional infliction of emotional distress claim that were not raised in Briscoe's and Next Level's motion to dismiss.

Plaintiffs appear to argue for a rule that any act that somehow contributes to an "interruption of a familial relationship" automatically constitutes "extreme and outrageous conduct" and absolves them of any need to allege facts showing severe emotional injury because such an act "cut[s] to the heart of sacred bonds." (ECF No. 103 at 17.) No case supports that rule and certainly not the cases cited by Plaintiffs.

*Carlsen v. Koivumaki*, 227 Cal. App. 4th. 879, 896 (2014) involved a claim for injuries suffered when the plaintiff fell off a cliff. *Id.* at 882-83. He sued his two companions for bringing him to the edge of the cliff while he was highly intoxicated. *Id.* The court affirmed the trial court's grant of summary adjudication on the intentional infliction of emotional distress claim. *Id.* at 897. This case provides no support for Plaintiffs' intentional infliction of emotional distress claim against Briscoe or Next Level.

*Meyer v. County of San Diego*, 2021 WL 4924836, at *2, 11 (S.D. Cal. Oct. 21, 2021) involved interruptions in familial relations, but the court dismissed the claim for intentional infliction of emotional distress. There, the court found plaintiffs had not adequately alleged severity of distress even though they had been removed from their minor child for many months, pending the outcome of

5
DEFENDANTS STEVE BRISCOE AND NEXT LEVEL'S REPLY ISO MOTION TO DISMISS
Case No.: 4:24-cv-05545-JST

juvenile dependency proceedings, while the child was hospitalized and subjected to various tests and medical procedures, including an "invasive swallow test," without their consent. 2021 WL 4924836, at *2, 11. The dismissal was not simply based on the complaint's "scattershot and generalized allegations," as Plaintiffs claim. (ECF No. 103 at 16.) The court also found that the plaintiffs had not "adequately alleged the severity of their distress," even though the complaint alleged the plaintiffs suffered physical and emotional distress including "mental anguish, anxiety, worry, shock, grief, nervousness, and humiliation." *Id.* at *11. This was not enough to meet the legal standard. "Severe emotional distress means emotional distress of such substantial quality and enduring quality that no reasonable person in a civilized society should be expected to endure it." *Id.* (quoting *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009)). The court found the allegations of injury in *Meyer* to be insufficient under that standard, even though those allegations were far more detailed than any allegations contained in the SAC, which simply provides the conclusory allegations that Plaintiffs "sustained mental and emotional injuries" or "sustained pecuniary loss resulting from the loss of comfort, society, attention, and services." (SAC, ¶ 188.) Plaintiffs' allegations do not meet the relevant standard. *See*, *e.g.*, *Hughes*, 46 Cal. 4th at 1050 (plaintiff's allegations of "discomfort, worry, anxiety, upset stomach, concern, and agitation" after sexually harassing comments were insufficient to support intentional infliction of emotional distress claim).

*Hassman v. Rabbinical Assembly of America*, 2016 WL 6635622 (C.D. Cal. Nov. 9, 2016) likewise involved interruptions in familial relations. There, a divorce judgment had awarded sole legal and physical custody to a father and gave the mother no custody. *Id.* at *1. The plaintiff claimed that because she had advised the various defendants of the "invalidity of the Divorce Judgment" they had a duty to help her "reestablish a relationship with her children." *Id.* at *6. Just as those defendants did not have a duty to help overturn the divorce judgment and did not engage in outrageous conduct by failing to try, Briscoe and Next Level did not have a duty to enforce a family court order to which they were not parties and did not engage in outrageous conduct even if they failed to try to force Phillip III to follow the order and go with his biological father (after the police refused to force Phillip III to talk with or leave with his biological father).

