UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHILLIP BELL JR., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SADDLEBACK VALLEY UNIFIED SCHOOL DISTRICT, et al.,<br><br>Defendants. | Case No. 24-cv-05545-JST<br><br>**ORDER RESOLVING MOTIONS TO DISMISS**<br><br>Re: ECF No. 88, 89, 90 |

## I. BACKGROUND[1]

Because the facts are well-known to the parties and the Court has summarized the background of this action in detail in its prior order, ECF No. 85, the Court will not repeat them here in full. In sum, this case concerns allegations by Plaintiffs Phillip Bell Jr. ("Bell Jr."), the father of Phillip Bell III ("Phillip III"); Maria Lorna Barnes, the maternal grandmother of Phillip III; and Anthony Barnes, the maternal grandfather of Phillip III. They contend that Defendants worked individually and in concert to interfere with Plaintiffs' familial relationship with Phillip III, including interfering with the enforcement of a court custody order and arranging for the transportation and housing of Phillip III without Plaintiffs' consent, to further Defendants' own gain surrounding Phillip III's successes as an emerging high school football talent.

The Defendants are Saddleback Valley Unified School District Board ("Saddleback District"); California Interscholastic Federation ("CIF"); Klutch Sports Group ("Klutch"); Next Level Sports & Academics ("Next Level"); Steve Briscoe, the owner and operator of Next Level;

---

[1] For the purpose of resolving Defendants' motions to dismiss, the Court accepts as true the allegations in the second amended complaint, ECF No. 86 ("SAC"). *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

Isaiah Sandoval; Edward Wong, the Board President of Saddleback District at all relevant times; Tricia Osborne, the principal of Mission Viejo High School ("Mission High"); and Chad Johnson, the head football coach of Mission High.

On June 16, 2025, the Court granted in part and denied in part Defendants' motions to dismiss. ECF No. 85. Plaintiffs filed their SAC on July 1, 2025. ECF No. 86.

Before the Court are motions to dismiss the SAC filed by Saddleback District, Osborne, Wong, and Johnson (collectively, "District Defendants"); CIF; and Next Level and Briscoe, ECF Nos. 88, 89, 90. The Court will grant the motions by CIF and Next Level and Briscoe. It will grant the District Defendants' motion in part and deny it in part.

## II. JURISDICTION

This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1367.

## III. LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal "is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. While this standard is not "akin to a 'probability requirement' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In determining whether a plaintiff has met the plausibility requirement, a court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most

2

favorable" to the plaintiff. *Knievel*, 393 F.3d at 1072.

## IV. DISCUSSION

### A. *Monell* Liability Under Section 1983

A local government may be held "liable for an injury under § 1983 under three possible theories." *Rodriguez v. County of Los Angeles*, 891 F.3d 776, 802 (9th Cir. 2018). Under the first, "a local government may be liable if 'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflict[ed] the injury.'" *Id.* (alteration in original) (quoting *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978)). Second, a local government's failure to train its employees may rise to the level of actionable "deliberate indifference" where "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)). Finally, a Section 1983 plaintiff may prevail where "the individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it." *Id.* at 802–03 (quoting *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1097 (9th Cir. 2013)). Each theory of liability is a separate legal theory that will involve different methods for proving liability. *See Hartzell v. Marana Unified Sch. Dist.*, 130 F.4th 722, 735 (9th Cir. 2025) (collecting cases treating the different *Monell* theories as separate).

#### 1. Saddleback District

Plaintiffs allege municipal liability against Saddleback District based on all three *Monell* theories. The Court addresses each in turn.

First, Plaintiffs have not added any factual allegations regarding any official policy of the Saddleback District that led to the alleged interference with familial relations. Thus, as the Court found in its previous order, Plaintiffs' conclusory allegations that Osborne and Johnson "acted pursuant to an expressly adopted official policy to ignore the [Saddleback District] bylaws and 'put the child first' which was a widespread or longstanding practice or custom of the [Saddleback

3

District]," ECF No. 86 ¶ 152, fail to state sufficient facts to show that any alleged policy was the moving force behind the alleged constitutional violation. *See AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (to state a *Monell* claim plaintiff must allege facts to support that a policy or custom existed); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (quotation marks and citation omitted) (requiring "a widespread practice . . . so permanent and well settled to constitute a custom" to state a *Monell* claim).