The Court already ruled that the prior complaint did "not plausibly allege that Briscoe's alleged conduct caused the injuries alleged or was wrongful, let alone 'extreme and outrageous.'" (ECF No. 85 at 19.) The only thing that has changed is that Plaintiffs now allege that Briscoe made one trip to Southern California to visit Phillip III when his mother died, at the same location that Bell Jr. knew about and came to. (SAC, ¶¶ 79-86.) Plaintiffs do not allege any interactions with Briscoe during that trip or provide any details about what advice or "pressure" Briscoe allegedly gave to Phillip III while he was there. In any event, giving advice about where to play football in high school or college is not the type of extreme and outrageous conduct that exceeds the bounds usually tolerated in a civil society, even if Phillip III or his mother made decisions (whether based on the advice or not) that violated a child custody order.

Moreover, providing Phillip III advice about where to play football is not sufficient to give Plaintiffs a valid claim for intentional infliction of emotional distress because Briscoe's services were not provided to Plaintiffs or intentionally directed at them. *See Christensen v. Super. Ct.*, 54 Cal. 3d 868, 903 (1991) ("It is not enough that the conduct be intentional and outrageous. It must be conduct directed at the plaintiff, or occur in the presence of a plaintiff of whom the defendant is aware."). Plaintiffs offer no response to this point or the citation to *Christensen*. Because Plaintiffs have not alleged (and cannot allege) that either Briscoe or Next Level directed "outrageous" conduct at them, their claims for intentional infliction of emotional distress should be dismissed without leave to amend.

Nothing Briscoe or Next Level allegedly did in providing football mentoring services to Samantha and Phillip III rises anywhere close to the level of extreme and outrageous conduct. The Court should find that the alleged conduct cannot be "outrageous" as a matter of law and dismiss the intentional infliction of emotional distress claim without leave to amend. *See Hudacko*, 2024 WL 3908113, at *15.

### D. PLAINTIFFS' UNJUST ENRICHMENT CLAIM AGAINST BRISCOE AND NEXT LEVEL SHOULD BE DISMISSED

Plaintiffs argue that their unjust enrichment claim should survive because Briscoe "was uniquely situated to profit off of" Phillip III. (ECF No. 103 at 17.) But this argument is not backed up

by non-conclusory allegations in the SAC. The SAC says that Sandoval "brokered a deal" with Briscoe that facilitated Phillip III playing football at Bishop Alemany High School. (SAC, ¶ 42.) They claim that Briscoe and Next Level received unspecified "compensation for this transaction." (SAC, ¶ 44.) After "an unsuitable month at Bishop Alemany," Plaintiffs allege that Phillip III and his mother and step-father "moved again" and enrolled Phillip III at Mission Viejo High School. (SAC, ¶ 48.) Plaintiffs do not allege or argue that Briscoe had any role in the decision to switch from Bishop Alemany to Mission Viejo or that another "deal" or "transaction" was "brokered" at this time or that Briscoe or Next Level received any compensation in connection with the decision to move again or attend Mission Viejo. To the extent that Plaintiffs' opposition now talks about Briscoe's supposed involvement, with Phillip III's mother, in negotiations regarding money Phillip III "was offered from colleges in NIL to play football" (ECF No. 103 at 17), there are no such allegations in the SAC and no citation to any portion of the SAC is provided in the opposition.

It is fatal to Plaintiffs' claim that Briscoe or Next Level were unjustly enriched that the only allegations in the SAC regarding supposed compensation to Briscoe relate to playing football at Bishop Alemany. It means that the only allegation of compensation (which is also false, though we don't press its falsity as the basis for granting this motion to dismiss) involves conduct from before Phillip III's mother died, while Phillip III was living with his mother, and before any family court order directed Phillip III to return to Sacramento. (SAC, ¶¶ 69-77, 81 (Samantha died on or about Thursday, June 27, 2024, approximately 9 months after her move to Southern California); SAC, Ex. D (November 14, 2023 family court order; SAC, ¶ 60 (describing family court order).)