Second, Plaintiffs' failure-to-train theory asserts only threadbare and conclusory allegations. Plaintiffs have not alleged any pattern of constitutional violations by untrained Saddleback District employees. *See Juricich v. Cnty. of San Mateo*, No. 19-cv-06413-WHO, 2020 WL 619840, at *4 (N.D. Cal. Feb. 10, 2020) (dismissing failure to train claim where the complaint "only provides factual allegations about the single incident [the plaintiff] experienced" and "still fails to specify the nature of the alleged policy, custom or practice that g[a]ve rise to [the] constitutional injury"). Nor have Plaintiffs identified any specific type of training or lack of training that could have prevented the alleged injury. *Sepehry-Fard v. Lee*, No. 20-cv-03585-EJD, 2021 WL 6113001, at *5 (N.D. Cal. Dec. 27, 2021) (dismissing failure to train claim because "[p]laintiff does not allege any facts from which the Court could infer *which* training practice caused his injuries").

Finally, Plaintiffs have not sufficiently stated a claim under their final policymaker theory. Plaintiffs' theory involves a hodgepodge of different allegations surrounding Mission High's vice principal being present at a conversation between Johnson and Bell Jr. Plaintiffs allege that in that conversation, Johnson admitted that he knew that Sandoval and Briscoe were "bad guys"— including saying that if Barnes were his sister, he would have killed Sandoval—yet failed to take any action to help reunite Bell III with Bell Jr. ECF No. 104 at 12 (citing ECF No. 86 ¶¶ 98–99). Plaintiffs thus argue that Johnson's statements demonstrated "not only knowledge of wrongful conduct but a conscious decision to condone and perpetuate it" and that the vice principal's presence ratified said conduct. *Id.*

As a preliminary matter, Plaintiffs have not provided any authority or explanation to support the contention that a vice principal could constitute a final policy or decision maker for

4

1  *Monell* purposes. *Mathews v. Abington Heights Sch. Dist.*, 2023 WL 2601917, at *9 (M.D. Pa.
2  Mar. 22, 2023) (finding that neither a school principal nor vice principal was "a final
3  policymaker whose conduct or knowledge may be imputed to the School District for *Monell*
4  purposes"). And allegations that the vice principal was merely present during the conversation are
5  insufficient to show ratification. *See Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999) ("A
6  policymaker's knowledge of an unconstitutional act does not, by itself, constitute ratification.
7  Instead, a plaintiff must prove that the policymaker approved of the subordinate's act. For
8  example, it is well-settled that a policymaker's mere refusal to overrule a subordinate's completed
9  act does not constitute approval."). Furthermore, Plaintiffs have not adequately explained how
10 any of the statements allegedly ratified reflect unconstitutional interference with Plaintiffs'
11 familial relation with Phillip III. At most, the cited conversation demonstrates that Johnson knew
12 that Sandoval and Briscoe wanted to influence Phillip III and keep him away from Plaintiffs. But
13 as explained in this Court's prior order, the District Defendants had no duty to act to help
14 Plaintiffs reconcile their relationship with Phillip III. And Plaintiffs otherwise have not cited any
15 factual allegation that a final policymaker in Saddleback District ratified the shuffling of Phillip III
16 between homes to hide him from Plaintiffs.
17 Accordingly, Plaintiffs have not adequately stated a *Monell* claim under any of their
18 theories of liability.