Apparently transferring their focus to the period after Phillip III's mother's death, Plaintiffs also say that, for Briscoe and Next Level, "fraud and coercion were their methods of control over" Phillip III. (ECF No. 103 at 17.) The SAC, however, draws no connection between any such alleged "fraud and coercion" and the supposed "compensation" in connection with a "transaction" many months earlier to attend a completely different school—a plan that did not work out and was abandoned after only one month. (SAC, ¶ 48.) The opposition also concedes that Briscoe and Next Level "did not directly deprive [Plaintiffs] of money." (ECF No. 103 at 17.)

The Court dismissed the prior complaint because it "failed to allege facts sufficient to show any financial benefit retained by [Briscoe or Next Level] would be unjust." (ECF No. 85 at 21 (citing *County of San Bernardino v. Walsh*, 158 Cal. App 4th 533, 542-43 (2007) (explaining that unjust enrichment focuses "on the wrongdoer's enrichment").) Neither the SAC nor Plaintiffs' opposition does anything to address these deficiencies. The cases cited by Plaintiffs are perfectly consistent with the Court's prior ruling. *See California Federal Bank v. Matreyek*, 8 Cal. App. 4th 125, 132 (1992) ("The recipient of the benefit is liable only if the circumstances are such that, as between the two persons, it is unjust for the recipient to retain it."); *Nibbi Bros., Inc. v. Home Fed. Sav. & Loan Ass'n*, 205 Cal. App. 3d 1415, 1422 (1988) ("It must ordinarily appear that the benefits were conferred by *mistake, fraud, coercion* or *request*; otherwise, though there is enrichment, it is not unjust.") (citation omitted). And the SAC doesn't contain any new facts that would show unjust enrichment here. Thus, the Court should dismiss Plaintiff's eighth cause of action for unjust enrichment as against Briscoe and Next Level without leave to amend.

### E.  PLAINTIFFS' CIVIL RIGHTS CONSPIRACY CLAIM AGAINST BRISCOE AND NEXT LEVEL SHOULD BE DISMISSED

Briscoe and Next Level showed in their opening brief that Plaintiffs' addition of a new defendant and a new cause of action ignored the Court's instructions that leave to amend was granted "solely to cure the deficiencies identified" in the Court's order. (ECF No. 85 at 22.) Plaintiffs offer no response in their opposition to Briscoe's and Next Level's motion to dismiss. Responding to a similar argument made by the school district defendants, Plaintiffs say the Court's order was "silent as to adding new causes of action." (ECF No. 104 at 16.) Plaintiffs also try to justify their decision to make these amendments without seeking the Court's leave by arguing that a "critical" part of the SAC is the transcript of an apparently surreptitious (and thus, in California, illegal) recording of Mission Viejo football coach Chad Johnson on Mission Viejo's campus, while Phillip III was nearby. (ECF No. 104 at 16.) Yet, Plaintiffs fail to cite the transcript at all in their opposition to Briscoe's and Next Level's motion to dismiss, even though Briscoe and Next Level cited it in their motion to dismiss. Given the Court's clear instructions, Plaintiffs should not have been permitted to add new defendants and new causes of action without seeking leave to amend.

In any event, the Court should dismiss the Section 1983 civil rights conspiracy claim as against Briscoe and Next Level. The parties agree on the elements of such a claim. (ECF No. 88 at 18; ECF No. 103 at 18.) Plaintiffs also admit that Briscoe is not a "state actor." (ECF No. 103 at 20.) Thus, among other things, Plaintiffs were required to allege facts to plausibly show there was a "meeting of the minds" between Briscoe and Chad Johnson (the only state actor alleged to have had any contact with Briscoe).

Plaintiffs appear to argue that their pleading burden to plausibly show a "meeting of the minds" requires them merely to allege only that the supposedly conspiring parties had "some sort of contact with each other." (ECF No. 103 at 18.) That cannot be enough. For example, in *Shirazi v. Oweis*, No. 5:21-cv-00136-EJD, 2022 WL 445763 (N.D. Cal. Feb. 14, 2022), the police officers were all present at the protest, but the court still found that their presence in the same place combined with allegations that they "acted in concert," "conspired," "took concrete steps to enter into an agreement," and "committed specific overt acts" constituted "conclusory allegations" that were inadequate. *Id.* at *5-6.