19  **2.  CIF**

20 Plaintiffs similarly assert that CIF is liable under *Monell* for having an official policy to
21 ignore CIF rules and "put the child first" and for not having adequate training policies to prevent
22 violations of the law by its employees. *See* ECF No. 86 ¶¶ 196–207. CIF argues that Plaintiffs'
23 *Monell* claims against it should be dismissed because—as in the FAC—Plaintiffs have failed to
24 sufficiently allege facts establishing any official CIF policy leading to the alleged constitutional
25 violations or any failure by CIF to train its employees. *See* ECF No. 89 at 7–11. The Court agrees
26 with CIF and finds that the SAC suffers from the same pleading infirmities as the FAC.
27 As the Court found in its previous order, ECF No. 85 at 11, Plaintiffs continue to fail to
28 allege sufficient facts that any official policy existed or that there were any other instances in

which such a policy was enforced to interfere with family relations to support an inference of "a widespread practice . . . so permanent and well settled [as] to constitute a custom." *City of St. Louis*, 485 U.S. at 127 (quotation marks and citation omitted). And while Plaintiffs allege in their opposition that CIF suffered from "systemic non-enforcement of its bylaws," ECF No. 102 at 15, merely saying so does not make it plausible. Indeed, Plaintiffs still at most describe a single incident—CIF's alleged decision not to act here when Plaintiffs alerted CIF about their guardianship dispute—and thus do not sufficiently allege any official policy or custom.

Plaintiffs similarly continue to raise only threadbare allegations to support their failure-to-train theory of liability against CIF. Plaintiffs have not alleged any pattern of constitutional violations by untrained CIF employees and have not demonstrated that this is the rare case where a particular "showing of 'obviousness' can substitute for the pattern of violations ordinarily necessary to establish municipal culpability." *Connick v. Thompson*, 563 U.S. 51, 63 (2011). Plaintiffs thus fail to state a failure-to-train claim against CIF. *See Juricich v. Cnty. of San Mateo*, 2020 WL 619840, at *4; *Sepehry-Fard v. Lee*, 2021 WL 6113001, at *5. Instead, Plaintiffs in their opposition cite to public reporting—not included in the SAC—on CIF's prior failure to enforce its student eligibility and NIL (name, image, and likeness) rules. *See* ECF No. 102 at 15–18. But even taking such allegations as true, Plaintiffs do not explain how CIF's failure to train its staff to enforce student eligibility requirements across its member schools is connected to the central injury at hand—the alleged interference with familial relations between Plaintiffs and Phillip III.

Accordingly, the Court grants CIF's motion to dismiss Plaintiffs' *Monell* claim against it without leave to amend.

**B.     Negligence**

Plaintiffs assert a claim of negligence and negligent infliction of emotional distress against Briscoe and Next Level. The Court analyzes the claims together, as "there is no independent tort of negligent infliction of emotional distress" under California law. *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 984-85 (1993) (citations omitted); *see also Burgess v. Superior Court*, 2 Cal. 4th 1064, 1072 (1992). "In order to establish negligence under California law, a plaintiff

6

1  must establish four required elements: (1) duty; (2); breach; (3) causation; and (4) damages."
2  *Ileto v. Glock Inc.*, 349 F.3d 1191, 1203 (9th Cir. 2003).

3        The Court previously found that Briscoe did not owe a duty to Plaintiffs based on the
4  allegations in the FAC. *See* ECF No. 85 at 15–16. Specifically, the Court found that as one of
5  Phillip III's trainers, Briscoe's relationship was with Phillip III—not Plaintiffs. *Id.* And Briscoe's
6  actions in helping to re-enroll Phillip III at Mission high by pretending to be Phillip III's uncle
7  were not shown to be the proximate cause of Plaintiffs' emotional distress. *Id.*