Likewise, the out-of-circuit cases cited by Plaintiffs do not support the rule that Plaintiffs seek. Indeed, many of them did not find sufficient allegations to support a conspiracy claim. In *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159 (3d Cir. 2010), for example, the Third Circuit affirmed the dismissal of a Section 1983 conspiracy claim without leave to amend. *Id.* at 178-80. The court refused to consider "conclusory allegations" that there was a "corrupt conspiracy," "an agreement," or "an understanding in place between the Defendants." *Id.* at 178. Instead, the court held that *Twombly* requires "enough factual information (taken as true) to suggest an agreement was made" or "plausible grounds to infer an agreement." *Id.* (quoting *Twombly*, 550 U.S. at 556). The court affirmed the dismissal because such required, non-conclusory allegations of fact were missing.

*Siefert v. Hamilton County*, 951 F.3d 753 (6th Cir. 2020) also affirmed the dismissal of a Section 1983 conspiracy claim. That case involved a transgender minor who was kept in a hospital over the parents' objections after expressing suicidal ideation. *Id.* at 757. Although the hospital and county officials "worked together" the court found the complaint's allegations insufficient to show

they had "agreed to do anything—let alone agreed to violate constitutional rights." *Id.* at 768. ("But there are no facts in the complaint alleging that any such agreement existed. And no facts suggest that the parties had an objective to deprive the Sieferts of their constitutional rights.") Courts routinely hold such conclusory allegations to be insufficient. *See*, *e.g.*, *Heyne v. Metropolitan Nashville Public Schools*, 655 F.3d 556, 563-64 (6th Cir. 2011) (allegations that defendants "conspired among themselves … to knowingly and intentionally deny [plaintiff's] constitutional rights" were legal conclusions "masquerading as factual allegations" and were not sufficient) (citing and quoting several other cases reaching the same result).

*Jutrowski v. Township of Riverdale*, 904 F.3d 280 (3d Cir. 2018), involved claims of excessive force brought against a group of police officers that had kicked a man in the face, "breaking his eye socket," during an arrest. *Id.* at 284. Even there, the court affirmed summary judgment for the police officers as to a claim for conspiracy before the arrestee was kicked. *Id.* at 293. That was because the plaintiff did not proffer sufficient evidence to create a triable issue of fact as to whether the officers "reached an[y] illicit agreement prior to the alleged kick." *Id.* Because that assertion of an agreement was "not supported by any specific facts in the record," the court applied the rule that "[b]are assertions, conclusory allegations, or suspicions" will not suffice. *Id.* at 295-96 (citations omitted). The court allowed a claim to continue only as to a separate alleged conspiracy to cover up what happened during the arrest; that claim was permitted to go forward because it was backed up by much more than conclusory allegations. *Id.* at 296-98.

Similarly, in the few other cases that Plaintiffs cite that allowed some Section 1983 conspiracy claim to go forward, the courts also recognized the rule that "conclusory allegations" are insufficient. *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999); *Rodriguez v. City of New York*, 590 F. Supp. 3d 518, 548 (E.D.N.Y. 2022). Moreover, *Pangburn* was a pre-*Twombly* case that relied expressly on the now-retired "no set of facts" formulation derived from *Conley v. Gibson*. *Pangburn*, 200 F.3d at 71-72. *Pangburn* and *Rodriguez* also involved alleged egregious conduct by law enforcement officers that bears no relationship to the allegations against Briscoe here. Critically, in *Rodriguez*, the plaintiff alleged that the police officers forced him and another man to falsely implicate him in a crime and failed to disclose the coercive methods to prosecutors. 590 F. Supp. 3d

11
DEFENDANTS STEVE BRISCOE AND NEXT LEVEL'S REPLY ISO MOTION TO DISMISS
Case No.: 4:24-cv-05545-JST

at 548. Thus, unlike here, the plaintiff in *Rodriguez* personally observed the defendants working together and talking together. In contrast, Plaintiffs do not allege that any of them observed Johnson and Briscoe meeting together or talking together. They allege that Johnson and Briscoe were in the same place only because Johnson told them so, in the context of a recorded conversation where he never says that he entered into any agreement with Briscoe to violate Plaintiffs' constitutional rights. (SAC, ¶ 81; SAC, Ex. E.)