8        The SAC now primarily adds that Briscoe traveled to Southern California after Samantha
9  Barnes's death in order to influence—and did influence—Phillip III to deny Bell Jr. access to the
10 home Phillip III was staying in upon Bell Jr.'s visit. ECF No. 86 ¶¶ 82–87. Notably, Briscoe's
11 alleged visit took place before Plaintiffs sent Briscoe a cease-and-desist letter informing Briscoe of
12 the guardianship dispute. *See id.* ¶¶ 87–87, 105–08. The SAC does not allege that Briscoe
13 engaged in any affirmative wrongful conduct following the cease-and-desist letter beyond
14 allegations that Briscoe remained in communications with Phillip III and did not assist Plaintiffs in
15 reconnecting with Phillip III. Plaintiffs' other allegations that Briscoe "brokered a deal" to get
16 Phillip III to relocate to Southern California and that Briscoe interfered with familial relationships
17 by testifying against Bell Jr. in the custody hearing are similarly insufficient. ECF No. 103 at 13–
18 15. Phillip III relocated with his mother and legal guardian, and that relocation did not
19 proximately cause the injuries alleged in this lawsuit. And Briscoe's exercise of his free speech
20 rights to testify at a legal hearing did not constitute conduct "of the kind that public policy dictates
21 should give rise to legal liability." ECF No. 85 at 16; *see also Regents of Univ. of California v.
22 Superior Ct.*, 4 Cal. 5th 607, 664 (2018) ("A person who has not created a peril is not liable in tort
23 merely for failure to take affirmative action to assist or protect another unless there is some
24 relationship between them which gives rise to a duty to act." (quoting *Williams v. State of
25 California*, 34 Cal. 3d 18, 23 (1983))). Accordingly, the Court dismisses Plaintiffs' negligence
26 and negligent infliction of emotional distress claim against Briscoe and Next Level without leave
27 to amend.
28

### C. Intentional Infliction of Emotional Distress

The elements of a claim for intentional infliction of emotional distress ("IIED") are: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009) (quotation marks and citation omitted). "A defendant's conduct is 'outrageous' when it is so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id.* at 1050–51 (quotation marks and citation omitted).

As the Court explained in its prior order and above, the SAC does not plausibly demonstrate that Briscoe's alleged conduct caused the injuries alleged or was wrongful, let alone "extreme and outrageous." Accordingly, the Court grants Briscoe and Next Level's motion to dismiss Plaintiffs' IIED claim against them without leave to amend.

### D. Unjust Enrichment

#### 1. Johnson

The Court previously dismissed Plaintiffs' unjust enrichment claim against Johnson because the FAC did not allege that Johnson "personally retained any financial benefit through the sales of ticket and merchandise or the promotion of Mission High's football program." ECF No. 85 at 21. Plaintiffs now argue that the success of Mission High's football program—as built upon Bell III—brought Johnson "heightened prestige, marketability, and standing in the competitive coaching profession." ECF No. 104 at 15. While the SAC does not make those allegations directly, the Court finds that it is a reasonable inference to draw in favor of Plaintiffs that Johnson benefitted in his career from being able to coach a high-profile recruit and in turn develop a winning football program. *See City of Oakland v. Oakland Raiders*, 83 Cal. App. 5th 458, 478 (2022) (citing *Hirsch v. Bank of Am.*, 107 Cal. App. 4th 708, 722 (2003)) ("To confer a benefit . . . it is not essential that money be paid directly to the recipient by the party seeking restitution."). And because the Court has already found that Plaintiffs have adequately alleged that Johnson wrongfully interfered with their familial relationship with Phillip III, *see* ECF No. 85 at 8,

8

1  Plaintiffs have sufficiently stated a claim that allowing Johnson to retain the benefit of his
2  wrongful actions would be unjust. Accordingly, the Court declines to dismiss Plaintiffs' unjust
3  enrichment claim against Johnson at this stage.

### 2. Briscoe and Next Level

As explained in its prior order and above, Plaintiffs have failed to allege any wrongful conduct by Briscoe and Next Level leading to their injuries. Accordingly, the Court dismisses Plaintiffs' unjust enrichment claim against them because Plaintiffs have failed to allege facts sufficient to show that any financial benefit retained by them would be unjust. *See id.*

### E. Punitive Damages Against the District Defendants

The District Defendants argue that they cannot be held liable for punitive damages because they were agents and employees of the Saddleback District who were performing their official duties on behalf of the State. *See* ECF No. 90 at 18 at 19. Plaintiffs concede that punitive damages are not recoverable against a public entity and "do not oppose the dismissal of punitive damages claims against the District itself." ECF No. 104 at 17. But they argue that punitive damages remain available against the individual District Defendants who are being sued in their individual capacities. *Id.* at 17–18. The Court agrees with Plaintiffs.