Here, the conclusory allegations in the SAC are not sufficient to plausibly allege a "meeting of the minds" between Briscoe and Johnson under *Twombly*. The Court previously ruled that Plaintiffs' allegations did not "plausibly demonstrate that Briscoe's alleged conduct" was "wrongful." (ECF No. 85 at 19; *see also* ECF No. 85 at 16.) The thrust of the new allegations in the SAC is that Briscoe, and many others, traveled to visit Phillip III when they learned that his mother had died. (SAC, ¶¶ 78-84.) Phillip III's location was not secret from Plaintiffs at this time; Bell Jr. went to the same house and Plaintiffs sent the police to do a "welfare check," but the police refused to make Phillip III talk with or leave with his biological father. (SAC, ¶¶ 80-81; SAC, Ex. E at 3:19-4:3; ECF No. 103 at 20 (not denying that police came to house, but claiming that Bell Jr. did not "demand" that Phillip III leave with him).)

The SAC makes the conclusory allegation that, during this trip, an unspecified "plan" must have been "developed" between Sandoval, Briscoe, and Johnson merely because they were present in the same location for some unspecified time. (SAC, ¶ 84.) The SAC, however, does not plausibly allege what the plan was or any facts showing that both Briscoe and Johnson (the only potential state actor alleged to have interacted with Briscoe) agreed to any such plan. Indeed, the SAC alleges only one instance where Johnson and Briscoe ever met,[1] and the fact that both men went to see Phillip III when they learned that his mother had died does not plausibly give rise to an inference of a conspiracy or any nefarious conduct. To the contrary, the SAC itself includes all kinds of facts to undercut the plausibility of any allegation that Johnson and Briscoe were working together. The SAC

---

[1] Plaintiffs' opposition argues that "the parties to the conspiracy remained in contact" after being at the same house on June 27, 2024. (ECF No. 103 at 21.) But Plaintiffs do not cite to any allegations in the SAC to support this point.

does not allege any connection between Briscoe and the house where Phillip III was staying and it doesn't allege any details about how Briscoe supposedly pressured Phillip III not to speak to his biological father. Plaintiffs' secret recording of Johnson doesn't indicate a civil rights conspiracy or show that Briscoe and Johnson reached an agreement for some nefarious purpose. Read in context, the recording shows that Johnson tried hard to get Phillip III to talk to his biological father, but was not in a position where he could force Phillip III to do so. (SAC, Ex. E.) It indicates that Johnson and Briscoe were both present at the house where Phillip III was staying on June 27, 2024, but it provides no support for the conclusory allegation that Briscoe and Johnson entered into a conspiracy to convince Phillip III not to talk with his biological father or to somehow pressure Phillip III not to comply with the family court order in the weeks before he turned 18. (SAC, ¶ 81; SAC, Ex. E.) The Court should rule that these conclusory allegations are not enough to state a plausible claim that Briscoe joined a conspiracy with Johnson to violate Plaintiffs' constitutional rights.

### III. CONCLUSION

For these reasons, and the reasons stated in our opening brief, the Court should dismiss the claims asserted against Briscoe and Next Level, without leave to amend, because the facts alleged fail to state any claim against Briscoe or Next Level and it would be futile to allow another amendment here.

Dated: August 19, 2025

Respectfully submitted,

By: /s/Kevin Calia
    Kevin Calia

ILLOVSKY GATES & CALIA LLP
Kevin Calia
Eva Schueller

*Attorneys for Defendants Steve Briscoe and Next Level Sports & Academics Foundation*

13
DEFENDANTS STEVE BRISCOE AND NEXT LEVEL'S REPLY ISO MOTION TO DISMISS
Case No.: 4:24-cv-05545-JST