The Eleventh Amendment bars damages actions against state officials acting in their official capacities because these actions are treated as suits against the state itself, *Hafer v. Melo,* 502 U.S. 21, 25 (1991), and the Amendment bars federal suits against states or their agencies. *See Regents of Univ. of Cal. v. Doe,* 519 U.S. 425, 429 (1997). Section 1983 does not abrogate the states' Eleventh Amendment immunity because a state or state agency is not a "person" for purposes of the statute. *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 65–66 (1989). Similarly, "[i]t is well-established that a school district cannot be sued for damages under [42 U.S.C.] § 1983." *C.W. v. Capistrano Unified Sch. Dist.*, 784 F.3d 1237, 1247 (9th Cir. 2015) (citing *Belanger v. Madera Unified School District,* 963 F.2d 248, 254 (9th Cir. 1992) (holding that in California, school districts are state agencies for purposes of Eleventh Amendment immunity, and concluding that school districts cannot be liable for damages under § 1983)).

However, the Eleventh Amendment does not bar damages actions against state officials

acting in their individual capacities. *Hafer*, 502 U.S. at 31; *see also Wells v. Bd. of Trs. of California State Univ.*, 393 F. Supp. 2d 990, 999 (N.D. Cal. 2005) ("[P]unitive damages are available in an individual capacity suit against a State official.") (citing *Smith v. Wade,* 461 U.S. 30, 35 (1983)).

Accordingly, to the extent that Plaintiffs assert claims for damages against the Saddleback District or its employees in their official capacity, those claims are dismissed with prejudice except insofar as Plaintiffs seek injunctive relief. The Court, however, denies the District Defendants' motion to dismiss Plaintiffs' request for punitive or compensatory damages against Defendants Wong, Osborne, or Johnson as individuals.

### F.     Civil Conspiracy

"Where leave to amend is given to cure deficiencies in certain specified claims, courts have agreed that new claims alleged for the first time in the amended pleading should be dismissed or stricken." *Temple of 1001 Buddhas v. City of Fremont*, No. 21-cv-4661-CRB, 2022 WL 1570480, at *5 (N.D. Cal. May 18, 2022) (quoting *DeLeon v. Wells Fargo Bank, N.A.*, No. 10-cv-1390-LHK, 2010 WL 4285006, at *3 (N.D. Cal. Oct. 22, 2010)). Because the Court granted Plaintiffs leave to file a second amended complaint "solely to cure the deficiencies identified" in its order, the newly added tenth cause of action for "Civil Rights Conspiracy" under 42 U.S.C. § 1983 in the SAC is dismissed without prejudice.[2] *See Choudhuri v. Specialized Loan Servicing*, No. 22-CV-06993-JST, 2023 WL 6277327, at *5 (N.D. Cal. Sept. 26, 2023).

### CONCLUSION

For the reasons above, the Court dismisses Plaintiffs' claims against CIF and Next Level and Briscoe without leave to amend. *See Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051–52 (9th Cir. 2008) (finding that amendment would be futile where plaintiff was granted leave to amend once and the amended complaint contained the same defects as the prior complaint). The Court also dismisses Plaintiffs' *Monell* claim against the District Defendants without leave to

---

[2] The Court notes that Plaintiffs contend in their opposition briefing that they only recently discovered facts and/or evidence to support this new claim. ECF No. 104 at 17. To the extent that Plaintiffs wish to add this claim to their operative complaint, they must satisfy Rule 15 by either seeking the opposing parties' written consent or seeking a court order on a showing of good cause.

amend and limits Plaintiffs' claims for damages against the District Defendants to seeking damages against Defendants Wong, Osborne, or Johnson in their individual capacities.  The Court declines to dismiss Plaintiffs' unjust enrichment claim as to Johnson.  Finally, Plaintiffs' civil conspiracy claim is dismissed without prejudice.

**IT IS SO ORDERED.**

Dated:  October 8, 2025

_____
JON S. TIGAR
United States District Judge